# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Docket No. 1:20-CV-21339-AKK

JONATHAN MULLANE,                  )
                                   )
    *Plaintiff,*                )
                                   )
v.                                 )
                                   )
FEDERICO A. MORENO,                )
ALISON W. LEHR,                    )
BENJAMIN G. GREENBERG,             )
LISA T. ROBERTS, and               )
DOES 1 through 10, inclusive,      )
in their individual and official capacities,  )
                                   )
    *Defendants.*               )

FILED BY ___ *PG* ___ D.C.

JUN 11 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA - MIAMI

## PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD
## AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Plaintiff Jonathan Mullane ("Plaintiff") in the above-entitled cause, and hereby respectfully moves this Honorable Court for leave to supplement the record herein in connection with: (1) Plaintiff's Opposition to the Motion to Dismiss [D.E. 61-62]; (2) Plaintiff's Opposition to the Motion for Westfall Act Substitution, ibid.; and (3) Plaintiff's Cross-Motion for Limited Scope-of-Employment Discovery, ibid.

In support hereof, Plaintiff would respectfully show unto the Court the following:

1.    Plaintiff specifically seeks to supplement the above-referenced docket entries with the following documents, all of which are being contemporaneously filed with the instant motion:

(i)     June 4, 2021 declaration of E. Peter Mullane, Esq. [**Ex. 1**], together with the exhibits thereto;

(ii)    June 4, 2021 declaration of Plaintiff Jonathan Mullane [**Ex. 2**], together with the exhibits thereto; and

(iii)   a copy of <u>ABA Code of Judicial Conduct</u>, Rule 2.9(A)(1) [**Ex. 3**].

2.     Good cause exists for the allowance of this motion.

3.     *Firstly*, in the Eleventh Circuit, a party may attach exhibits to his or her opposition to a Rule 12 motion to dismiss.

4.     However, a document attached to a motion to dismiss may be considered without converting the motion into a summary judgment motion "only if the attached document is: (1) central to the plaintiffs claim[1], and (2) undisputed." <u>Horsley</u> v. <u>Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002).

5.     In this specific context, an attached document is *de jure* treated as "undisputed" if its authenticity is not challenged by the opposing party. <u>Ibid.</u>

6.     Here, the appended exhibits are indisputably "central" to all of Plaintiff's claims in the case *sub judice*. As this Court is aware, the operative complaint specifically alleges that the individually-named Defendants herein deliberately and willfully conspired to obstruct justice and to knowingly interfere with the October 2018 FOIA/PA requests of the undersigned seeking responsive records relating to this matter. <u>See, e.g.</u>, Compl., D.E. 45 ¶¶ 93-98, 127. Indeed, by the DOJ's own admission, the agency did not *begin* processing

---

[1] Similarly, and in the same vein, a motion to strike such an attachment to the opposition to the motion to dismiss may be granted *only* if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." <u>Reyher</u> v. <u>Trans World Airlines, Inc.</u>, 881 F. Supp. 574, 576 (M.D. Fla. 1995).

those FOIA/PA requests until **January 8, 2020**—*i.e.*, exactly forty-eight (48) hours after the action against Defendants Moreno and Lehr was definitively dismissed in the District of Massachusetts on **January 6, 2020**.

7.     As previously explained, Plaintiff's FOIA/PA requests were all received by the DOJ and the United States Securities and Exchange Commission ("SEC") in **October 2018**— fifteen (15) months earlier—and those agencies were both statutorily required to respond to those requests within twenty (20) days (not months). Even worse, the hitherto-obtained FOIA/PA records unambiguously state, in plain English, that Defendant Lehr—who has since been terminated from her government employment—*personally* participated in this "search" for responsive FOIA/PA records, *i.e.*, documents which she reasonably knew and expected would subject her to liability in the instant matter wherein she is a named defendant.

8.     Accordingly, the appended exhibits must be considered by this Court in connection with the pending motions.

9.     *Secondly*, the instant motion is timely, and must be considered prior to the issuance of any ruling on the above-referenced motions.

10.     As of the time of writing, no ruling on any of the above-referenced dispositive motions has been entered by this Court. Furthermore, the two (2) declarations were filed only recently on June 4, 2021, and in response to assertions made by the United States Department of Justice ("DOJ") in the parallel litigation in the District of Massachusetts.

11.     *Thirdly*, no party will be unduly prejudiced by the allowance of the relief requested herein. Indeed, Defendants themselves have attached exhibits to their pending motion to dismiss,

and in support of their request that this action be dismissed on "plausibility" grounds

pursuant to Fed. R. Civ. P. 12(b)(6). In submitting the annexed exhibits, Plaintiff seeks a

meaningful and fair opportunity to respond to those assertions.

## CONCLUSION

**WHEREFORE,** premises considered, Plaintiff respectfully requests leave to supplement

the record herein in connection with: (1) Plaintiff's Opposition to the Motion to Dismiss [D.E. 61-

62]; (2) Plaintiff's Opposition to the Motion for Westfall Act Substitution, ibid.; and (3) Plaintiff's

Cross-Motion for Limited Scope-of-Employment Discovery, ibid.

At Cambridge, Massachusetts,                Respectfully submitted,
This 9th Day of June, 2021

                                               /s/ Jonathan Mullane
                                               JONATHAN MULLANE
                                               30 Donnell Street
                                               Cambridge, MA 02138
                                               Tel.: (617) 800-6925
                                               j.mullane@icloud.com

## L.R. 7.1(a)(3) CERTIFICATION

In accordance with L.R. 7.1(a)(3), the undersigned hereby certifies that he attempted to confer with counsel for Defendants in good faith via electronic correspondence on June 9, 2021 regarding the relief requested herein. Counsel has not responded as of the time of writing.

                                               /s/ Jonathan Mullane
                                               JONATHAN MULLANE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 9, 2021 he served a true copy of the foregoing filing to each Party herein via electronic correspondence addressed as follows: dexter.lee@usdoj.gov.

                                               /s/ Jonathan Mullane
                                               JONATHAN MULLANE

# EXHIBIT 1

(Aff. E. Peter Mullane, Esq., with Exhibits Thereto)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JONATHAN MULLANE,
      Plaintiff,

    v.

UNITED STATES DEPARTMENT
OF JUSTICE, and UNITED STATES
SECURITIES AND EXCHANGE
COMMISSION,
      Defendants.

C.A. No. 19-12379-DJC

**SUPPLEMENTAL AFFIDAVIT OF E. PETER MULLANE IN SUPPORT OF:**
  **(a) MOTION FOR RECONSIDERATION OF ORDERS OF COURT [DE 66 AND 68];**
  **(b) OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DE 27 AND 69]; and**
  **(c) PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Now comes E. Peter Mullane, who being under oath hereby states as follows:

## INTRODUCTION

1.     That I have been duly licensed as attorney by the Commonwealth of Massachusetts since 1968, and presently maintain a law practice in Cambridge, Massachusetts.

2.     That for all times relevant hereto, and since the commencement of this action on **November 19, 2019**, I have appeared as counsel of record for the Plaintiff in this action.

3.     The primary purpose and goal of this action remains that of providing the Plaintiff all of the rights afforded to him under both the FOIA ("FOIA"), and the Privacy Act of 1974, as amended ("Privacy Act" or "PA"). However, these rights can only be exercised upon the actual providing and reviewing of all of the pertinent documents in the possession of the Defendants. Those documents include all those which relate to the

Plaintiff in any way, and to the brief semester-long internship he participated in at the

USAO in Miami.

    4.     The Privacy Act provides certain rights and protections to all individuals in

three very important primary ways. It provides every individual with:

- The right to request and receive copies of their records, subject only to any applicable specific Privacy Act exemptions.
- The right to request an expungement or any changes to any of their records that are not accurate, relevant, timely or complete; and
- The right to be protected against any unwarranted invasion of their privacy resulting from the collection, maintenance, use, or disclosure of their personal information.

    5.     Unlike FOIA, see 5 U.S.C. § 552(a)(6)(A), the Privacy Act, 5 U.S.C. § 522a

does not contain a requestor's right to an administrative appeal of any adverse

determination that an agency makes on his access to records request. However, since

the government agencies involved must process an individual's access request under

both statutes – which includes processing the request through any administrative appeal –

there is no practical effect to this this distinction. See, e.g., 28 C.F.R. § 16.45 (2014)

(explaining DOJ Privacy Act regulation regarding appeals from denials of requests for

access to records). Also, see the following DOJ website:

https://www.justice.gov/archives/opcl/individuals-right-access.

    6.     Therefore, the Defendants cannot simply rely upon any specific FOIA

exemption alone to deny the Plaintiff access to any of his records under the Privacy Act.

See, U.S.C. § 522a(t)(1) (FOIA exemptions cannot defeat Privacy Act access); see also,

Martin v. Office of Special Counsel, 819 F. 2d 1181, 1184 (D.C. Cir. 1987) ("If a FOIA

exemption covers the documents, but a Privacy Act exemption does not, then the

documents must be released under the Privacy Act." (emphasis added)); Fagot v. FDIC,

584 F. Supp. 1168, 1173 (D.P.R. 1984) ("[A]ccess to information that falls under both the

2

FOIA and the Privacy Act…is entitled to the cumulative result of what both statutes

provide.") 760 F.2d 252 (1st Cir. 1985); Kearns v. Fed. Aviation Admin., 312 F. Supp. 3rd

97, 106 (D.D.C. 2018) (concluding that although the intersection between FOIA and

Privacy Act exemptions "sounds like a sphinxian riddle," [t]he interaction between the two

statutes…boils down to a rather straight forward edict: "Where a request for documents is

made under both FOIA and the Privacy Act, the responding agency must demonstrate

that the documents fall within some exemption under each Act in order to deny access"

(quoting Barouch v. DOJ, 962 F. Supp. 2nd 30, 66 (D.D.C. 2013)).

     7.     Consequently, the rights and opportunities that the Plaintiff is ultimately

entitled to hereunder is that of being able to seek appropriate amendments, corrections

and misstatements that may appear and contained in any of these government

documents.  This right also includes, but is not limited to, the ability to expunge any such

materials as may be appropriate – either partially expunged or in their entirety.

     8.     In this context, the Plaintiff's rights under the Privacy Act and FOIA would be

de facto rendered null and void unless and until copies of all of these pertinent access

documents and relevant sources of information have been completely and fully produced

by the government in a timely manner.  This includes, of course, all of the documents

being completely produced and formatted in a readable manner as to all of the contents

contained therein.

## **FACTUAL BACKGROUND**

     9.     On **December 25, 2020**, I filed an Affidavit in Support of the Opposition to

Defendant's Motion for Summary Judgment [DE 47], which document is hereby

incorporated fully herein by reference in its entirety and made a part hereof, with particular

reference to the conflicts of interest involving government counsel in the Boston USAO

and the other related government agencies.

10.     The Court's Order of **March 19, 2021**, in essence determined that there was

insufficient evidence to support even a "good faith" dispute as to whether or not there

existed any "bad faith" conduct that was engaged in by the Defendants in this matter.  In

support thereof, the Court relied in material part on the following which appears in the

Order on page 10 thereof:

> Mullane asserts the DOJ has "successfully perpetrated a fraud" in Breaking
> Media, as well as this matter, and "knowingly committed as obstruction of
> justice" by withholding responsive documents that would lead to a different
> outcome in that case. D. 44 at 8, 12. His only basis is conjecture about
> the temporal coincidence of the dismissal of Breaking Media and when
> the USAO-SDFL began its search for responsive documents. Id. at 8, 12,
> 17.  But **the claims against Judge Moreno and Lehr were dismissed on
> September 16, 2019, nearly four months before the USAO-SDFL
> processing began on January 8, 2020.**  Breaking Media. No. 18-cv-
> 112618-PBS. (D. Mass. Sept. 16, 2016).  The remaining claims
> dismissed in January 2020 were only against Breaking Media, Inc., and a
> journalist, for defamation.  (Emphasis supplied.)

11.     Unfortunately, this was only a partial and incomplete recitation of the

procedural history of this related Moreno case by the Court. This omission is quite

understandable given the inordinate multiplicity of pleadings and docket entries.

However, a complete review and discussion of the entire record that follows supports a

finding that there indeed exists, at an absolute minimum, a "disputed issue" as to the

existence of  Defendants "bad faith" throughout this FOIA/PA request process – together

with the disputes as to additional material facts herein.

12.     The most important undisputed fact is noted in the government's own

Declaration by Wilkinson [DE-28-2] submitted in support of their Motion for Summary

Judgment.  This important basic fact is that the USAO in Miami was initially notified and

4

requested by EOUSA on **October 31, 2018,** to provide all of relevant documents in response to Plaintiff's FOIA and Privacy Act requests. This EOUSA notice to the Miami USAO occurred several weeks after the filing by the Plaintiff of his requests under FOIA and the Privacy Act. This fact is an important date for Court's consideration for all purposes in the discussion of all the issues set forth hereinafter.

13.     Several weeks following **November 17, 2018**, Plaintiff filed in the Suffolk Superior Court a civil action captioned <u>Jonathan Mullane v. Federico A. Moreno, et al.</u> This state action was subsequently removed by AUSA Jason Weida and entered in this court on **December 20, 2018**, being noted as Civil Action No. 18-12618-PBS-JGD (hereinafter, referred to as the "<u>Moreno</u>" case). (A copy of <u>Moreno</u> docket sheet is attached and is referred to hereinafter as "**EXHIBIT A**".)

14.     On **March 22, 2019**, AUSA Weida filed in <u>Moreno</u>, on behalf of his clients Moreno and former AUSA Lehr, a Motion to Dismiss for <u>Failure to State a Claim</u> and for <u>Lack of Jurisdiction</u> (**EXHIBIT A** - [DE 68, 71 and 74]).

15.     On **September 16, 2019**, I filed a motion (together with a proposed complaint) to intervene in the <u>Moreno</u> case pursuant to Rule 24(a)(2) of the Fed. R. Civ. P. (**EXHIBIT A** – [DE 138]).

16.     On that same date of **September 16, 2019**, the court coincidentally entered an Order of Dismissal of the complaint against the Defendants Moreno and the former AUSA Allison Lehr.

17.     The Order of Dismissal entered in the <u>Moreno</u> action by the court on **September 16, 2019**, was limited to and based upon a lack of personal jurisdiction. In this regard, and up to this point in time the procedural history of the <u>Moreno</u> action recited by the Court in its Order is correct and accurate. However, as will be more specifically

set forth hereinafter, these events unfortunately are a limited and incomplete recitation of the entire relevant history of the related <u>Moreno</u> proceedings.

18. A review of the complete procedural history of the <u>Moreno</u> action, together with the additional facts as set forth hereinafter, actually supports a determination of "bad faith" of the part of the Defendants, thereby supporting a reconsideration of the Court's Orders [DE 66 and 68].

19. On **September 17, 2019,** the day following the aforementioned initial Order of Dismissal, Plaintiff duly filed a Motion for Reconsideration of the said court's Order of Dismissal entered on **September 16, 2019** (**Exhibit A** - [DE 140]).

20. As noted in the <u>Moreno</u> Docket (**EXHIBIT A**), there were many other related substantive pleadings subsequently filed by the parties during the period of time between **September 16, 2019**, to **January 6, 2020** (**EXHIBIT A** – [DE 134-164]). Indeed, as the multiple docket entries appearing on **EXHIBIT A** demonstrate, AUSA Weida continued to aggressively defend the <u>Moreno</u> complaint for months <u>after</u> the entry of the initial Order of Dismissal on **September 16, 2019**.

21. However, a detailed discussion as to the merits of any of those said rulings, findings and/or determinations thereof are not necessary for these reconsideration purposes. But what is highly relevant is simply the existence of the many subsequent pleadings that were filed between **September 16th** and **January 6th.** Collectively, they establish and demonstrate that the Miami USAO and others continued to subjectively believe that that the <u>Moreno</u> civil action remained a viable claim, and that it continued to pose a threat to the liability of AUSA Weida' clients, certainly and no doubt this was their belief at least through the court's order of **January 6, 2020** – and beyond.

6

22.     These FOIA/PA requests had been duly submitted by Plaintiff to these Defendants around **October 14, 2018.** Unfortunately, with the passage of time and no meaningful responses, it became necessary to file this action on **November 19, 2019**. This was almost **one year after** following the dilatory conduct and the deliberate failure of the government to provide any meaningful responses to Plaintiff's initial FOIA and Privacy Act requests.

23.     Despite the Plaintiff having commenced this action, the formal FOIA/PA document request process intentionally and willfully continued to be delayed at least until **January 8, 2020** – also a fact not in dispute by the Defendants. However, as will be further described hereinafter, these delays in providing the Plaintiff the pertinent documents had absolutely nothing to do with the Miami USAO being "too busy." There certainly were numerous highly inappropriate (conflicts of interest) communications and discussions going on amongst government counsel and employees behind the scenes, which collectively explain the real reason for the delay during this period of time. The real reason was that what should have been an independent process and timely response to Plaintiff's FOIA/PA requests, instead became unlawfully merged into the defense of the Moreno action.

24.     According to Ms. Marcenaros' Declaration [DE 28-1], she states that the first formal steps she took in response to the FOIA/PA notice from EOUSA did not occur until 15 months after the USAO in Miami was advised by the EOUSA to begin this document production process. This inordinate delay included the fact that at this point 2 months had passed after this action had been commenced. As will be discussed hereinafter, this statement on its face is simply not true, at least as it relates to other personnel within the Miami USAO. There were in fact a lot of activity, communications and discussions

7

regarding the FOIA/PA requests of the Plaintiff that were going on within and without the Miami USAO office from the initial notice received from EOUSA on **October 31, 2018**, up to an including January 8, 2020 – and beyond. Of course, the filing of the <u>Moreno</u> action just a few weeks later in November of 2018, only heightened the urgency of deciding who and what to do about this dilemma. Simply ignoring Plaintiff's FOIA/PA request at this point was never a practical option for them in these circumstance, nor would it be for any USAO in such circumstances.

25. Certainly, the Miami USAO, Moreno and Ms. Lehr, all had actual knowledge of this FOIA/PA action once filed on **November 18, 2019.** At that time AUSA Weida was still appearing as counsel of record in the <u>Moreno</u> action on behalf of his clients Moreno and Ms. Lehr. Incredibly, and notwithstanding such a blatant conflict of interest, AUSA Jason Weida (the extent of his conflict of interest will be further discussed hereinafter) proceeded to contemporaneously file his appearance of record on behalf of these Defendants in this FOIA/PA action.

26. AUSA Weida had an obvious "conflict of interest" in his capacity of acting and appearing as counsel for <u>all</u> of the Defendants in <u>both</u> of these pending actions. He had been in constant communication with his clients Moreno and Alison Lehr, while during the same period of time improperly communicating with all of the others involved in and having an affirmative legal obligation to provide timely and complete responses to the Plaintiff's FOIA/PA requests. AUSA Weida's clients, Moreno and Lehr, clearly had conflicting interests and goals with respect to the timing and completeness of the production of the documents in response to the Plaintiff's FOIA/PA requests. **However, the conflicting legal interests and obligations of the Agency Defendants in this action was to comply and carry out their very specific statutory and ethical**

8

**obligations to timely, properly and completely respond to Plaintiff's FOIA/PA documents access requests.** Therefore, the respective legal interests of the defendants in the <u>Moreno</u> action, and the Agency Defendants in the instant action, could not have been different - they were patently in conflict even to a layperson.

27.    There were of course immediate and quite alarming concerns about this obvious and inherent "conflicts of interest" having AUSA Jason Weida appearing for the defendants in the <u>Moreno</u> action, while contemporaneously appearing as counsel of record for the Defendants in this action.  My objection to his appearing in this action was simply that it was a classic textbook conflict of interest in fact. My concerns and my opinion as to his having a conflict of interest was timely expressed directly to him – and even <u>prior</u> to his filing an appearance in this action.  However, notwithstanding my admonition and request that he not appear, he arrogantly and stubbornly proceeded to file his personal appearance on behalf of these named Defendants [DE 6].  Later on, upon my subsequent energetic protests and discussions with his supervisor at the Boston USAO, it was agreed that AUSA Weida would finally withdraw his appearance - but he did not do so until **January 21, 2020** [DE-12].

28.    It was not until **January 6, 2020**, when the court in the <u>Moreno</u> action entered its final Order (**EXHIBIT A** – [DE 164]) denying <u>both</u> the Plaintiff's pending Motion for Reconsideration (**EXHIBIT A** – [DE 140]) of its Dismissal of the Moreno action, and my pending motion and complaint to intervene (**EXHIBIT A** - [DE 138]),  that the Miami USAO in concert with the EOUSA, following certain discussions amongst themselves (**EXHIBIT D**), collectively and finally decided that it was then safe to proceed with initiating a more formal intra-office process requesting the pertinent FOIA/PA response documents.

29.    The identity of the AUSAs in the Miami USAO who finally authorized Ms. Marcenaros to finally proceed on **January 8, 2020,** remains unknown because those relevant emails continue to be unlawfully redacted—as noted in one such example **EXHIBIT D-1**. Ms. Marcenaros was on the low rung of the bureaucratic ladder within the Miami USAO - being employed there only as an administrative assistant. **She clearly had no independent authority within that office to make a decision to proceed, or to not proceed, with responses to the FOIA/PA document production request they received from EOUSA back on October 31, 2018.    Particularly, this was not the kind of authority that gets delegated where it involved document production relating to pending claims and litigation against Moreno, Ms. Lehr, and others.** They all knew each other personally, they all worked together within the same Miami federal courthouse building, and as described hereafter AUSA's within this office, they were all following, downloading and circulating every pleading and every step along the way in the Moreno case.

30.    Inexplicably,  there is not a single Declaration or Affidavit from any AUSA within the Miami USAO that has been submitted in support of summary judgment by the Defendants. After all, they are in the best position to explain and justify this unconscionable and highly unusual 15-month delay in their providing these requested documents.   What is known is that there certainly is one or more AUSA's within the Miami office possessing personal knowledge and with authority to provide this Court with the identities, copies of emails, correspondence, etc., of all the participants who were involved in that decision-making process, specifically including their interactions with AUSA Weida.

31.    Wilkinson's Declaration [DE-28-2] confirms that which has been previously stated in paragraph 6 above. All records access requests from individuals are <u>always</u>

10

treated by all of the responding governmental agencies for all purposes therein as that of

being a request submitted under both FOIA and the Privacy Act. He confirms therein two

important facts for purposes of the Court's further consideration:

- At paragraph 7: "On that same date [**October 31, 2018**], EOUSA asked the Southern District of Florida (USAO-FLS) to conduct a search for material that is potentially responsive to Plaintiff's request;" and
- At paragraph 18: "The EOUSA processes **all** requests by individuals for records pertaining to themselves under **both** the Freedom of Information Act and the Privacy Acts in order to provide the requestor the **maximum disclosure authorized by law**."

32.     Approximately six (6) weeks after notifying the Miami USAO on **October 31,**

**2018**, the EOUSA sent correspondence to the Plaintiff on **December 18, 2018** (**EXHIBIT**

**F-1**). Therein they state that they are responding to his "Freedom of Information Act

and/or Privacy request," but incredulously state that:

> **1.  [X] A search for records in EOUSA – Personnel has revealed no responsive records regarding the above subject [Jonathan Mullane].**

33.     It is unknown if the genesis of this misrepresentation was that the Miami

USAO upon receipt of their written notice from EOUSA on **October 31, 2018**, responded

to the EOUSA stating that they had "no responsive documents." However, regardless of

the source that had been supposedly relied upon by EOUSA, this communication was

indeed a serious and alarming misrepresentation made to the Plaintiff.

34.     Thereafter, Plaintiff appropriately complained in writing to the DOJ about

having received this completely false misrepresentation. Finally, on **April 10, 2019**, the

DOJ **Office of Inspector General** ("OIG") then acknowledged the fact that there were, in

fact, documents available to be produced in response to Plaintiff's FOIA/PA access

requests (**EXHIBIT F-2**).

11

35.     There are other conspicuous omissions in the Defendant's supporting

Declarations, and the omission of complete documents from their respective offices.

Where are all of the communications back and forth that took place between and among

the Miami USAO, EOUSA and AUSA Weida?   There were indeed communications

amongst them concerning the status and/or explanations as to the ongoing decision of the

Miami USAO to continue to delay their responses to EOUSA in producing the requested

documents; after all, this was an unusually lengthy 15-months period of time.  It is simply

not credible that after over a year's passage of time that the next and only communication

between these offices was that noted in **EXHIBIT D** – conveniently being one on **January**

**8, 2020**.  Indeed, a complete lack of communication between these agencies/offices and

AUSA Weida is of course not what really happened, as will be further discussed

hereinafter.

36.     It can reasonably be assumed, based upon a review of the documents

received to date, and as confirmed by AUSA Weida filing his appearance in this action,

that both of these government offices (EOUSA and Miami USAO), together with AUSA

Weida, early on became engaged in what can only be described as "conflicts of interest"

by their communicating, collaborating, and cooperating with each other during most of this

entire 15-month period.  These discussions no doubt specifically included from time-to-

time the status of continuing the delay tactics and in that regard what was going on with

the Moreno case.  Certainly, there were other discussions related thereto concerning the

most advantageous timing for them to end their coordinated intentional delay in producing

the requested FOIA/PA documents (**EXHIBIT- D-1**).

12

37. Consequently, other than the completely redacted **EXHIBIT D -1**, where are these other related communications that were going on between these offices and AUSA Weida as they were dealing with and responding to this FOIA/PA request? In addition to the delay and numerous unjustifiable redactions, the inexplicable omission of these documents collectively is much more than of great concern. However, their conspicuous omission does serve to prove that there existed the necessity of a **firewall**, one that should have been established by the DOJ amongst these government attorneys immediately to avoid the "conflicts of interest" that permeated and irreparably destroyed the integrity of this FOIA/PA process. What happened instead was that these FOIA/PA process and responses categorically lost their independence, and unlawfully became integrated into the tactics and litigation strategy of AUSA Weida's defense in the Moreno case.

38. In this same context and concern, the Defendants submitted as support for their summary judgment the Declaration of McInerney [DE-28-3]. He too is not an attorney, and physically works in the Washington, DC FOIA office of the SEC. He candidly acknowledges in paragraph 3 in his Declaration that the SEC received the Plaintiff's "**FOIA and Privacy Act** requests" on **October 14, 2018**. Further, on page 2, paragraph 2, of his Supplemental Declaration [DE 57-3] submitted to the Court by the Defendants he states:

> **I have been informed** that the only documents that are reasonably likely to exist are emails, and that the persons who are reasonably likely to have responsive emails are **Lisa Roberts**, who coordinated the SEC's Student Honors Program, and **Eric Bustillo**, the Director of MIRO. (Emphasis supplied.)

39. This is a rather terse Declaration from a layperson and at best is minimally informative. Therein he acknowledges that Lisa Roberts and Eric Bustillo, both attorneys

13

located and employed in the Miami SEC office during the time relevant hereto, "are reasonably likely to have responsive emails," and have the best, if not the only, direct access to the Plaintiff's requested FOIA/PA documents. The basis upon which he states that he was "**informed**" of this information quizzically remains from unknown sources. Further, while the McInerney does state that Roberts and Bustillo are "reasonably likely to have responsive emails," it conspicuously fails to state that those individuals are the **only** individuals to have responsive FOIA/PA documents—something which is the applicable legal test and standard in FOIA/PA cases. In other words, unless the agency's affidavits state that **all** of the FOIA/PA documents are likely located in the possession of Roberts and Bustillo (and the SEC cannot state that in "good faith"), the applicable legal standard for summary judgment has not been met here.

40.    But once again, *neither* of these two attorneys, who apparently are the only two (2) persons in the entire SEC who are known to have responsive FOIA/PA records, have produced any Declaration or Affidavit that one typically expects typically confirming that: they have made a diligent search for these requested records within their respective offices; acknowledging that they have produced and submitted to SEC FOIA Office in Washington all of the relevant requested documents; and as is appropriate in these circumstances to offer an explanation as why all of these requested documents were not been completely produced in a timely and a complete manner.  Was this just another "too busy" government office? Even worse, McInerney does not even work in the SEC's Miami office (he works and lives thousands of miles away in Washington, DC), and therefore could not possibly know: *who* has responsive FOIA/PA documents in Miami, and *who* is likely to know of the existence of such documents; *what* type of responsive FOIA/PA documents are likely to exist, and in which form (email, text, notes, letters, etc.); *what*

14

**were the precise, specific search terms used (i.e., word-for-word)**; *where* those records are currently located; *when* those records were produced; *why* they were generated (i.e., the underlying context and/or circumstances); and ***how*** the FOIA/PA documents were searched for (i.e., did Roberts, who is currently a named defendant in the Moreno litigation, personally participate in the FOIA/PA searches? Did she conduct the searches herself? etc.).

41. After all, these AUSAs and SEC attorneys are the primary source of information, and they are the persons who were in the best position to diligently search and timely produce the pertinent documents to respond to the Plaintiff's FOIA and Privacy Act requests. The convenient omissions of their Declarations or Affidavits are but another reason to question the government's intent and actions in the context of the totality of these circumstances.

42. Of great significance is the omission of any Affidavit, Declaration and the complete disclosure of documents from Lisa Roberts (who allegedly was the person who conducted the search in that Miami SEC office). This is particularly disconcerting and alarming since it is known that there were communication(s) concerning the Plaintiff from Ms. Lehr to Ms. Roberts, which included a copy of the transcript sent by Ms. Lehr (being the only person other than the Plaintiff who had been in possession of same). It was in fact those inter-office communications from Ms. Lehr to Ms. Roberts that was the direct cause of the Plaintiff's summer internship appointment being precipitously canceled by Ms. Roberts.

43. It was the result of those omitted communications from Ms. Lehr, and those received by her from Ms. Roberts, that directly caused the following chain of retaliatory events and governmental misconduct (**EXHIBIT E**):

(a) (Exhibit E-1) - Email dated April 11, 2018: Plaintiff's background cleared for SEC summer internship.

(b) (Exhibit E-2) – Correspondence dated May 3, 2018 from Lisa Roberts, rescinding the Plaintiff's internship for failing background check.

(c) Exhibit E-3 – Email dated May 3, 2018, from Plaintiff to Lisa Robert, inquiring about the reasoning behind the rescinding of the SEC summer internship, with notation by Ms. Roberts to another that she does not intend to respond to Plaintiff's inquiry.

44.    These omitted communications between Ms. Roberts and Ms. Lehr are all important since they in fact confirm the true reason and impetus for Ms. Roberts' actions by precipitously and without cause terminating the Plaintiff's SEC summer internship on May 3rd. This outrageous misconduct, and the direct consequences thereof was all part of Ms. Lehr's malicious pursuit of causing as much harm to the Plaintiff as she possibly could. Her unstable mental health and capacity for irrational conduct is further exemplified by her actions and erratic behavior as evidenced and attested to in **EXHIBIT I-2**.

45.    Consequently, the Agency Defendants have acted intentionally and willfully in tactically omitting Declarations or Affidavits from persons who were in the best position and based upon their personal knowledge.

46.    The Defendants have offered no credible, non-hearsay or direct evidence that would be admissible at a trial in these circumstances. Given the intentional and willful delays, together with the blatant conflicts of interest that were unabashedly pursued by government counsel throughout this period of time to avoid the FOIA/PA responses, these actions can only be viewed as self-serving and in essence became merged into the defense of the Moreno action. This was a misguided and veiled contrivance having as its goal to assist AUSA Weida in the defense of the Moreno litigation, thereby gaining improper and unfair litigation tactics.

47.    Another undisputed fact arises based upon a reading of the limited and highly redacted document production that has been received to date. Despite the

16

Defendants protests to the contrary, there indeed was plenty of time and the availability of personnel within the Miami USAO to timely respond to the FOIA/PA access requests of the Plaintiff. The FOIA/PA documents which the DOJ has produced to-date proves that the agency had the luxury of time to engage in a very careful and diligent tracking, reviewing, and downloading copies of all of the court events and filings that were happening in the said Moreno action in Massachusetts during this entire 15-month period of time. This fact is also undisputed, confirmed, and evident from the government's own Declarations filed in support of its motion for summary judgment, and certain emails as further noted hereinafter.

48. Another source of a direct contradiction to the Defendants assertion that their delay was created due to the Miami USAO being "too busy," can be found within the attached emails of AUSA James Weinkle (USAFLS), dated **October 2, 2019** (**EXHIBIT B-1**). Therein he is advising multiple personnel within his Miami USAO Office (specifically including the former AUSA Alison Lehr notwithstanding her then being a named defendant in the Moreno action). This particular email circulation of his, and not the only one, was sent just several weeks after the aforementioned initial dismissal of that Moreno complaint on **September 16, 2019**. Most incredibly, AUSA Weinkle includes in his email circulation attachments of the copies of the then most current docket sheet, and the pleadings and orders that had been entered in the Moreno action. His diligent observations and perhaps an astute comment on the Moreno action are set forth therein as follows:

> While the Court in the D. Massachusetts has entered an Order Dismissing Allison Lehr and Judge Moreno (DE 134), Mr. Mullane has filed a motion that indicates he will appeal that Order (DE 145). While the Government has filed a response (DE 156), the Court has not yet ruled.

17

Additionally, see another email of AUSA Weinkle on **December 20, 2019**

(**EXHIBIT B-2**), to Ms. Lehr and others stating therein that:

> As an FYI (and this is NOT directly related to Mullane's FOIA request), the above-referenced Lit. Hold I instituted remains in effect. I just checked the D. Mass docket and the case is still active…. A copy of the Docket Sheet is attached.

49. Also, see the email string on this same date of **December 20, 2019**, among AUSA

Weida, Ms. Marcenaros and others within the Miami USAO, and including therein most

incredibly is the participant Francis Tricia (USAEO) (**EXHIBIT B-3**). It is important to

place these particular email communications and their subject matter in their proper

"conflict of interest" perspective. Of course, all AUSAs are subject to the same Rules

of Professional Responsibility as are private counsel—rules that the Court must uphold

and enforce. In this context, **Rule 1.7: Conflict of Interest** specifically states in

pertinent part:

> (a) …a lawyer shall <u>not</u> represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>    (1) the representation of one client will be **directly adverse to another client**….
>    (2) there is a significant risk that the representation of one or more clients will be **materially limited by the lawyer's responsibilities to another client _or a third party_**….

50. AUSA Weida at all times relevant hereto, and since November of 2018, acted as

defense counsel of record in the "unrelated" pending civil Moreno action. Therein, and

at all times relevant hereto, he has always been representing the interests of his

clients Moreno and Ms. Lehr. As with any counsel of record, Weida had an ethical duty

to act independently on behalf of both of them and with undivided loyalty.

51. In this action the government counsel who were involved with and representing these

Defendants (SEC and DOJ) as their clients also owed that duty to act independently

18

and with undivided loyalty to both of their clients (government agencies). Their

professional ethical duty and obligations as their counsel for the SEC and DOJ was

that of assisting and ensuring that they would act in a timely manner as was required,

to complete their required document production with transparency, to the fullest extent

possible, and to be in full compliance with all of their statutory and ethical obligations

required of them under FOIA/PA. To quote the Declaration of Wilkerson (EOUSA)

[DE-2]:

 "The EOUSA processes all requests by individuals for records pertaining to
 themselves under both Freedom of Information and the Privacy Act in order to
 provide the requestor the maximum disclosure authorized by law."

52. In this context, and despite AUSA Weida representing and acting as counsel of record

or Moreno and Lehr, he became engaged in directly communicating, cooperating and

coordinating with the other government counsel representing the SEC and DOJ. After

all, these other government counsel were supposed to be acting with independence,

and with an undivided loyalty in representing only their respective clients that were

involved in preparing these FOIA/PA responses. It is fair to state and assume that in

these circumstances, and while acting as defense counsel in the Moreno action, the

very last thing in the world that AUSA Weida would want to ensure would happen

would be for the SEC and DOJ (Miami USAO) to timely provide the Plaintiff "the

maximum disclosure authorized by law" – to engage in understatement.

53. The obvious conflicts in the respective legal interests of Moreno and Lehr, to that of

the interests and legal obligations these particular Defendants (government agencies),

would have been patently obvious to any attorney in these circumstances. Therefore, it

defies logic as to why the supervisors of these government attorneys allowed this

unlawful and unethical interaction amongst governmental counsel to have taken place

- and for it to be going on for so long? The failure of any counsel to recognize and appreciate this obvious fact there existed a conflict of interest went far beyond that of it being attributable to that of negligence or malpractice. These interactions consisted of deliberately entering into a conflict of interest. Even a layperson such as Ms. Marcenaros understood (and stated in writing) that even the involvement of Ms. Lehr in searching for and producing her own emails and documents (let alone her attorney) for the FOIA/PA document production process was highly inappropriate (**EXHIBIT C-1**).

54. Notwithstanding the knowledge of government counsel of the existence of these conflicts of interest, they nonetheless became actively engaged in pursuing a course of conduct coordinating and cooperating with each other in facilitating the timing, editing, and the collection of an undetermined number of these FOIA/PA document production events – all as noted herein.

55. The interests of the SEC and the DOJ Defendants in this FOIA/PA document production process could not possibly have been in a more direct conflict with the competing legal interests of Lehr and Moreno as defendants in the Moreno action. In the usually and customary course of acting as defense counsel for Lehr and Moreno, it was the duty of AUSA Weida to attempt to protect, obscure, conceal, and not have disclosed any evidence of wrongdoing, or any documents that may or could negatively impact a finding of liability against his clients (Moreno and Lehr) for their misconduct.

56. Directly contrary to, and in conflict with, those interests and goals of Moreno and Lehr, and independent thereof, the SEC and DOJ had the affirmative legal and ethical obligation to provide in a timely manner all of the requested documents in response to Plaintiff's FOIA/PA access document request. All government counsel knew full well that many of these required FOIA/PA responses foreseeably would include documents

20

that would provide direct admissible evidence of liability against AUSA Weida's clients (Moreno and Lehr). Therefore, there was an unambiguous and clear ethical violation engaged in by all of these government counsel involved in facilitating such blatant conflicts of interest in these circumstances.

57. I have previously brought to the attention to this Court this "conflict of interest" behavior of counsel that in and of itself establishes the "bad faith" of the Defendants. The confirmation of this "conflict of interest" disqualification was of course that of AUSA Weida actually entering his appearance of record for these SEC and DOJ Defendants in this case [DE 6], while still appearing in the Moreno action. As previously noted, he did so despite my objecting, and directly requesting, for him not to do so. See, Aff. at DE-47.

62.     In December of 2019, at the time I first voiced my objection to AUSA Weida about his intent on filing of an appearance for these Defendants, and despite my over 50 years in the practice of law and thinking that I had seen everything, I could not at that time possibly imagine that this "conflict of interest" situation had already been going on amongst these government counsel for months. I could not have imagined at that time that the proverbial conflict of interest horse had already left the barn – and that this unacceptable unprofessional behavior actually involved counsel who are representing our own government and are role models for its values.

63.     These were not law partners in some fancy national law firm representing Fortune 500 companies jousting over billions of dollar, and in the heat of battle unwittingly go off the ethical reservation while trying to win. This litigation is about a young man who is a citizen of this country that is trying to restore his adult life and career that was irreparably harmed by the abusive inexcusable actions of certain government employees.

It should not even be a case that is in litigation, as there is an absolute duty for the government in these circumstances to right the wrong that was unjustifiably imposed upon this Plaintiff.

64. What now appears conclusively, just from the reading and review of the limited document production received to date, is that AUSA Weida had *de facto* been representing these named Defendants all along. The filing of his personal appearance in this action for the Defendants was merely a token confirmation of the attorney-client relationship that he already been established with them, and of course one that was a conflict of interest which had been going on for months off-the-record.

65. Contained within **EXHIBIT B-3,** is further confirmation of this "conflict of interest" situation that had been going on amongst all these government counsel. This is **Tricia Francis (USAEO in Washington, DC) directly emailing AUSA Jason Weida**, on January 20, 2019. Of course the USAEO and the Miami USAO never should have permitted USAO Weida to participate or even communicate with them in any way related to their fulfilling their ongoing independent FOIA/PA process obligations. Clearly, and at a minimum, a **firewall** for this purpose should immediately have been formally established and set-up by DOJ for this purpose and in these circumstances. In any event, here is Tricia Francis (USAEO), communicating *directly* to AUSA Weida, stating in pertinent part:

> Subject: RE: FOIA Litigation with Jonathan Mullane
>
> Jason,
> …I reviewed the Complaint and prepared a draft again. My last contact with SDFL was yesterday afternoon when I spoke to Lazaro, who was going to do additional research on the search/processing/release of that single page document I attached to yesterday's email. However, here is a draft of EOUSA's response to the paragraphs that relate to EOUSA. If you can work with it, and work with what the folks provide you from the district…you may be able to have a file-ready Answer by 12/26....

66.     Another interesting aspect of a reading of this **EXHIBIT B-3**, being dated **December 20, 2019**, is that it is very clear from the content therein that the EOUSA, Weida and the Miami USAO ("the district") had all been cooperatively working all along in assembling, preparing and editing their intended responses to the Plaintiff's FOIA/PA document access request. This is but another egregious example of AUSA Weida's actions in orchestrating these events in the interest of his clients (Moreno and Lehr), and the USAEO in Washington, DC and the Miami USAO allowing and facilitating his unlawful participation. Despite the existence of these conflicts of interest, AUSA Weida nevertheless succeed in becoming an active participant and the main conductor in these FOIA/PA responses and the timing thereof.

67.     The content of this **EXHIBIT B-3** also directly conflicts with the Declaration of Ms. Marcenaros. She represented to the Court that the response to the FOIA/PA process did not formally commence in the Miami USAO until **January 8, 2020**, because they were all "too busy" up until that date. Obviously, that is a misrepresentation, another fairytale of these Defendants, and this assertion is unsupported by the actual facts. A reading of this **Exhibit B-3** makes it crystal clear that the preparation, reviewing and editing of the intended responsive FOIA/PA documents had been going on, supervised and channeled at all times directly through the approval of AUSA Jason Weida, an arrangement that had apparently been going on for months at this point in time. Also noted therein are that these efforts included the ongoing participation of Laz Feliciano, who was yet another employee and Administrative Officer within the Miami USAO.

68.     *All* of this information directly conflicts with the incredulous misrepresentation made to this court by the Defendants that the Miami USAO was "too busy" until **January 8, 2020**, to deal with any the FOIA/PA requests of the Plaintiff.

69.     The frequent intra-office Miami USAO communications and update efforts undertaken by Weinkle and others provided constant updates reflecting their very careful and diligent following of the Moreno case developments. Both Moreno and the former AUSA Alison Lehr were of course being constantly advised and updated by USAO Weida to all these proceeding and events that were taking place in this court (both in their Moreno action and in the FOIA/PA action before this Court). Those updates and communication by AUSA Weida to his clients in the Moreno case were of course in the usual and customary course while acting as their counsel. Included in those communications was the notable celebratory response on **January 6, 2020** (**EXHIBIT B-4**), wherein Ms. Lehr prematurely states, "I feel as if I can/should dance a jig!" However, Lehr employment with the government was terminated at a later date, apparently in part due to her criminally assaulting a process server in Miami (**EXHIBIT I-2**). Furthermore, if the Miami USAO were so overworked during this period of time, it is also difficult to comprehend why even the then United States Attorney herself (Ariana Fajardo-Orshan) was personally involved and updated as to events related to the Plaintiff's FOIA/PA requests. Her name is conspicuously noted on many of these email discussions relating to same.

70.     However, the government's failure to offer credible evidence from those having the best personal knowledge of all of these events and decision-making does support the need for conducting limited discovery. We need to determine whatever omitted documents that still exist but have yet to be produced, to determine how much information/documents these Defendants continue to conceal, and to review in unredacted form all documents that have been produced.

The egregious conflict-of-interest situation has irreparably tainted the integrity of this entire FOIA/PA process and these document production efforts that have been undertaken to date. Certainly, it is that of several factors that has caused the Defendants to forfeit any presumption of "good faith" and credibility as a matter of law. This further inquiry may be undertaken through the Court's *in camera* documents inspection process at its discretion, through the discovery process by the parties, and/or eventually perhaps subjected to a more formal investigation in an effort to make those responsible for such deliberate dilatory actions, conflicts of interest, and misrepresentations to this Court be held appropriately accountable?

71.   Further evidencing that this 15-month delay of document production was intentional and willful appears in the email from Ms. Marcenaros to Alison Lehr, dated **January 9, 2020** (**EXHIBIT C-1**). There indicates there had been earlier meetings between the former AUSA Alison Lehr and Ms. Marcenaros. What is evident and of interest in reading this Exhibit is that there were ongoing intra-office conversations between these two women involving the subject matter of this FOIA/PA request. However, like many missing pieces to this document production, the substance and content of those prior conversations and meetings has not been produced or disclosed. They were, of course, well-acquainted with each other since they were working in the same USAO at all times during this 15-month period of stonewalling that had been going on. Perhaps most interesting is that great credit is due to Ms. Marcenaros for attempting, even as a layperson and at that late date, to *de facto* create a voluntary **firewall** that would exclude Ms. Lehr from all of the document production process. Of course, despite this very appropriate

recommendation it never happened as predictably Mr. Lehr refused to do so as is noted hereinafter. However, if a layperson such as Ms. Marcenaros can understand and appreciate the obvious conflict-of-interest situation that existed, it begs the question as to why DOJ had not imposed the same firewall limitations for AUSA Weida and the others from Day One?

72.    Perhaps what is perhaps the most disconcerting about this particular email exchange (**EXHIBIT C-1**), but certainly not surprising, is how an attorney in Ms. Lehr's position and experience could express her intention to still control and remain involved in the FOIA/PA document production process.   After all, she was a named defendant in the Moreno case and already had the benefit of a 15-month head start for her and others to engage in the preparation for this inevitable document production event.  Indeed, as noted in the email exchange from Ms. Lehr to Ms. Jacobus even as late as **February 12, 2019**, the very appropriate admonition of Ms. Marcenaros to her not be involved in the document production was apparently "intentionally and willfully" disregarded. (**EXHIBIT C-2**).

73.    This communication between Ms. Marcenaros and Ms. Lehr further exemplifies and highlights the concerns and assumptions about what had been going on in this Miami USAO during this intervening 15-month period of time. They certainly knew as professionals and attorneys, and being well-experienced in the document discovery and investigatory process, that these relevant documents that were in their possession, custody, and control would ultimately have to be produced in response to the Plaintiff's FOIA/PA requests – which certainly was no secret within that USAO.

74.    If Ms. Lehr wanted to and did in fact inject herself <u>after</u> this formal
process apparently began on January 8th, 2020, it also raises the question as what
constraints were in place prior thereto to prevent inappropriate involvement in the
document assembly process by Ms. Lehr and others in that USAO. Was there in
place by the Miami USAO any formal or meaningful monitoring of, or prevention of,
actions taken by her and others, upon their receipt of the notice by EOUSA on
**October 31, 2018**?

75.    Of additional concern are the numerous documents and
communications that logically should have been in existence within the system of
documents, but have not been produced.  Perhaps a logical explanation is that in
anticipation of these FOIA/PA requests certain communications and documents
were intentionally transferred, used, and communicated via the private emails of
certain personnel within the Miami USAO - without having any authority to do so
since a litigation hold was in place.

76.    Most all of the documents that have been produced contain major
editing, and/or involving improper and unlawful redactions.  The Defendants have
asserted as a justification therefor the application of certain inappropriate and non-
applicable FOIA exemptions.  As noted in paragraph 6 above, the Defendants can
only justify such omissions and redactions by proving the existence of an
applicable exemptions that applies under <u>both</u> FOIA and the Privacy - which is
required to justify any such actions as a matter of law. However, not a single
exemption that has been asserted by the Defendants can be shown to be an
exemption provided under **both** FOIA and the Privacy Act as is required.

77.     An example of such completely and/or mostly redacted documents submitted to date includes, but is not limited to, a copy of an email chain dated **January 8, 2020** (**EXHIBIT D-1**).  These reciprocal emails were between and among Carlos Baurell (USAFLS), Tricia Francia (EOUSA in Washington, DC) and Francys Marcenaros (USAFLS) around **12:21 PM** on this date.  The noted subject matter is "**FOIA Litigation with Jonathan Mullane**."  Coincidentally, and most importantly, this is the exact same date of **January 8, 2020**, in which Ms. Marcenaros first initiated a request for FOIA/PA documents within the Miami USAO (also **EXHIBIT D-2**).  In this context, it is important to note that her email notification to the USAO Miami personnel was sent by her at **12:50 PM**, after she completed her email exchanges with Baurell (USAFLS) and Francia (EOUSA). However, these critical decision-making email discussions and exchanges, on what certainly was a very important date for this review and analysis, have been completely, totally and inappropriately redacted – this is certainly not an email exempt under both FOIA and the Privacy Act.

78.     Therefore, all of this delay, omissions, obfuscations, and misconduct by the government collectively begs the very important question why has the government worked so hard to obstruct and delay the judicial process in all of these cases?  Certainly, this is not the behavior that one expects that is consistent with a party who has nothing to hide, who employs complete candor and transparency, and has the integrity to participate in searching for and arriving at the truth – which is what should be the ultimate goal in all litigation.

79.     What would perhaps be of further assistance to the Court is for this Court to now order the Defendants to produce copies of all documents and communications that were exchanged and communicated between and among these Defendants, the Miami USAO and AUSA Jason Weida, from and after the initial request was sent to and received by the Miami USAO on **October 31, 2018**, including at least to produce these initially for their review *in camera*.

80.     The extent in which this intentional delay has indeed caused harm to the Plaintiff and to the court in the Defendants failing to produce documents in a timely and complete manner may be summarized only as follows. At all times during the pending  Moreno litigation, and up until and even right after the time that the complaint and my motion to intervene were finally dismissed on **January 6, 2020**, to be perfectly candid it was totally and completely baffling to our family why such an uncivilized and mean-spirited effort was undertaken within the Miami USAO to create a hostile work environment (to engage in understatement) for the Plaintiff during his internship within their forfeiture department. It was even more puzzling to us how and why they seemingly were able to enlist the cooperation of a federal judge to become an unwitting participant in their unconscionable retaliatory misconduct—an event which is confirmed by AUSA Evelyn B. Sheehan's February 6, 2019 email: "**No good deed goes unpunished**. We should have fired for cause." See Bates No. EOUSA-2019-000468-01619. Indeed, the judge who presided over the Moreno case in Massachusetts specifically commented that, "I do not find it plausible these events could have taken place."

81. Certainly, the actions undertaken to discourage and attempt to early terminate the Plaintiff's (Jonathan's) semester internship in the forfeiture department, together with their intentionally proceeding to maliciously sabotage his already committed summer internship with the SEC Office in Miami, were far beyond any rational or logical explanation that as parents we could understand. This is not civilized behavior that anyone would expect of well-educated professionals cooperatively working within any private or a government office (USAO) environment. This level of abuse, misconduct and retaliatory behavior were particularly inexplicable to us as parents, particularly since Jonathan only a few more remaining weeks during that month of April of 2018 to serve and finish out his internship.

82. In addition to the hostility extended to the Plaintiff within the USAO, what was also quite inexplicable to me was why any normal Federal Judge sitting in Miami, a man whom I had never appeared before in any capacity, nor a judge that I knew socially or ever heard of prior to this consequential April 10th hearing event that precipitated this litigation, would ever take it upon himself to willfully and maliciously denigrate my character personally, and to specifically disparage my professional competence and ethics before my own son, who was then only a naïve second year law student standing before him absolutely terrified and traumatized in what was his first time ever physically in any federal courtroom.

83. Additionally, this court appearance event of the Plaintiff was beyond unusual as it was arranged as it took place in a federal courtroom, but as the direct result of Moreno personally calling directly to Plaintiff's cell phone and ordering the Plaintiff to appear in his court "tomorrow." The audio of that personal telephone

communication remains in the possession of the Plaintiff, and is just another piece
of the outlandish behavior and abuses that are all part of this story, and these are
facts that one cannot readily make-up. Understandably, collectively all of those
particular events continue to impact and traumatize not only the Plaintiff, but indeed
all of us in our family.

84. What is the most difficult aspect of these events to accept is that all of
this took place within an environment of a federal courthouse and governmental
employees, most of whom are professional and well-educated. Off course to think
that one serving as a federal judge would have the basic common sense not to
have participated in their scheme to force Jonathan to voluntarily end his
internship.

85. Unfortunately, this is exactly what had happened factually in Moreno's
courtroom as noted and memorialized in that now hearing transcript of **April 10,
2018.** However, this governmental misconduct in the USAO even went further,
before and after this hearing, including facilitating and ensuring that that Plaintiff's
summer internship commitment with the SEC would be rescinded – which it was.
This retaliatory misconduct even extended to Moreno contacting his law school,
and Ms. Lehr providing an unjustified and factually unsupported poor review of his
performance as an intern. Her vindictive performance review was completely and
totally undeserved, and merely reflected her own emotional instability – to engage
in more understatement.

86. Ms. Lehr even went to the extreme of facilitating that the court
hearing transcript would get published on certain law news type websites to
gratuitously cause further embarrassment and intensive emotional harm to the

Plaintiff.  Perhaps unanticipated, the article appearing the *Above the Law* (Breaking Media) was most defamatory and critical of the Moreno's actions during this hearing.

87.    Moreno had justifiably recused himself after this hearing in response to Plaintiff's motion for him to do so.  However, after having recused himself articles in Above the Law and another in LAW 360 were published several days thereafter.  In reaction thereto, he then proceeded to gratuitously send a highly negative defamatory letter concerning the Plaintiff to his law school.  This extraordinary personally vindictive action by Moreno was apparently caused in the mistaken belief that it was the Plaintiff who had facilitated the publications of his hearing to personally embarrass him in retaliation.  The reality was that this was all part of the misconduct undertaken and spearheaded by the former AUSA Alison Lehr – she was the one responsible for those publications having taken place.  But these were just some of the many intended and unintended consequences of this outrageous misconduct and abuse, for which the harm to the Plaintiff continues on.

88.    This series of event all took place over a few short weeks, but it was as bad a nightmare, emotional trauma and embarrassment to us as parents and certainly to  any second-year law student should ever have to suffer through. All of these events  were unfair, unjustified, and unnecessary, and the ongoing conduct of these Defendants and counsel in creating more unnecessary abuse and harm, and their dilatory tactics are proverbially adding salt to the wound they have maliciously created.

89.    Consequently, it was not until <u>after</u> the hearing before this Court on **February 24, 2020**, and upon receiving some of the first tranches of documents

from the government that the missing dots of providing an explanation as to why these malicious, abusive and retaliatory events took place finally got connected. It was only through reading these new documents collectively that slowly it began to get revealed the genesis of the otherwise completely inexplicable misbehavior undertaken by the named government defendants in the Moreno action.

90.     It then began to become clear that the genesis of this unconscionable misconduct and abusive arose out of a petty and highly unprofessional retaliation scheme undertaken against the Plaintiff personally, and for actions that he was never responsible for nor participated in. All of these events of governmental misconduct arose out of the discovery of certain information by personnel within the USAO asset forfeiture department (that the Plaintiff had been assigned to as an intern). The information that became the genesis for all of this governmental misconduct was that approximately a year and a half earlier in 2016, while I was participating as a defense counsel, I obtained a dismissal of an indictment against the government in a highly-publicized multi-billion dollar money laundering criminal case that was pending in that same U.S. District Court in Miami. Also, it had involved this same forfeiture department within the Miami USAO which had their appearance filed therein.

91.     That case involved allegations of the existence of a multi-million dollar money laundering scheme emanating out of Venezuela, and it involved a defendant who was a citizen of Venezuela. Coincidentally, Moreno was also born and raised in Caracas, Venezuela, apparently until his college years when he arrived in the U.S. Indeed, the case (and my representation of the defendant therein) was the subject matter of a certain Vice.com and other articles which were

33

very critical of the government prosecutors in the Miami USAO, and which of course became a source of professional embarrassment for that office.

92.     Of particular interest to the Miami USAO and the D.O.J.'s Washington office forfeiture departments at the time was that the case involved many U.S. and international bank accounts, with billions of dollars remaining therein in deposits. Although this case was first commenced here in Boston, it was eventually transferred to Miami by Judge Sorokin.  Consequently, the case was ultimately heard in this very same U.S. District Court of Southern Florida (Miami) courthouse before Judge Marcia G. Cooke, and of course this involved the same Miami USAO. (See **EXHIBIT F-1**, being the cover Docket sheet of <u>USA v. Acherman, et al</u>., Case #: 1:15-cr-2-0840-MGG-1).

93.     This was at the time a high visibility and well publicized money laundering case – and particularly so within the Miami area having a very significant Venezuelan population. The case also related to events involving numerous well-known Venezuela elite.  In fact, the general subject matter disclosed in this indictment still remains the subject matter for ongoing investigations within the Miami USAO and elsewhere.  Also, this certainly was a case that the USAO and the D.O.J. office in Washington had initially anticipated potentially was going to result in a very large amount (billions of dollars) in forfeiture proceedings for them in numerous districts.

94.     Consequently, the dismissal of the <u>Acherman</u> case in **December of 2016,** by Judge Marcia G. Cooke was well publicized in the Miami area.  It was a highly contested and a very emotionally-charged case amongst all of participating

counsel on both sides. There were many pleadings filed along the way supporting evidence of prosecutorial misconduct, evidence of <u>Brady</u> violations, etc.

95. In this context, and from the initial documents finally produced by these Defendants just late last February and March of 2020, is when we first discovered that personnel with the Miami USAO were actually circulating emails amongst themselves with copies of a *Vice.com* media article entitled, "**How the Feds Blew a Case Against an Alleged South American Drug Money Launderer**" **(EXHIBIT F-2).** Therein they are acknowledging their outrage and embarrassment concerning the connection of the intern (Plaintiff) in their forfeiture department being my son. The <u>Acherman</u> events described in this news article obviously were now an untenable and embarrassing public relations event for their USAO forfeiture department that it unconscionably precipitated these subject events and the abusive retaliation scheme against the Plaintiff as described herein after he refused to voluntarily resign.

96. With respect to these Lustgarten <u>Acherman</u> events the Plaintiff appropriately attempted to deal with this issue is a non-public manner. This is important and highly relevant information for purposes of the <u>Moreno</u> litigation, but is also relates to ongoing criminal investigations. Therefore, the Plaintiff requested that certain exhibits related thereto be filed under seal[1] in this action [DE 20]. The Defendants opposed and filed their opposition to these filings being under seal

---

[1] Federal law specifically prohibits the public disclosure of the identity of informants in ongoing criminal investigations.

[DE-22].  Consequently, the Plaintiff's motion to file under seal was unfortunately denied by this Court on **July 9, 2020** [DE 25] without a hearing.

97.     However, approximately 2 months thereafter on **September 20, 2020**, an article primarily was focused on the same Martin Lustgarten <u>Acherman</u>, containing certain of the same information and subject matter contained in the email of Evelyn B. Sheehan (USAFLS), "**intern's father represented one of these targets/current cooperator in the VZ matter**") (**EXHIBIT H-1**).  Therefore, the person that the Plaintiff had attempted to protect from public disclosure by moving to file under seal, unfortunately then was exposed in the article appearing in the Miami Herald.  The headline of the article appearing therein was entitled, "<u>**As Venezuela Spiraled into Impoverished Hellscape, Rich Expats Cashed In, Records Reveal**</u>."  (**EXHIBIT F-3**).  See, https://www.miamiherald.com/news/nation-world/world/americas/article245623340.html  As noted in the subject matter of this article, Mr. Lustgarten Acherman was indeed at all times relevant a prominent and important individual of interest for the Miami USAO.  Unfortunately, it is this fact and coincidence that motivated and precipitated the government's misconduct and abuse in its misguided efforts and pursuit of unconscionable vicarious retaliation against the Plaintiff.

98.     Notwithstanding the foregoing, my involvement as defense counsel in the <u>Acherman</u> case had been properly and voluntarily disclosed by him to his internship supervisor (the former AUSA Alison Lehr) at the very beginning of his internship assignment in this forfeiture department.  However, it was not until shortly after the Plaintiff began his internship and this father-son connection was

made by others within that forfeiture department. This became the catalyst that created a self-imposed crisis and perceived threat within that forfeiture department. Obviously, this sensitive topic and subject matter became fodder for office gossip, and therefore became a perceived personal embarrassment to the former AUSA Alison Lehr before her peers. It became an unacceptable source of professional criticism and embarrassment for Ms. Lehr having accepted the Plaintiff as an intern in their forfeiture department.

99.     At that point, Ms. Lehr apparently perceived the Plaintiff's continuance in the forfeiture department as a serious liability for her, and a potential threat to her AUSA career (as ultimately happened, her career did end in part due to the Moreno litigation, but including the additional reasons and behavior further described in **EXHIBIT J-2**). This professional embarrassment was particularly true for Ms. Lehr since she was in a leadership position in the asset forfeiture department. In that capacity she had personally been responsible for selecting the Plaintiff for this internship in particular consideration of his finance/banking background.

100.    It now appears in retrospect that sometime during the early part of the month of February of 2018, the discovery of this father-son connection began to bubble to the surface in this forfeiture department. The first overt sign of this began with the Plaintiff beginning to be verbally abused by one of the AUSA's in this forfeiture department seemingly for no apparent or explicable reason. As a consequence thereof, and in the interest of resolving this uncomfortable work situation, the Plaintiff appropriately complained about this hostile work situation to

Ms. Lehr. See the attached email from the Plaintiff to the former AUSA Alison Lehr, dated February 21, 2018 (**EXHIBIT H-2**).

101.    This verbal abuse did not discourage the Plaintiff from continuing on with his internship since he was enjoying it as noted in **EXHIBIT H-2**. The response he received from Ms. Lehr was that he should not be making such a complaint to her as that could get discovered by a criminal defense attorney in a case involving their office. Obviously that response was not helpful and was not true, but the next ploy undertaken by Ms. Lehr and others was that sometime during the month March Ms. Lehr informed the Plaintiff that he should not bother to come to the office anymore because there was "no longer a desk available" for him to use.

102.    But the "no desk available" ploy still did not discourage the Plaintiff since as he observed there was no credibility to that statement in fact. So, the next ploy undertaken by Ms. Lehr was that of telling him that his internship was now over with as it was completed. However, since the Plaintiff was afraid to lose his law school semester credits, he discussed this issue for confirmation directly with the HR person at the USAO. But HR informed the Plaintiff that he could remain until the end of May—contradictory information the Plaintiff then communicated back and provided to Ms. Lehr, seeking an explanation therefor.

103.    It was at this point out of frustration, with Ms. Lehr seemingly having run out of options to force the Plaintiff to voluntarily end of his internship, that another scheme was then devised by Ms. Lehr and Benjamin G. Greenberg. They enlisted Judge Moreno, a close friend and colleague of Greenberg, to discourage the Plaintiff from remaining at the USAO. As is now the subject matter of the

Moreno litigation, he unfortunately accommodated their wishes with his unscheduled hearing on April 10, 2018.

104. The confirmation of the existence this scheme can be found in the attached **EXHIBIT I**. Therein, it is clear that Ms. Lehr and her fellow workers were aware of the planned and staged "roasting" of the Plaintiff by Moreno. These emails are going on almost contemporaneously with the hearing that took place that same day. They are obviously aware of the hearing taking place, despite the fact it was unscheduled as previously noted, was precipitously arranged by a personal call from Moreno to the Plaintiff's cell phone the day before, and the subject matter of the hearing had absolutely nothing to do with the business or any case involving the USAO.

105. The hearing was also conducted with the knowledge and participation of the then U.S. Attorney Benjamin G. Greenberg, as this was obliquely confirmed by Moreno who stated during in this hearing that he had just spoken with Mr. Greenberg. Following the hearing, Ms. Lehr instructed the Plaintiff to meet with Mr. Greenberg, and so the Plaintiff emailed Mr. Greenberg to meet as noted in **EXHIBIT I** – but he never responded to Plaintiff's email to meet – for obvious reasons. Additionally, Ms. Lehr also requested Plaintiff to immediately order a copy of the transcript of the staged "roasting" hearing that just happened before Moreno. She deceptively did so under the guise of telling him she was going to assist him in dealing with the unfair and inappropriate treatment he had just encountered before Moreno. The Plaintiff dutifully complied with both requests of Ms. Lehr at that time. Unfortunately, it was the copy of that transcript that he obtained and provided to her at her request that was used by Ms. Lehr, as she had always intended, to become

the ultimate weapon against the Plaintiff. She providing copies to Lisa Roberts (SEC) to cause Plaintiff's SEC internship rescinded, she provided a copies to two publishing companies to get the resulting defamatory law articles published, and used this information for jeopardizing the status of his being able to continue on with his present law school.

106.    Once again, what is obviously missing from the FOIA/PA document production are those emails that preceded and followed after the events involving this hearing from these same AUSAs, and including those of the U.S. Attorney Greenberg who departed this office shortly after the Moreno action was commenced. Where are his emails relating to, leading up to, and following this Moreno hearing event?

107.    This was a malicious, staged hearing for the purpose of having the Plaintiff "roasted" by Moreno. These collective actions went beyond that of being outrageous and malicious, and for these so-called professionals to bully, intimidate and traumatize a naïve second year law student in this manner in totally and completely-inexcusable manner – it is simply beyond belief this could have happened in any civilized country.

108.    What is also revealing in the pettiness and embarrassing unprofessionalism that was involved in this retaliatory and vindictive abuse of the Plaintiff appears in the follow-up email chain (**EXHIBIT H-1**). Therein, the former AUSA Alison Lehr and AUSA Evelyn B. Sheehan are expressing, sharing and exchanging their total disdain of the Plaintiff with the most incredibly uncivilized and unprofessional comments. It begins with comments in reference to the Plaintiff with Ms. Lehr stating, **"spit spit spit,"** and which then gets responded to equally

40

offensively in the email chain by Ms. Sheehan with her like-kind comment of, **"Spit spit spit to INFINITY."** One could not make-up these kind of uncivilized and highly unprofessional statements, even if one were writing a John Grisham novel. This kind of obnoxious and unprofessional behavior by AUSA's exchanging emails within their offices in a USAO, would not be believable to any reader. This kind of vindictive, retaliatory and malicious governmental misconduct taking place within any USAO in the entire country is simply astounding.

109. The direct consequence of all of this office drama was the series of inexcusable governmental misconduct events, and the unconscionable needless extreme personal abuse of the Plaintiff – all as described and noted herein. The goal and mission of Ms. Lehr and others was to not only to force an early termination of the Plaintiff's internship, but it also became the vicious and emotionally depraved pursuit of further retaliation to place his professional career in the greatest jeopardy that they were capable of creating – which goal they have unfortunately achieved quite successfully.

110. This kind of irrational, unprofessional, and emotionally unstable behavior and conduct undertaken by former AUSA Alison Lehr was not isolated to these events. It was further exemplified, demonstrated and exhibited by her similarly bizarre behavior while criminally resisting service of process (**EXHIBIT J-1** – DE 55]. See a copy of the affidavit regarding this event being attached hereto as **EXHIBIT J-2.** However, the additional service of process costs that were created by this dramatic and traumatic event were appropriately and subsequently awarded to the Plaintiff (**EXHIBIT J-1** [DE 72]).

41

111. The substance and very critical information contained in all these very important documents (even with the limited production, redactions, etc.) noted and/or included herein collectively do support the facts and claims asserted and set forth in the Moreno complaint before Judge Saris in the District of Massachusetts. It is for this very reason that they clearly were not produced and/or timely disclosed to the Plaintiff prior to **January 6, 2020.** In fact, only partial production and access has been made through this date.

112. In this context, it would be pure speculation by *any* person as to whether or not had there been complete and timely disclosure, and performed with total transparency, and having the opportunity to include these documents as part of the record in the Moreno action, that it would, or would not, have altered the court's ultimate decision made on **January 6, 2020**. The issue for this Court is *not* that of an analysis of the harm that may have been caused by such "bad faith" actions in not timely complying with their statutory obligations, but is the mere existence of their "bad faith" conduct that creates the government's forfeiture of asserting and maintaining any exemptions otherwise that may have been available to them as a matter of law.

113. As noted hereinabove, it was specifically expressed by Judge Saris that she did not believe these events to be "plausible." We certainly were not in a position prior to late February of 2020 to provide her with an explanation and documentary proof that demonstrates the source of the misguided motivation for this governmental abuse and misconduct. However, as noted above, that speculative issue as to what the court may have done were these documents before it having been timely and completely produced, is irrelevant as to any

determination by this Court. The determinative issue is that of whether or not the Defendants failed to timely act and produce all of the requested access documents as required pursuant to both FOIA and the Privacy Act, and to have done so in the exercise of "good faith" in a consideration of the totality of these circumstances.

114.    Certainly, one of the foreseeable harmful consequences for this governmental misconduct was the necessity of having to subsequently incorporate these material facts obtained after the fact from this previously withheld document production into an untimely amended Moreno complaint that was then filed with the U.S. District Court of Southern Florida on **March 27, 2020 (EXHIBIT G-1**). Although this pending complaint was initially filed in Miami as was procedurally required due to the personal jurisdiction issue raised here, the Eleventh Circuit Court of Appeals has specially assigned this case to District Judge Abdul K. Kallon from the U. S. District Court for the Northern District of Alabama.  Therefore, the harm caused is that of unnecessarily extending this litigation into another inconvenient forum at great expense, causing Judge Kallon to expend time and effort that should have been avoided, and now the Plaintiff faces another 2-3 years or more of unnecessary and wasteful litigation, for a case which has zero meritorious defense and could have and should have been settled by the government long ago.

115.    Indeed, had the Defendants produced these documents timely and with complete transparency (as they were obligated to do), in all likelihood, there would have been a mediation process undertaken and completed long ago—as had been wisely recommended by Magistrate Judge Dein very early on in the Moreno case when it was pending in this court. It would have ended the ongoing stress and the ongoing emotional

harm to the Plaintiff and his family, it would have lifted the burden of this and other courts having to spend hours upon hours of reading, researching and writing during the course of having to deal with all of these procedural technical nuances and niceties, as exemplified by the myriad of pleadings that have unnecessarily been created as noted on these attached docket sheets. Perhaps as importantly, the timely production of these access materials completely and transparently would have allowed the Plaintiff to have become a member of the bar now being 2 years out of law school - as he has earned the right to be and so well deserves.

## CONCLUSION

116. Certainly, the timely and proper response required by FOIA/PA would have avoided most of this ongoing emotional, financial and career harm that is still being caused to the Plaintiff as of this date. This includes, but certainly not limited to, his admission to the bars here in Massachusetts and Florida having now been a law school graduate for over 2 years.

117. The government clearly has not acted in "good faith" throughout this FOIA and Privacy Act process going back to the initial requests of the Plaintiff on or about October 14, 2018, and continuing thereafter right through the present date. They have consistently delayed and obstructed the complete document production process of this FOIA and Privacy Act record access to date and in "bad faith." The reason and motivation thereof is the obvious self-serving reason of it being the unlawful coordination with other government counsel and parties as part of their litigation strategy attempting to assist in the so-called defense of the still ongoing and pending Moreno action.

118.    Certainly, the government's behavior throughout has not been the
pursuit of transparency, it not been consistent with a search for the facts and the
truth, and it has not been consistent with that of even trying to be fair.  They have
continued to play their proverbial shell game with these FOIA and Privacy Act
document productions even as of today, and including their inappropriate tactic of
hiding behind asserted and inapplicable exemption claims, etc.

119.    There can be little or no hope to have the bright light of justice again
shine on our society today if we cannot rely upon our courts to exercise its duty in a
fair and impartial manner.  The scales of justice always need to be balanced
equally and for all parties. We must all insist upon our government adhering to the
basic principles expressed so many years ago by President Lincoln in 1863 at
Gettysburg, "that government of the people, by the people, for the people, shall not
perish from the earth."  Otherwise, we are all doomed to the risk of being next in
the same intractable position of the Plaintiff.  There are all too many of our citizens
who find themselves with constitutional and/or statutory rights, but with no practical
or affordable remedies to exercise their rights. There exists all too many forms of
potential abuse that unfortunately is inherent in the overwhelming power,
extraordinary financial resources, and of having the luxury of an endless amount
time that our Government has at its disposal.

120.    We must always insist on a government that is transparent, that
seeks to find the truth despite the nature of the disputes, that always provides for
our safety, and that protects us from the kind of harm and abuse that has certainly
occurred to the Plaintiff in these circumstances.  He has endured more than

45

enough of the government's inexcusable and seemingly endless pursuit of retaliation and abuse (now over 3 years of litigation), and they have unjustifiably figuratively "**spit**" on him all too long in these circumstances. It is now long past time for a speedy, fair and just resolution of all of these issues – which the Plaintiff has always been willing to fully cooperate in that process going way back to the early suggestion and words of experience of Magistrate Judge Judith Dein. In the context of fairness and justice, a very constructive and hopeful beginning will be for this Court to now order without any further delays or impediments the full and complete production of all of the FOIA and Privacy access documents that the Plaintiff has been entitled to since October of 2018.

SIGNED under the pains and penalties of perjury this 4th day of June, 2021.

/s/ E. Peter Mullane, Esq.

E. PETER MULLANE, ESQ.
BBO #360000
MULLANE, MICHEL & McINNES LLP
6 Bennett Street
Cambridge, MA 02138
Tel.: (617) 661-9000
Email: peter@3mlaw.com

# EXHIBIT A

# United States District Court
## District of Massachusetts (Boston)
### CIVIL DOCKET FOR CASE #: 1:18-cv-12618-PBS

Mullane v. Breaking Media, Inc. et.al.
Assigned to: Chief Judge Patti B. Saris
related Case: 1:19-cv-11496-PBS
Case in other court: Suffolk Superior Court, 1884CV0386
USCA - First Circuit, 20-01061
USCA - First Circuit, 20-01062
USCA - First Circuit, 20-01080
USCA - First Circuit, 20-01390
Cause: 28:1442 Petition for Removal

Date Filed: 12/20/2018
Date Terminated: 01/06/2020
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: U.S. Government Defendant

## Plaintiff

**Pro Se Party Jonathan Mullane**

represented by **Jonathan Mullane**
30 Donnell Street
Cambridge, MA 02138
617-800-6925
Email: j.mullane@icloud.com
PRO SE

V.

## Defendant

**Federico A. Moreno**
*TERMINATED: 01/03/2019*

## Defendant

**Breaking Media, Inc.**

represented by **John Mark Dickison**
Lawson & Weitzen, LLP
88 Black Falcon Avenue
Suite 345
Boston, MA 02210-2414
617-439-4990
Fax: 617-439-3987
Email: mdickison@lawson-weitzen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brendan P. Slean**
Lawson & Weitzen
88 Black Falcon Avenue
Suite 345
Boston, MA 02210
617-439-4990
Email: bslean@lawson-weitzen.com
*ATTORNEY TO BE NOTICED*

**Joshua M.D. Segal**
Lawson & Weitzen

88 Black Falcon Avenue
Suite 345
Boston, MA 02210
617-439-4990
Email: jsegal@lawson-weitzen.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**The United States of America**
*TERMINATED: 09/16/2019*

represented by **Christopher L. Morgan**
United States Attorney's Office
Suite 230
United States Courthouse
300 State St.
Springfield, MA 01105
413-785-0269
Email: christopher.morgan2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason C. Weida**
US Attorney's Office - MA
J. Joseph Moakley U.S. Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3100
Email: jason.weida@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elie Mystal**
*in his individual and corporate capacities*

represented by **John Mark Dickison**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brendan P. Slean**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alison W. Lehr**
*TERMINATED: 09/16/2019*

represented by **Christopher L. Morgan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason C. Weida**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Federico A. Moreno**

represented by **Christopher L. Morgan**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason C. Weida**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**E. Peter Mullane**          represented by **E. Peter Mullane**
*Plaintiff-Intervenor*                      Mullane, Michel & McInnes
                                            6 Bennett Street
                                            Cambridge, MA 02138-5736
                                            617-661-9000
                                            Fax: 617-661-3000
                                            Email: peter@3mlaw.com
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/20/2018 | 1 | NOTICE OF REMOVAL by The United States of America ( Fee Status: US Government) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Weida, Jason) (Entered: 12/20/2018) |
| 12/20/2018 | 2 | MOTION to Substitute Party *under the Westfall Act* by The United States of America. (Weida, Jason) (Entered: 12/20/2018) |
| 12/20/2018 | 3 | MEMORANDUM in Support re 2 MOTION to Substitute Party *under the Westfall Act* filed by The United States of America. (Attachments: # 1 Exhibit A)(Weida, Jason) (Entered: 12/20/2018) |
| 12/20/2018 | 4 | Proposed Document(s) submitted by The United States of America. Document received: Proposed Order of Substitution. (Weida, Jason) (Entered: 12/20/2018) |
| 12/20/2018 | 5 | NOTICE of Appearance by John Mark Dickison on behalf of Breaking Media, Inc. (Dickison, John) (Entered: 12/20/2018) |
| 12/20/2018 | 6 | Civil Cover Sheet & Category Sheet re 1 Notice of Removal by The United States of America. (Weida, Jason) (Entered: 12/20/2018) |
| 12/20/2018 | 7 | MOTION to Dismiss for Lack of Jurisdiction *All Claims Against the United States* by The United States of America.(Weida, Jason) (Entered: 12/20/2018) |
| 12/20/2018 | 8 | MEMORANDUM in Support re 7 MOTION to Dismiss for Lack of Jurisdiction *All Claims Against the United States* filed by The United States of America. (Weida, Jason) (Entered: 12/20/2018) |
| 12/20/2018 | 9 | NOTICE of Appearance by Brendan P. Slean on behalf of Breaking Media, Inc. (Slean, Brendan) (Entered: 12/20/2018) |
| 12/21/2018 | 10 | ELECTRONIC NOTICE of Case Assignment. Chief Judge Patti B. Saris assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Judith G. Dein. (adminn, ) (Entered: 12/21/2018) |

| 12/21/2018 | 11 | Certified Copy of Notice of Removal Provided to Defense Counsel by mail (Vieira, Leonardo) (Entered: 12/21/2018) |
|---|---|---|
| 12/21/2018 | 12 | CORPORATE DISCLOSURE STATEMENT by Breaking Media, Inc.. (Dickison, John) (Entered: 12/21/2018) |
| 12/26/2018 | 13 | NOTICE of Appearance by Joshua M.D. Segal on behalf of Breaking Media, Inc. (Segal, Joshua) (Entered: 12/26/2018) |
| 12/26/2018 | 14 | (First ) AMENDED COMPLAINT against All Defendants, filed by Jonathan Mullane. (Attachments: # 1 Exhibit)(Geraldino-Karasek, Clarilde) (Entered: 12/26/2018) |
| 12/31/2018 | 15 | Summons Issued as to Elie Mystal. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** Issued by hand. (DeMaria, Timothy) (Entered: 12/31/2018) |
| 12/31/2018 | 16 | MOTION to Strike Filings by Substituted Defendant United States of America, Cross Motion to Re-Substitute Defendant Moreno, and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Exhibit A)<br><br>Documents requested to strike: 2 MOTION to Substitute Party *under the Westfall Act*, 3 Memorandum in Support of Motion, 7 MOTION to Dismiss for Lack of Jurisdiction *All Claims Against the United States*, 8 Memorandum in Support of Motion, 4 Proposed Document(s) submitted (Caruso, Stephanie) (Entered: 01/02/2019) |
| 01/03/2019 | 17 | Assented to MOTION to Stay *All Deadlines As To The United States Of America In Light Of Lapse Of Appropriations* by The United States of America.(Weida, Jason) (Entered: 01/03/2019) |
| 01/03/2019 | 18 | Chief Judge Patti B. Saris: ELECTRONIC ORDER entered ALLOWED 2 Motion to Substitute Party. Federico A. Moreno terminated (Geraldino-Karasek, Clarilde) (Entered: 01/09/2019) |
| 01/03/2019 | 19 | Chief Judge Patti B. Saris: ORDER entered. ORDER to Substitute Party (Geraldino-Karasek, Clarilde) (Entered: 01/09/2019) |
| 01/08/2019 | 20 | Chief Judge Patti B. Saris: Endorsed ORDER entered " ALLOWED " re 17 Assented to MOTION to Stay All Deadlines As To The United States Of America In Light Of Lapse Of Appropriations. (Geraldino-Karasek, Clarilde) (Entered: 01/09/2019) |
| 01/09/2019 | 21 | MOTION to Dismiss , MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 01/09/2019) |
| 01/09/2019 | 22 | MEMORANDUM in Support re 21 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 01/09/2019) |
| 01/09/2019 | 23 | AFFIDAVIT in Support re 21 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . (Dickison, John) (Entered: 01/09/2019) |
| 01/09/2019 | 24 | AFFIDAVIT in Support re 21 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . (Dickison, John) (Entered: 01/09/2019) |
| 01/09/2019 | 25 | Copy re 20 Order on Motion to Stay, 19 Order mailed to Jonathan Mullane 60 Clyde Street Unit # 1 Somerville, MA 02145 on 1/10/2019. (Geraldino-Karasek, Clarilde) |

5/12/2021
Case 1:20-cv-12379-ADB Document 35-1 Filed 06/07/21 Page 6 of 88
Case 1:19-cv-13379-DJC Document 75-1 Filed 08/07/20 Page 57 of 186

| 01/23/2019 | 26 | Opposition re 21 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Jonathan Mullane. (Lara, Miguel) (Main Document 26 replaced on 1/23/2019 to reflect correct document) (Lara, Miguel). (Entered: 01/23/2019) |
|---|---|---|
| 01/25/2019 | 27 | SUMMONS Returned Executed as to Elie Mystal served on 1/11/2019, answer due 2/1/2019. (Lara, Miguel) (Entered: 01/25/2019) |
| 01/30/2019 | 28 | MOTION for Leave to File *Reply Brief* by Breaking Media, Inc., Elie Mystal. (Attachments: # 1 Exhibit Proposed Reply Brief)(Dickison, John) (Entered: 01/30/2019) |
| 01/31/2019 | 29 | Chief Judge Patti B. Saris: ELECTRONIC ORDER entered. ORDER LIFTING STAY(Lara, Miguel) (Entered: 01/31/2019) |
| 01/31/2019 | 30 | Chief Judge Patti B. Saris: ELECTRONIC ORDER entered granting 28 Motion for Leave to File Document ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (Lara, Miguel) (Entered: 01/31/2019) |
| 01/31/2019 | 31 | REPLY to Response to 21 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 01/31/2019) |
| 02/06/2019 | 32 | Plaintiff's Application for: (1) An "Entry of Default" Pursuant to F.R.CIV.P.55(a); And (2) A "Default Judgment" Pursuant to F.R.CIV.P.55(b)(1) by Jonathan Mullane. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Lara, Miguel) (Entered: 02/07/2019) |
| 02/11/2019 | 33 | Assented to MOTION for Extension of Time to March 22, 2019 to File Answer re 14 Amended Complaint, 16 MOTION to Strike 2 MOTION to Substitute Party *under the Westfall Act*, 3 Memorandum in Support of Motion, 7 MOTION to Dismiss for Lack of Jurisdiction *All Claims Against the United States*, 8 Memorandum in Support of Motion by The United States of America.(Weida, Jason) (Entered: 02/11/2019) |
| 02/11/2019 | 34 | Response by The United States of America to 32 Request for notice of default, . (Weida, Jason) (Entered: 02/11/2019) |
| 02/11/2019 | 35 | MOTION for Extension of Time to File Answer re 14 Amended Complaint *on behalf of the Hon. Federico A. Moreno* by The United States of America.(Weida, Jason) (Entered: 02/11/2019) |
| 02/13/2019 | 36 | MOTION to Strike 35 MOTION for Extension of Time to File Answer re 14 Amended Complaint *on behalf of the Hon. Federico A. Moreno* and 34 Response by Jonathan Mullane. (Lara, Miguel) (Entered: 02/14/2019) |
| 02/14/2019 | 37 | Chief Judge Patti B. Saris: ELECTRONIC ORDER entered. REFERRING CASE to Magistrate Judge Judith G. Dein Referred for: Full Pretrial, Dispositive Motions and REPORT AND RECOMMENDATIONS (ptd). Motions referred: 35 MOTION for Extension of Time to File Answer, 33 Assented to MOTION for Extension of Time to March 22, 2019 to File Answer, 16 MOTION to Strike 2 MOTION to Substitute Party *under the Westfall Act*, 7 MOTION to Dismiss for Lack of Jurisdiction *All Claims Against the United States*, 21 MOTION to Dismiss, 36 MOTION to Strike.(Lara, Miguel) Motions referred to Judith G. Dein. (Entered: 02/14/2019) |
| 02/19/2019 | 38 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered finding as moot 7 the United States' Motion to Dismiss for Lack of Jurisdiction in light of the filing of |

| | | Plaintiff's Amended Complaint. (Dambrosio, Jolyne) (Entered: 02/19/2019) |
|---|---|---|
| 02/19/2019 | 39 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered granting 33 the United States' Assented to Motion for Extension of Time. Response to Plaintiff's 14 Amended Complaint and 16 Motion to Strike due 3/22/2019. (Dambrosio, Jolyne) (Entered: 02/19/2019) |
| 02/19/2019 | 40 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered denying 32 Plaintiff's Application for Entry of Default and Default Judgment. The Application is premature as the Defendants' responses are not due for the reasons detailed in 34 the United States' Statement of Interest. (Dambrosio, Jolyne) (Entered: 02/19/2019) |
| 02/19/2019 | 41 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered granting 35 the United States' Motion for Extension of Time. The time in which Judge Moreno must answer or otherwise respond to the Amended Complaint is extended to 3/22/2019. (Dambrosio, Jolyne) (Entered: 02/19/2019) |
| 02/19/2019 | 42 | Plaintiff's First Motion for Judicial Notice and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Exhibit Article)(Lara, Miguel) (Entered: 02/19/2019) |
| 02/19/2019 | 43 | MOTION for Limited Discovery, or in the Alternative, for a Judicial Finding and Incorporated Memorandum of Law. by Jonathan Mullane. (Attachments: # 1 Exhibit) (Lara, Miguel) (Entered: 02/19/2019) |
| 02/19/2019 | 44 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered denying 36 Plaintiff's Motion to Strike Docket Nos. 34 & 35. (Dambrosio, Jolyne) (Entered: 02/19/2019) |
| 02/19/2019 | 45 | ELECTRONIC NOTICE SETTING HEARING on 21 Defendants Breaking Media, Inc. and Elie Mystal's MOTION to Dismiss: Motion Hearing set for 3/28/2019 02:30 PM in Courtroom 15 before Chief Judge Patti B. Saris. (Dambrosio, Jolyne) (Entered: 02/19/2019) |
| 02/19/2019 | 46 | ELECTRONIC NOTICE RESETTING HEARING on 21 Defendants Breaking Media, Inc. and Elie Mystal's MOTION to Dismiss: Motion Hearing reset for 3/28/2019 02:30 PM in Courtroom 15 before Magistrate Judge Judith G. Dein. (Dambrosio, Jolyne) (Entered: 02/19/2019) |
| 02/22/2019 | 47 | MOTION for Leave to Submit an Amended Complaint and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Exhibit A, # 2 Exhibit A-2, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E)(Lara, Miguel) (Entered: 02/22/2019) |
| 02/22/2019 | 48 | CERTIFICATE OF SERVICE by Jonathan Mullane re 47 MOTION for Leave to Submit an Amended Complaint. (Lara, Miguel) (Entered: 02/22/2019) |
| 02/25/2019 | 49 | STATE COURT Record. (Attachments: # 1 Exhibit A)(Weida, Jason) (Entered: 02/25/2019) |
| 03/05/2019 | 50 | Response by Breaking Media, Inc., Elie Mystal to 42 Request for Judicial Notice . (Segal, Joshua) (Entered: 03/05/2019) |
| 03/08/2019 | 51 | Opposition re 47 MOTION for Leave to File a Second Amended Complaint filed by Breaking Media, Inc., Elie Mystal. (Segal, Joshua) (Entered: 03/08/2019) |
| 03/09/2019 | 52 | Opposition re 47 MOTION for Leave to File filed by The United States of America. (Weida, Jason) (Entered: 03/09/2019) |
| 03/12/2019 | 53 | MOTION for Leave to Submit an Omnibus Reply by Jonathan Mullane.(Lara, Miguel) # 1 Proposed Omnibus Reply # 2 Exhibit A # 3 Exhibit B) (Lara, Miguel). (Entered: 03/12/2019) |

| 03/12/2019 | 54 | SUPPLEMENTAL MEMORANDUM in Opposition re 21 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Jonathan Mullane. (Lara, Miguel) (Entered: 03/12/2019) |
| --- | --- | --- |
| 03/13/2019 | 55 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered granting 53 Plaintiff's Motion for Leave to Submit an Omnibus Reply. Plaintiff should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (Dambrosio, Jolyne) (Entered: 03/13/2019) |
| 03/13/2019 | 56 | Magistrate Judge Judith G. Dein: ORDER entered granting 47 Plaintiff's Motion to Amend Complaint, denying 42 Plaintiff's First Motion for Judicial Notice, and denying 43 Plaintiff's Motion for Limited Discovery. Plaintiff shall file the Second Amended Complaint as a separate docket entry, with "Leave to Amend Granted on 3/13/2019" appearing in the caption. (Dambrosio, Jolyne) (Entered: 03/13/2019) |
| 03/15/2019 | 57 | VERIFIED SECOND AMENDED COMPLAINT against All Defendants, filed by Jonathan Mullane. (Attachments: # 1 Exhibits)(Lara, Miguel) (Entered: 03/15/2019) |
| 03/15/2019 | 58 | MOTION for Service of Process by the United States Marshals Service, and for an Award of Reasonable Expenses and Costs against Defendant Alison W. Lehr by Jonathan Mullane. (Attachments: # 1 Exhibits)(Lara, Miguel) (Entered: 03/15/2019) |
| 03/15/2019 | 59 | OMNIBUS REPLY to Defendants' re 51 and 52 Opposition and in Support of his Motion for Leave to File a Second Amended Complaint by Jonathan Mullane (Attachments: # 1 Exhibits)(Lara, Miguel) (Entered: 03/15/2019) |
| 03/15/2019 | 60 | Summons Issued as to Alison W. Lehr. Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service. (Lara, Miguel) (Entered: 03/15/2019) |
| 03/20/2019 | 61 | ELECTRONIC NOTICE RESETTING HEARING on 21 Defendants Breaking Media, Inc. and Elie Mystal's MOTION to Dismiss: Motion Hearing reset for 3/29/2019 02:30 PM in Courtroom 15 before Magistrate Judge Judith G. Dein. (Dambrosio, Jolyne) (Entered: 03/20/2019) |
| 03/22/2019 | 62 | NOTICE of Appearance by Jason C. Weida on behalf of Federico A. Moreno (Weida, Jason) (Entered: 03/22/2019) |
| 03/22/2019 | 63 | Assented to MOTION for Leave to File Excess Pages *for Judge Moreno's Memorandum of Law in Support of His Motion to Dismiss All Claims Against Him* by Federico A. Moreno.(Weida, Jason) (Entered: 03/22/2019) |
| 03/22/2019 | 64 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered granting 63 Defendant Moreno's Assented to Motion for Leave to File Excess Pages. Counsel should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (Dambrosio, Jolyne) (Entered: 03/22/2019) |
| 03/22/2019 | 65 | MOTION to Substitute Party *under the Westfall Act* by The United States of America. (Weida, Jason) (Entered: 03/22/2019) |
| 03/22/2019 | 66 | MEMORANDUM in Support re 65 MOTION to Substitute Party *under the Westfall Act* filed by The United States of America. (Attachments: # 1 Exhibit A)(Weida, Jason) (Entered: 03/22/2019) |
| 03/22/2019 | 67 | Proposed Document(s) submitted by The United States of America. Document received: |

| | | Order of Substitution of the United States for Judge Moreno. (Weida, Jason) (Entered: 03/22/2019) |
|---|---|---|
| 03/22/2019 | 68 | MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim* by The United States of America.(Weida, Jason) (Entered: 03/22/2019) |
| 03/22/2019 | 69 | MEMORANDUM in Support re 68 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim* filed by The United States of America. (Attachments: # 1 Exhibit A)(Weida, Jason) (Entered: 03/22/2019) |
| 03/22/2019 | 70 | MEMORANDUM in Opposition re 16 MOTION to Strike 2 MOTION to Substitute Party *under the Westfall Act*, 3 Memorandum in Support of Motion, 7 MOTION to Dismiss for Lack of Jurisdiction *All Claims Against the United States*, 8 Memorandum in Support of Motion, 43 MOTION filed by The United States of America. (Weida, Jason) (Entered: 03/22/2019) |
| 03/22/2019 | 71 | MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim on which Relief Can be Granted and, Alternatively, for Lack of Personal Jurisdiction* by Federico A. Moreno.(Weida, Jason) (Entered: 03/22/2019) |
| 03/22/2019 | 72 | MEMORANDUM in Support re 71 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim on which Relief Can be Granted and, Alternatively, for Lack of Personal Jurisdiction* filed by Federico A. Moreno. (Weida, Jason) (Entered: 03/22/2019) |
| 03/28/2019 | 73 | NOTICE of Appearance by Jason C. Weida on behalf of Alison W. Lehr (Weida, Jason) (Entered: 03/28/2019) |
| 03/28/2019 | 74 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, Alternatively, to Dismiss for Lack of Personal Jurisdiction* by Alison W. Lehr.(Weida, Jason) (Entered: 03/28/2019) |
| 03/28/2019 | 75 | MEMORANDUM in Support re 74 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, Alternatively, to Dismiss for Lack of Personal Jurisdiction* filed by Alison W. Lehr. (Weida, Jason) (Entered: 03/28/2019) |
| 03/29/2019 | 81 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Judith G. Dein:case called; Motion Hearing held on 3/29/2019 re 21 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Elie Mystal, Breaking Media, Inc.; USMJ Dein hears arguments from counsel and takes the motion under advisement; USMJ Dein scheduled hearing for 5/7/19 @ 2:30 for all remaining motions. (Court Reporter: Digital Recording.) To order a copy of this Digital Recording, please go to http://www.mad.uscourts.gov/attorneys/Magistrate-Audio.htm . For a transcript of this proceeding, contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Attorneys present: ProSe Mullane, Dickison, segal and Weida) (Quinn, Thomas) Modified on 4/4/2019 to correct hearing date to 3/29/19 (Quinn, Thomas). (Entered: 04/04/2019) |
| 04/01/2019 | 76 | NOTICE of Appearance by Christopher L. Morgan on behalf of The United States of America (Morgan, Christopher) (Entered: 04/01/2019) |
| 04/01/2019 | 77 | NOTICE of Appearance by Christopher L. Morgan on behalf of Federico A. Moreno (Morgan, Christopher) (Entered: 04/01/2019) |
| 04/01/2019 | 78 | NOTICE of Appearance by Christopher L. Morgan on behalf of Alison W. Lehr (Morgan, Christopher) (Entered: 04/01/2019) |
| 04/03/2019 | 79 | MOTION for Enlargement of Time to April 12, 2019 to file an Omnibus Opposition and for Modification of the Page Limit Requirements as to 74 MOTION TO DISMISS FOR |

| | | FAIL TO STATE A CLAIM *or, Alternatively, to Dismiss for Lack of Personal Jurisdiction*, 71 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim on which Relief Can be Granted and, Alternatively, for Lack of Personal Jurisdiction*, 68 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim* by Jonathan Mullane.(Lara, Miguel) (Entered: 04/03/2019) |
|---|---|---|
| 04/03/2019 | 80 | MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ( Responses due by 4/17/2019) by Breaking Media, Inc., Elie Mystal.(Dickison, John) (Entered: 04/03/2019) |
| 04/04/2019 | 82 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered denying 79 Motion for Extension of Time to File Response/Reply this motion is denied without prejudice for failure to comply with local rule 7.1 (a)(2) (Quinn, Thomas) (Entered: 04/04/2019) |
| 04/05/2019 | 83 | Plaintiff's Renewed MOTION for Enlargement of Time to April 12, 2019 to file an Omnibus Opposition and for Modification of the Page Limit Requirements by Jonathan Mullane.(Quinn, Thomas) (Entered: 04/05/2019) |
| 04/05/2019 | 84 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered granting 83 MOTION for Enlargement of Time to April 12, 2019 to file an Omnibus Opposition and for Modification of the Page Limit Requirements (Quinn, Thomas) (Entered: 04/05/2019) |
| 04/12/2019 | 85 | PLAINTIFF'S OMNIBUS OPPOSITION re 74 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, Alternatively, to Dismiss for Lack of Personal Jurisdiction*, 68 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim*, 71 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim on which Relief Can be Granted and, Alternatively, for Lack of Personal Jurisdiction* filed by Jonathan Mullane. (Geraldino-Karasek, Clarilde) (Additional attachment(s) added on 4/16/2019: # 1 Exhibit A) (Lara, Miguel). Modified on 4/16/2019 to add Exhibit A that was previously docketed at ECF. 86, at request of plaintiff through phone call on 4/16. (Lara, Miguel). (Entered: 04/15/2019) |
| 04/12/2019 | 86 | PLAINTIFF'S RENEWED MOTION for Limited Discovery or in the Alternative for a Judicial Finding by Jonathan Mullane. (Geraldino-Karasek, Clarilde) . (Entered: 04/15/2019) |
| 04/23/2019 | 87 | Assented to MOTION for Extension of Time to May 3, 2019 to File Response/Reply as to 86 MOTION for Leave to File *Renewed Motion for Limited Discovery or in the Alternative for a Judicial Finding* by The United States of America.(Morgan, Christopher) (Entered: 04/23/2019) |
| 04/24/2019 | 88 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered granting 87 Defendants' Assented to Motion for Extension of Time to File Response/Reply re 86 Plaintiff's Renewed Motion for Limited Discovery. Responses due by 5/3/2019. (Dambrosio, Jolyne) (Entered: 04/24/2019) |
| 05/03/2019 | 89 | Assented to MOTION for Leave to File *Reply in Support of Motion to Dismiss* by Federico A. Moreno. (Attachments: # 1 Exhibit 1 - Proposed Reply)(Morgan, Christopher) (Entered: 05/03/2019) |
| 05/03/2019 | 90 | Assented to MOTION for Leave to File *Reply in Support of Motion to Dismiss* by Alison W. Lehr. (Attachments: # 1 Exhibit 1 - Proposed Reply)(Morgan, Christopher) (Entered: 05/03/2019) |
| 05/03/2019 | 91 | Assented to MOTION for Leave to File *Reply in Support of Motion to Dismiss* by The United States of America. (Attachments: # 1 Exhibit 1 - Proposed Reply)(Morgan, Christopher) (Entered: 05/03/2019) |
| 05/03/2019 | 92 | Opposition re 86 MOTION for Leave to File *Renewed Motion for Limited Discovery or* |

| | | |
|---|---|---|
| | | *in the Alternative for a Judicial Finding* filed by The United States of America. (Morgan, Christopher) (Entered: 05/03/2019) |
| 05/06/2019 | 93 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered granting 89 , 90 & 91 Defendants' Motions for Leave to File Replies. Counsel should now file the documents for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the documents. (Dambrosio, Jolyne) (Entered: 05/06/2019) |
| 05/06/2019 | 94 | REPLY to Response to 68 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim (Leave to File Granted May 6, 2019)* filed by The United States of America. (Morgan, Christopher) (Entered: 05/06/2019) |
| 05/06/2019 | 95 | REPLY to Response to 74 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, Alternatively, to Dismiss for Lack of Personal Jurisdiction (Leave to File Granted May 6, 2019)* filed by Alison W. Lehr. (Morgan, Christopher) (Entered: 05/06/2019) |
| 05/06/2019 | 96 | REPLY to Response to 71 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim on which Relief Can be Granted and, Alternatively, for Lack of Personal Jurisdiction (Leave to File Granted May 6, 2019)* filed by Federico A. Moreno. (Attachments: # 1 Exhibit A)(Morgan, Christopher) (Entered: 05/06/2019) |
| 05/06/2019 | 97 | MOTION to Disqualify Counsel of Record for Defendants Federico A. Moreno and Alison W. Lehr Pursuant to 28 C.F.R. 50.15(b) by Jonathan Mullane.(Lara, Miguel) (Entered: 05/07/2019) |
| 05/06/2019 | 98 | Objection and Cross-Motion to Strike ECF 90 -1 and ECF 91 -1 in part for failure to Comply with L.R. 83.6.1(a) and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Exhibit)(Lara, Miguel) (Entered: 05/07/2019) |
| 05/07/2019 | 99 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Judith G. Dein:case called; Motion Hearing held on 5/7/2019 re 74 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, Alternatively, to Dismiss for Lack of Personal Jurisdiction* filed by Alison W. Lehr, 86 MOTION for Leave to File filed by Jonathan Mullane, 65 MOTION to Substitute Party *under the Westfall Act* filed by The United States of America, 68 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim* filed by The United States of America, 71 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Claim on which Relief Can be Granted and, Alternatively, for Lack of Personal Jurisdiction* filed by Federico A. Moreno. USMJ Dein hears arguments from counsel and Pro Se Plaintiff and takes motions under advisement. (Court Reporter: Digital Recording.) To order a copy of this Digital Recording, please go to http://www.mad.uscourts.gov/attorneys/Magistrate-Audio.htm . For a transcript of this proceeding, contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Attorneys present: Pro Se Mullane, Morgan and Dickison) (Quinn, Thomas) Modified on 5/17/2019 (Quinn, Thomas). (Entered: 05/08/2019) |
| 05/21/2019 | 100 | Opposition re 97 MOTION to Disqualify Counsel filed by Alison W. Lehr, Federico A. Moreno, The United States of America. (Morgan, Christopher) (Entered: 05/21/2019) |
| 05/21/2019 | 101 | Opposition re 98 MOTION to Strike filed by Alison W. Lehr, The United States of America. (Morgan, Christopher) (Entered: 05/21/2019) |
| 05/23/2019 | 103 | MOTION for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction, and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Exhibit) (Lara, Miguel) (Entered: 05/24/2019) |
| 05/24/2019 | 102 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered denying 98 Plaintiff's |

| | | Motion to Strike. The court will consider the pleadings filed in connection with the Motion (Docket Nos. 98, 101) as supplemental memoranda in connection with the pending motions to dismiss. (Dambrosio, Jolyne) (Entered: 05/24/2019) |
|---|---|---|
| 05/31/2019 | 104 | MOTION for Leave to Amend and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Proposed Third Amended Complaint) (Lara, Miguel) (Entered: 05/31/2019) |
| 06/04/2019 | 105 | Assented to MOTION for Extension of Time to File Response/Reply as to 103 MOTION for Leave to File, 104 MOTION for Leave to File by Alison W. Lehr, Federico A. Moreno, The United States of America.(Morgan, Christopher) (Entered: 06/04/2019) |
| 06/05/2019 | 106 | Opposition re 103 MOTION for Leave to File filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 06/05/2019) |
| 06/05/2019 | 107 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered granting 105 Defendants' Assented to Motion for Extension of Time. Defendants' Opposition to 103 Plaintiff's Motion re Discovery due 6/14/19. Defendants' Opposition to 104 Plaintiff's Motion to Amend due 6/28/2019. (Dambrosio, Jolyne) (Entered: 06/05/2019) |
| 06/13/2019 | 108 | Second Motion for Judicial Notice and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Exhibit)(Lara, Miguel) (Entered: 06/13/2019) |
| 06/14/2019 | 109 | Opposition re 103 MOTION for Leave to File filed by Alison W. Lehr, Federico A. Moreno, The United States of America. (Morgan, Christopher) (Entered: 06/14/2019) |
| 06/14/2019 | 110 | Opposition re 104 MOTION for Leave to File filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 06/14/2019) |
| 06/21/2019 | 111 | Magistrate Judge Judith G. Dein: MEMORANDUM OF DECISION AND ORDER denying 97 Plaintiff's Motion to Disqualify Counsel of Record for Defendants Federico A. Moreno and Alison W. Lehr. (Dambrosio, Jolyne) (Entered: 06/21/2019) |
| 06/26/2019 | 112 | Opposition re 108 MOTION Second Motion for Judicial Notice and Incorporated Memorandum of Law filed by Breaking Media, Inc., Elie Mystal. (Slean, Brendan) (Entered: 06/26/2019) |
| 06/26/2019 | 113 | Opposition re 108 MOTION Second Motion for Judicial Notice and Incorporated Memorandum of Law filed by Alison W. Lehr, Federico A. Moreno, The United States of America. (Morgan, Christopher) (Entered: 06/26/2019) |
| 06/28/2019 | 114 | Opposition re 104 MOTION for Leave to File filed by Alison W. Lehr, Federico A. Moreno, The United States of America. (Morgan, Christopher) (Entered: 06/28/2019) |
| 07/08/2019 | 115 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered denying without prejudice 108 Plaintiff's Second Motion for Judicial Notice. The pleadings on the pending motions are closed, and the plaintiff has not established any basis to reopen them. Moreover, the case law and articles cited by the plaintiff do not relate directly to the issues presently before the court. (Dambrosio, Jolyne) (Entered: 07/08/2019) |
| 07/08/2019 | 116 | Magistrate Judge Judith G. Dein: ELECTRONIC ORDER entered regarding 104 Plaintiff's Motion for Leave to Amend Complaint. In light of the fact that the defendants have opposed the Motion on the grounds of futility, the court will rule on the Motion to Amend in connection with its ruling on the pending Motions to Dismiss. (Dambrosio, Jolyne) (Entered: 07/08/2019) |
| 07/11/2019 | 117 | MOTION for Reconsideration re 115 Order on Motion for Judicial Notice, by Jonathan Mullane.(Lara, Miguel) (Entered: 07/11/2019) |
| 07/23/2019 | 118 | Opposition re 117 MOTION for Reconsideration re 115 Order on Motion for |

| | | Miscellaneous Relief, filed by Alison W. Lehr, Federico A. Moreno, The United States of America. (Morgan, Christopher) (Entered: 07/23/2019) |
|---|---|---|
| 07/25/2019 | 119 | Opposition re 117 MOTION for Reconsideration re 115 Order on Motion for Miscellaneous Relief, filed by Breaking Media, Inc., Elie Mystal. (Slean, Brendan) (Entered: 07/25/2019) |
| 08/13/2019 | 120 | Magistrate Judge Judith G. Dein: ORDER entered. REPORT AND RECOMMENDATIONS re 16 Plaintiff's Combined Verified Motion to Strike and Cross Motion to Re-Substitute, 21 & 80 Defendants Breaking Media, Inc. and Elie Mystal's Motion to Dismiss, 58 Plaintiff's Verified Motion re Service of Process, 65 The United States' Motion to Substitute, 68 The United States' Motion to Dismiss, 71 The Hon. Federico A. Moreno's Motion to Dismiss, 74 Assistant U.S. Attorney Alison W. Lehr' Motion to Dismiss, 86 & 103 Plaintiff's Motions re Discovery, 104 Plaintiffs Motion for Leave to Amend Complaint, and 117 Plaintiff's Motion for Reconsideration of the Order Denying Plaintiff's Second Motion for Judicial Notice. Objections to R&R due by 8/30/2019. (Dambrosio, Jolyne) (Entered: 08/13/2019) |
| 08/19/2019 | 121 | MOTION for Leave to File Excess Pages by Jonathan Mullane.(Lara, Miguel) (Entered: 08/20/2019) |
| 08/20/2019 | 122 | Chief Judge Patti B. Saris: ELECTRONIC ORDER entered granting 121 Motion for Leave to File Document ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (Lara, Miguel) (Entered: 08/20/2019) |
| 08/20/2019 | 123 | Copy re 122 Order on Motion for Leave to File, mailed to Jonathan Mullane on 8/20/20. (Lara, Miguel) (Entered: 08/20/2019) |
| 08/29/2019 | 124 | MOTION for Leave to file electronically Pro Se by Jonathan Mullane.(Lara, Miguel) (Entered: 08/29/2019) |
| 08/30/2019 | 125 | OBJECTION to 120 Report and Recommendations filed by Jonathan Mullane. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Lara, Miguel) (Entered: 09/03/2019) |
| 09/03/2019 | 126 | Chief Judge Patti B. Saris: ORDER entered granting 124 Motion for leave to electronically file Pro Se.<br><br>The court grants permission on the condition that the plaintiff satisfies all applicable training and other requirements for pro se litigants as stated in the CM/ECF Administrative Procedures, Page 5. The plaintiff is directed to complete the registration form accessible at https://public.mad.uscourts.gov/ecfreg.html<br><br>(Lara, Miguel) (Entered: 09/04/2019) |
| 09/04/2019 | 127 | Copy re 126 Order on Motion for leave to electronically file Pro Se, mailed to Jonathan Mullane on 9/4/19. (Lara, Miguel) (Entered: 09/04/2019) |
| 09/09/2019 | 128 | MOTION for Extension of Time to October 1, 2019 to File Response/Reply as to 125 Objection to Report and Recommendations by Breaking Media, Inc., Elie Mystal.(Slean, Brendan) (Entered: 09/09/2019) |
| 09/09/2019 | 129 | Assented to MOTION for Extension of Time to October 1, 2019 to File Response/Reply as to 125 Objection to Report and Recommendations by Alison W. Lehr, Federico A. Moreno, The United States of America.(Morgan, Christopher) (Entered: 09/09/2019) |
| 09/10/2019 | 130 | Chief Judge Patti B. Saris: ORDER entered re 129 Motion for Extension of Time to File |

| | | Response/Reply re 120 REPORT AND RECOMMENDATIONS. "An extension is allowed until 9/27/19." (Lara, Miguel) (Entered: 09/10/2019) |
|---|---|---|
| 09/10/2019 | 131 | Chief Judge Patti B. Saris: ORDER entered re 128 Motion for Extension of Time to File Response/Reply re 120 REPORT AND RECOMMENDATIONS. "Allowed until 9/27/19." (Lara, Miguel) (Entered: 09/10/2019) |
| 09/10/2019 | 132 | Mail Returned as Undeliverable. Mail sent to Jonathan Mullane. (Lara, Miguel) (Entered: 09/10/2019) |
| 09/13/2019 | 133 | ELECTRONIC NOTICE Setting Hearing on Pending Motions. **Hearing set for 9/30/2019 10:30 AM in Courtroom 19 before Chief Judge Patti B. Saris.** (Lara, Miguel) (Entered: 09/13/2019) |
| 09/16/2019 | 134 | Chief Judge Patti B. Saris: ORDER ON REPORT AND RECOMMENDATIONS entered. <br><br> The motions to dismiss brought by AUSA Lehr and Judge Moreno (Dkt. Nos. 71 and 74 ) based on lack of personal jurisdiction are **ALLOWED**. The plaintiff's motion for service of process and associated costs (Dkt. No. 58 ) and the plaintiff's motion for leave to amend (Dkt. No. 104 ) are **DENIED**. The United States' motion to dismiss (Dkt. No. 68 ), the United States' motion to substitute (Dkt. No. 65 ), the plaintiff's motion to strike the United States' filings and cross-motion to re-substitute (Dkt. No. 16 ), the plaintiff's motion for discovery on the scope of employment (Dkt. No. 86 ), and the plaintiff's motion for reconsideration (Dkt. No. 117 ) are **MOOT**. <br><br> The Court will hold a hearing on Breaking Media, Inc. and Elie Mystal's motions to dismiss the plaintiff's First and Second Amended Complaint (Dkt. Nos. 21 and 80 ) with respect to personal jurisdiction, as well as plaintiff's "Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction, and Incorporated Memorandum of Law" (Dkt. No. 103 ) as pertains to Defendants Breaking Media, Inc. and Elie Mystal. <br><br> SO ORDERED. <br><br> (Attachments: # 1 Report and Recommendations)(Lara, Miguel) (Entered: 09/16/2019) |
| 09/16/2019 | 135 | **AMENDED ELECTRONIC NOTICE** Setting Hearing on 103 MOTION for Leave to File, 80 MOTION to Dismiss, and 21 MOTION to Dismiss. Motion Hearing to go forward on 9/30/2019 10:30 AM in Courtroom 19 before Chief Judge Patti B. Saris. (Lara, Miguel) (Entered: 09/16/2019) |
| 09/16/2019 | 136 | **SECOND AMENDED ELECTRONIC NOTICE** RESETTING HEARING on re 103 MOTION for Leave to File, 80 MOTION to Dismiss, and 21 MOTION to Dismiss. Motion Hearing reset for 10/1/2019 10:00 AM in Courtroom 19 before Chief Judge Patti B. Saris. Please mark your calendars accordingly. (Lara, Miguel) (Entered: 09/16/2019) |
| 09/16/2019 | 137 | NOTICE of Appearance by E. Peter Mullane on behalf of E. Peter Mullane. (Lara, Miguel) (Entered: 09/17/2019) |
| 09/16/2019 | 138 | MOTION to Intervene by E. Peter Mullane. (Attachments: # 1 Proposed Complaint in Intervention, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(Lara, Miguel) (Entered: 09/17/2019) |
| 09/17/2019 | 139 | Proposed Memorandum of Law in Support of Motion to Intervene submitted by E. Peter Mullane. (Attachments: # 1 Exhibits)(Lara, Miguel) (Entered: 09/17/2019) |
| 09/17/2019 | 140 | MOTION for Reconsideration re 134 Order on Report and Recommendations by Jonathan Mullane.(Lara, Miguel) (Additional attachment(s) added on 9/17/2019: # 1 |

| | | Exhibit) (Lara, Miguel). (Entered: 09/17/2019) |
|---|---|---|
| 09/17/2019 | 141 | MOTION to Strike 21 MOTION to Dismiss 80 MOTION to Dismiss for Lack of Jurisdiction by Jonathan Mullane. (Attachments: # 1 Exhibit)(Lara, Miguel) (Entered: 09/17/2019) |
| 09/17/2019 | 142 | MOTION for Spoliation Sanctions and for an Entry of Default Against Defendants Breaking Media and Mystal by Jonathan Mullane. (Attachments: # 1 Exhibit)(Lara, Miguel) (Additional attachment(s) added on 9/19/2019, Plaintiff inadvertently left out 2 exhibits in original filing, NEF Regenerated: # 2 Exhibit B, # 3 Exhibit C) (Lara, Miguel). (Entered: 09/17/2019) |
| 09/17/2019 | 143 | THIRD MOTION for Judicial Notice by Jonathan Mullane. (Attachments: # 1 Exhibit) (Lara, Miguel) (Entered: 09/17/2019) |
| 09/17/2019 | 144 | MOTION for Leave to Submit Supplemental Authorities in Support of his Objections to the Report and Recommendation by Jonathan Mullane. (Attachments: # 1 Exhibit)(Lara, Miguel) (Entered: 09/17/2019) |
| 09/17/2019 | 145 | MOTION for Final Appealable Order Pursuant to Fed.R.Civ.P.54(b), or in the alternative, for Certification Pursuant to 28 U.S.C. Sec. 1292(b) for Immediate Appeal to the United States Court of Appeals for the First Circuit by Jonathan Mullane.(Lara, Miguel) (Entered: 09/17/2019) |
| 09/18/2019 | 146 | Chief Judge Patti B. Saris: ORDER entered re 21 Motion to Dismiss Plaintiff Jonathan Mullane's Verified First Amended Complaint. Breaking Media, Inc. and Elie Mystal's motion to dismiss the plaintiff's First Amended Complaint (Dkt. No. 21 ) is **MOOT**. The Court will hold a hearing on Breaking Media, Inc. and Elie Mystal's motion to dismiss the plaintiff's Second Amended Complaint (Dkt. No. 80 ) with respect to personal jurisdiction, as well as plaintiff's "Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction, and Incorporated Memorandum of Law" (Dkt. No. 103 ) as pertains to defendants Breaking Media, Inc. and Elie Mystal. SO ORDERED. (Lara, Miguel) (Entered: 09/18/2019) |
| 09/18/2019 | 147 | ***HEARING SCHEDULED FOR 10/1/19 TO GO FORWARD ON 103 MOTION for Leave to File and 80 MOTION to Dismiss ONLY*** (Lara, Miguel) (Entered: 09/18/2019) |
| 09/26/2019 | 148 | Assented to MOTION for Extension of Time to October 15, 2019 to File Response/Reply as to 145 MOTION for Order, 140 MOTION for Reconsideration re 134 Order on Report and Recommendations,,,,,, Order on Motion for Miscellaneous Relief,,,,,, Order on Motion to Substitute Party,,,,,, Order on Motion to Dismiss/Lack of Jurisdiction,,,,,,,,,,,, Order on Motion to Dism, 138 MOTION to Intervene by Alison W. Lehr, Federico A. Moreno, The United States of America.(Morgan, Christopher) (Entered: 09/26/2019) |
| 09/26/2019 | 149 | REPLY TO OBJECTION to 120 Report and Recommendations filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 09/26/2019) |
| 10/01/2019 | 150 | Electronic Clerk's Notes for proceedings held before Chief Judge Patti B. Saris: Status Conference held on 10/1/2019....All matters taken under advisement, see transcript for further details. (Court Reporter: Lee Marzilli at leemarz@aol.com.) (Molloy, Maryellen) (Entered: 10/01/2019) |
| 10/01/2019 | 151 | Opposition re 142 MOTION for Sanctions filed by Breaking Media, Inc., Elie Mystal. |

| | | (Dickinson, John) (Entered: 10/01/2019) |
|---|---|---|
| 10/01/2019 | 152 | Opposition re 141 MOTION to Strike 21 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 80 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 10/01/2019) |
| 10/01/2019 | 153 | Opposition re 138 MOTION to Intervene filed by Breaking Media, Inc., Elie Mystal. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Dickison, John) (Entered: 10/01/2019) |
| 10/01/2019 | 154 | Opposition re 144 MOTION for Leave to File *Supplemental Authorities* filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 10/01/2019) |
| 10/01/2019 | 155 | Opposition re 143 MOTION *for Judicial Notice* filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 10/01/2019) |
| 10/01/2019 | 156 | RESPONSE to Motion re 145 MOTION for Order *The Government Defendants' Statement of Non-Opposition to Entry of Final Judgment as to Them Pursuant to Fed. R. Civ. P. 54(b)* filed by Alison W. Lehr, Federico A. Moreno, The United States of America. (Weida, Jason) (Entered: 10/01/2019) |
| 10/03/2019 | 157 | MOTION for Leave to File *Supplemental Authorities re: Motions to Dismiss [ECF 80]* by Jonathan Mullane. (Attachments: # 1 Exhibit A-D)(Mullane, Jonathan) (Attachment 1 replaced on 10/9/2019, incorrect exhibit originally submitted, NEF regenerated) (Lara, Miguel). (Entered: 10/03/2019) |
| 10/08/2019 | 158 | First MOTION for Leave to File *Reply to Opposition to Intervene* by E. Peter Mullane. (Attachments: # 1 Exhibit Proposed Reply)(Mullane, E. Peter) (Entered: 10/08/2019) |
| 10/21/2019 | 159 | Transcript of Motion Hearing held on October 1, 2019, before Chief Judge Patti B. Saris. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Lee Marzilli at leemarz@aol.com Redaction Request due 11/12/2019. Redacted Transcript Deadline set for 11/21/2019. Release of Transcript Restriction set for 1/21/2020. (Scalfani, Deborah) (Entered: 10/21/2019) |
| 10/21/2019 | 160 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 10/21/2019) |
| 10/30/2019 | 161 | First MOTION for Leave to File *Supplemental Authority* by E. Peter Mullane. (Attachments: # 1 Exhibit Supplemental Authority)(Mullane, E. Peter) (Entered: 10/30/2019) |
| 11/06/2019 | 162 | MOTION for Leave to File *Supplement to Motion for Reconsideration [ECF 140]* by Jonathan Mullane. (Attachments: # 1 Exhibit A)(Mullane, Jonathan) (Entered: 11/06/2019) |
| 12/30/2019 | 163 | NOTICE by E. Peter Mullane *Related Proceeding* (Mullane, E. Peter) (Entered: 12/30/2019) |
| 01/06/2020 | 164 | Judge Patti B. Saris: MEMORANDUM AND ORDER entered.<br><br>Defendants' motion to dismiss (Docket No. 80 ) is **ALLOWED** and Plaintiff's remaining motions (Docket Nos. 103 , 140 , 141 , 142 , 143 , 144 , 145 , 157 , 162 ) are rendered |

| | | **MOOT.** The motions of Plaintiff's father, E. Peter Mullane, related to intervention in this case (Docket Nos. 138 , 158 , 161 ) are also rendered **MOOT.** |
| | | (Lara, Miguel) (Entered: 01/06/2020) |
| 01/06/2020 | 165 | Judge Patti B. Saris: ELECTRONIC ORDER entered finding as moot 148 Motion for Extension of Time to File Response/Reply. (Lara, Miguel) (Entered: 01/06/2020) |
| 01/06/2020 | 166 | Case no longer referred to Magistrate Judge Judith G. Dein. (Lara, Miguel) (Entered: 01/06/2020) |
| 01/06/2020 | 167 | Judge Patti B. Saris: ORDER DISMISSING CASE entered. (Lara, Miguel) (Entered: 01/06/2020) |
| 01/06/2020 | 168 | Copy re 164 Memorandum & ORDER, 167 Order Dismissing Case mailed to Jonathan Mullane on 1/6/2020. (Lara, Miguel) (Entered: 01/06/2020) |
| 01/06/2020 | 169 | NOTICE OF APPEAL as to 164 Memorandum & ORDER, 167 Order Dismissing Case by Jonathan Mullane NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 1/27/2020. (Mullane, Jonathan) (Entered: 01/06/2020) |
| 01/07/2020 | 170 | NOTICE OF APPEAL as to 164 Memorandum & ORDER, 167 Order Dismissing Case, 134 Order on Report and Recommendations,,,,,, Order on Motion for Miscellaneous Relief,,,,,, Order on Motion to Substitute Party,,,,,, Order on Motion to Dismiss/Lack of Jurisdiction,,,,,,,,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,, Order on Motion for Leave to File,,,,,,,,,,,, Order on Motion for Reconsideration,,,,,,,,,,,, Order on Motion to Strike,,,,,,,,,,, by Jonathan Mullane NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 1/27/2020. (Mullane, Jonathan) (Entered: 01/07/2020) |
| 01/08/2020 | 171 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 169 Notice of Appeal. (Paine, Matthew) (Entered: 01/08/2020) |
| 01/08/2020 | 172 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 170 Notice of Appeal. (Paine, Matthew) (Entered: 01/08/2020) |
| 01/08/2020 | 173 | USCA Case Number 20-1061 for 169 Notice of Appeal filed by Jonathan Mullane. (Paine, Matthew) (Entered: 01/08/2020) |
| 01/08/2020 | 174 | USCA Case Number 20-1062 for 170 Notice of Appeal filed by Jonathan Mullane. (Paine, Matthew) (Entered: 01/08/2020) |
| 01/10/2020 | 178 | USCA Appeal Fees received $505.00 receipt number 1BST078173 re 169 Notice of Appeal, filed by Jonathan Mullane (Coppola, Katelyn) (Entered: 01/15/2020) |
| 01/11/2020 | 175 | Subsequent NOTICE OF APPEAL as to 164 Memorandum & ORDER, 167 Order Dismissing Case, 134 Order on Report and Recommendations,,,,,, Order on Motion for |

| | | Miscellaneous Relief,,,,,, Order on Motion to Substitute Party,,,,,, Order on Motion to Dismiss/Lack of Jurisdiction,,,,,,,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,, Order on Motion for Leave to File,,,,,,,,,,, Order on Motion for Reconsideration,,,,,,,,,,, Order on Motion to Strike,,,,,,,,,, by Jonathan Mullane ( ) NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 1/31/2020.** (Mullane, Jonathan) (Entered: 01/11/2020) |
|---|---|---|
| 01/13/2020 | 176 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 175 Subsequent Notice of Appeal. (Paine, Matthew) (Entered: 01/13/2020) |
| 01/15/2020 | 177 | USCA Case Number 20-1080 for 175 Subsequent Notice of Appeal filed by Jonathan Mullane. (Paine, Matthew) (Entered: 01/15/2020) |
| 01/22/2020 | 179 | MOTION Rule 62.1 Indicative Ruling as to Defendants Mystal and Breaking Media, Inc. by Jonathan Mullane. (Attachments: # 1 Exhibit 1 (Proposed Motion), # 2 Exhibit 1 (Proposed Order))(Mullane, Jonathan) (Entered: 01/22/2020) |
| 01/22/2020 | 180 | MOTION Rule 62.1 Indicative Ruling as to Defendants Moreno, Lehr, and United States by Jonathan Mullane. (Attachments: # 1 Exhibit 1 (Proposed Motion), # 2 Exhibit 2 (Proposed Order))(Mullane, Jonathan) (Entered: 01/22/2020) |
| 01/23/2020 | 181 | MOTION Rule 62.1 Indicative Ruling by E. Peter Mullane. (Attachments: # 1 Exhibit 1 (Proposed Motion), # 2 Exhibit 2 (Proposed Order))(Mullane, E. Peter) (Entered: 01/23/2020) |
| 02/03/2020 | 182 | Opposition re 179 MOTION Rule 62.1 Indicative Ruling as to Defendants Mystal and Breaking Media, Inc. filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 02/03/2020) |
| 02/03/2020 | 183 | Opposition re 181 MOTION Rule 62.1 Indicative Ruling filed by Breaking Media, Inc., Elie Mystal. (Dickison, John) (Entered: 02/03/2020) |
| 02/05/2020 | 184 | Opposition re 180 MOTION Rule 62.1 Indicative Ruling as to Defendants Moreno, Lehr, and United States filed by Alison W. Lehr, Federico A. Moreno, The United States of America. (Weida, Jason) (Entered: 02/05/2020) |
| 02/05/2020 | 185 | Opposition re 181 MOTION Rule 62.1 Indicative Ruling filed by Alison W. Lehr, Federico A. Moreno, The United States of America. (Weida, Jason) (Entered: 02/05/2020) |
| 02/11/2020 | 186 | MOTION to Supplement Record re 179 MOTION Rule 62.1 Indicative Ruling as to Defendants Mystal and Breaking Media, Inc. by Jonathan Mullane. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Mullane, Jonathan) (Entered: 02/11/2020) |
| 02/25/2020 | 187 | Opposition re 186 MOTION to Supplement Record re 179 MOTION Rule 62.1 Indicative Ruling as to Defendants Mystal and Breaking Media, Inc. filed by Breaking Media, Inc., Elie Mystal. (Slean, Brendan) (Entered: 02/25/2020) |
| 03/31/2020 | 188 | Judge Patti B. Saris: ORDER entered. The motions requesting relief pursuant to Rule 62.1 (Dkt. No. 179 ; Dkt. No 180 ; Dkt. No. 181 ) are **DENIED.** The motion to supplement the record (Dkt. No. 186 ) is **DENIED.** |

| | | SO ORDERED. |
|---|---|---|
| | | (Lara, Miguel) (Entered: 03/31/2020) |
| 03/31/2020 | 189 | Subsequent NOTICE OF APPEAL as to 188 Order,, Terminate Motions, by Jonathan Mullane ( ) NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 4/20/2020. (Mullane, Jonathan) (Entered: 03/31/2020) |
| 04/01/2020 | 190 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 189 Subsequent Notice of Appeal. (Paine, Matthew) (Entered: 04/01/2020) |
| 04/01/2020 | 191 | USCA Case Number 20-1390 for 189 Subsequent Notice of Appeal filed by Jonathan Mullane. (Paine, Matthew) (Entered: 04/01/2020) |
| 08/13/2020 | 192 | USCA Appeal Fees received $ 505 receipt number 1BST081302 re 189 Subsequent Notice of Appeal, filed by Jonathan Mullane (Firmin, Britney) (Entered: 08/13/2020) |
| 02/26/2021 | 193 | USCA Judgment as to 169 Notice of Appeal, filed by Jonathan Mullane, 189 Subsequent Notice of Appeal, filed by Jonathan Mullane, 175 Subsequent Notice of Appeal, filed by Jonathan Mullane, 170 Notice of Appeal, filed by Jonathan Mullane. AFFIRMED... (Paine, Matthew) (Entered: 03/01/2021) |
| 04/20/2021 | 194 | MANDATE of USCA as to 169 Notice of Appeal, filed by Jonathan Mullane, 189 Subsequent Notice of Appeal, filed by Jonathan Mullane, 175 Subsequent Notice of Appeal, filed by Jonathan Mullane, 170 Notice of Appeal, filed by Jonathan Mullane. Appeal 189 , 170 , 175 , 169 Terminated (Paine, Matthew) (Entered: 04/21/2021) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 05/12/2021 17:28:29 | | |
| PACER Login: | epmullane:2731784:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:18-cv-12618-PBS |
| Billable Pages: | 16 | Cost: | 1.60 |

# EXHIBIT B-1

| From: | Weinkle, James (USAFLS) |
|---|---|
| To: | Greenberg, Benjamin (USAFLS); Hummel, Randy (USAFLS); Medetis, Maria (USAFLS); Alvarez, Michelle (USAFLS); Lehr, Alison (USAFLS); Rosen, Adrienne (USAFLS); Hampton, Cynthia (USAFLS); Vazquez, Lesnay (USAFLS) |
| Cc: | Jacobus, Wendy (USAFLS); Varela, Jacquie (USAFLS); Morgan, Vanessa (USAFLS); Fajardo Orshan, Ariana (USAFLS) |
| Subject: | Reminder - Litigation Hold - Mullane v. United States, et. al., Case No.: 1:18-cv-12618-PBS (D. Mass.) |
| Date: | Wednesday, October 2, 2019 4:56:58 PM |
| Attachments: | Mullane.v.US.DE.134.Order Dismissing Alison Lehr, et. al.pdf<br>Mullane.v.US.DE.145.Mullane"s M for Final Appealable Order from DE 134 Order Dismissing Alison Lehr, et. al.pdf<br>Mullane.v.US.DE.156.Govt Response to Mullane"s M for Final Appealable Order DE 145.pdf |

Dear Colleagues

While the Court in the D. Massachusetts has entered an Order Dismissing Allison Lehr and Judge Moreno (DE 134), Mr. Mullane has filed a Motion that indicates he will appeal that Order (DE 145). While the Government has filed a response (DE 156), the Court has not yet ruled.

Accordingly, the Lit Hold Must remain in place. As such, in accordance with USAP 3-13.300.003, this is a reminder that the Litigation Hold in the above-referenced matter, SDFL-2014-002, regarding Jonathan Mullane remains in place. Employees of the USAO-FLS must continue to preserve "hard copy" documents and electronically stored information ("ESI") that may be potentially relevant to a claim or defense of a party, until receiving formal written notice of termination of the Litigation Hold.

Thank you

James

**James A. Weinkle**
Assistant United States Attorney
Office of the United States Attorney
Southern District of Florida
99 N.E. 4th Street, Suite 300
Miami, Florida 33132

305.961.9290 (o)
James.Weinkle@usdoj.gov

The information transmitted is intended only for the person or entity to which it is addressed and may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message you are hereby notified that any use, review, retransmission, dissemination, distribution, reproduction or any action taken in reliance upon this message is prohibited. If you received this in error, please immediately notify us by calling the sender at 305.961-9290 and delete the material from any computer. Any views expressed in this message are those of the individual sender and may not necessarily reflect the views of the Department of Justice.

# EXHIBIT B-2

| From: | Weinkle, James (USAFLS) |
|---|---|
| To: | Feliciano, Lazaro (USAFLS); Lehr, Alison (USAFLS) |
| Cc: | Hampton, Cynthia (USAFLS); Carvajal, Odisa (USAFLS); Alvarez, Michelle (USAFLS); Varela, Jacquie (USAFLS); Hummel, Randy (USAFLS) |
| Subject: | Lit Hold - USAFLS-2019-001 - Mullane |
| Attachments: | Mullane v. US.Docket Sheet as of 12.20.2019.pdf |

As an FYI (and this is NOT directly related to Mullane's FOIA request), the above-referenced Lit Hold I instituted remains in effect. I just checked the D. Mass docket and the case is still active...A copy of the Docket Sheet is attached.

James

**James A. Weinkle**
Assistant United States Attorney
Office of the United States Attorney
Southern District of Florida
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
305.961.9290 (o)
James.Weinkle@usdoj.gov

The information transmitted is intended only for the person or entity to which it is addressed and may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message you are hereby notified that any use, review, retransmission, dissemination, distribution, reproduction or any action taken in reliance upon this message is prohibited. If you received this in error, please immediately notify us by calling the sender at 305.961.9290 and delete the material from any computer. Any views expressed in this message are those of the individual sender and may not necessarily reflect the views of the Department of Justice.

From: Feliciano, Lazaro (USAFLS)
Sent: Friday, December 20, 2019 11:30 AM
To: Lehr, Alison (USAFLS)
Cc: Hampton, Cynthia (USAFLS) ; Carvajal, Odisa (USAFLS) ; Alvarez, Michelle (USAFLS) ; Weinkle, James (USAFLS) ; Varela, Jacquie (USAFLS) ; Hummel, Randy (USAFLS)
Subject: RE: FOIA Litigation with Jonathan Mullane

Thank you Alison.

Laz Feliciano
Administrative Officer
U.S Attorney's Office
Southern District of Florida

(b) (6)

From: Lehr, Alison (USAFLS) <Al.ehr@usa.doj.gov>
Sent: Friday, December 20, 2019 11:17 AM
To: Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Hummel, Randy (USAFLS) <RHummel@usa.doj.gov>
Cc: Hampton, Cynthia (USAFLS) <CHampton@usa.doj.gov>; Carvajal, Odisa (USAFLS)

# EXHIBIT B-3

| From: | Weida, Jason (USAMA) |
|---|---|
| To: | Feliciano, Lazaro (USAFLS) |
| Cc: | Francis, Tricia (USAEO); Carvajal, Odisa (USAFLS); Marcenaros, Francys (USAFLS); Hampton, Cynthia (USAFLS); Baurell, Carlos (USAFLS); Varela, Jacquie (USAFLS); Jacobus, Wendy (USAFLS) |
| Subject: | Re: FOIA Litigation with Jonathan Mullane |
| Date: | Friday, December 20, 2019 6:25:48 PM |

Thanks

Sent from my iPhone

On Dec 20, 2019, at 6:24 PM, Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov> wrote:

Jason and Tricia, we do have a FOIA on record for Jonathan Mullane. I have included Francys Marcenaros, FOIA Paralegal Specialist, for her to provide the status of the FOIA we have processed, and any information or materials that were provided. Thank you. Laz

Laz Feliciano
Administrative Officer
U.S Attorney's Office
Southern District of Florida


From: Francis, Tricia (USAEO) (b) (6)
Sent: Friday, December 20, 2019 3:10 PM
To: Weida, Jason (USAMA) <JWeida@usa.doj.gov>
Cc: Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Carvajal, Odisa (USAFLS) <OCarvajal@usa.doj.gov>
Subject: RE: FOIA Litigation with Jonathan Mullane

Jason,

Good afternoon. I lost the draft that I was working on yesterday afternoon. I reviewed the Complaint and prepared a draft again. My last contact with SDFL was yesterday afternoon, when I spoke with Lazaro, who was going to do additional research on the search/processing/release of that single page document I attached to yesterday's email. . However, here is a draft of EOUSA's response to the paragraphs that relate to EOUSA. If you can work with it, and work with what the folks provide you from the district (from what I can see in our E-FOIA system, we did not process that record; hence, it appears it was searched for and processed by them directly to the requestor), then you may be able to have a file-ready Answer by 12/26. If you reach out to either Odisa or Lazaro, please copy me so that I can keep up with the information they share

# EXHIBIT B-4

| From: | Lehr, Alison (USAFLS) |
|---|---|
| To: | Weida, Jason (USAMA) |
| Subject: | RE: Privileged & Confidential |
| Date: | Monday, January 6, 2020 6:12:22 PM |

Jason-

Thank you for the information. I feel as if I can/should dance a jig! Many thanks for your continued efforts.

Happy new year, indeed!

Alison

Alison W. Lehr ¦ Assistant United States Attorney ¦ Southern District of Florida

99 N.E 4th Street¦ Suite 700 ¦ Miami, FL 33132

T: (b)(6)          F: (b)(6)

From: Weida, Jason (USAMA) <JWeida@usa.doj.gov>
Sent: Monday, January 6, 2020 5:05 PM
To: Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
Subject: Privileged & Confidential

Alison,

I hope you enjoyed the holidays. By way of update in the *Mullane* matter, today Judge Saris dismissed the remaining claims against the media defendants. Now the entire case has been dismissed.

(b)(5)

I will let you know when I have more information.

Happy New Year!

Jason
Sent from my iPhone

# EXHIBIT C-1

| From: | Marcenaros, Francys (USAFLS) |
|---|---|
| To: | Lehr, Alison (USAFLS) |
| Cc: | Feliciano, Lazaro (USAFLS); Varela, Jacquie (USAFLS) |
| Subject: | FOIA Litigation with Jonathan Mullane |
| Date: | Thursday, January 9, 2020 3:49:55 PM |
| Importance: | High |

Hi Alison-

Per our conversation, You are named as one of the defendants in Mr. Mullane's lawsuit. In order to ensure that there's no question regarding the search for records in the FOIA matter, its best that you are not part of the search process. If your N-Drive, emails, or any other source needs to be searched, we will have someone else do that for you.

Likewise, we would ask the same for FAUSA Greenberg(?). Though he is not named in the other lawsuit, his name was mentioned in a Complaint.

If you have any questions, feel free to call me or Carlos.

Thank you

Francys

# EXHIBIT C-2

| From: | Jacobus, Wendy (USAFLS) |
|---|---|
| To: | Lehr, Alison (USAFLS) |
| Subject: | RE: |
| Date: | Tuesday, February 12, 2019 4:59:34 PM |

Hi Alison!

If ok, I would rather come to you so I can see what you have.

Thanks.

Wendy

From: Lehr, Alison (USAFLS)
Sent: Tuesday, February 12, 2019 1:11 PM
To: Jacobus, Wendy (USAFLS)
Subject: RE:

Hi, Wendy.

I spoke with Connor Hackert yesterday and I am in the process of gathering up my notes. I believe I have all Mullane emails in one location now.

I can come to you at your convenience. Any time in the morning after 8 a.m.

I need to shake loose some time to help set up for Evelyn's farewell.

Alison

From: Jacobus, Wendy (USAFLS) <WJacobus@usa.doj.gov>
Sent: Tuesday, February 12, 2019 12:35 PM
To: Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
Subject:

Hi Alison!

Would you be available to meet with me tomorrow morning so we can work on your request for representation? If you could gather up any documents or notes you have that would be helpful also. I am available all morning tomorrow — so whatever time works for you, works for me. Will come to your office, if that is easier for you.

I spoke to James Weinkle who will be contacting you and others to place a litigation hold.

Thanks.

Wendy

EOUSA-2019-000468-01191

# EXHIBIT D-1

From: Baxrell, Carlos (USAFLS)
To: Francis, Tricia (USAEO)
Cc: Marcenaros, Francos (USAFLS)
Subject: Re: FOIA Litigation with Jonathan Mullane
Date: Wednesday, January 8, 2020 12:21:41 PM

Tricia,



Carlos

On Jan 8, 2020, at 12:03 PM, Francis, Tricia (USAEO) < ████████████ wrote:

Carlos,

EOUSA-2019-000468-04051

Case 1:19-cv-12379-DJC  Document 75-1  Filed 06/07/21  Page 34 of 88

# EXHIBIT D-2

| From: | Marcenaros, Francys (USAFLS) |
|---|---|
| To: | USAFLS-ALL |
| Subject: | In Re: Jonathan Mullane |
| Date: | Wednesday, January 8, 2020 12:50:19 PM |

A Freedom of Information Act (FOIA) request has been made for records regarding **Jonathan Mullane**.

Records sought: Any/all records in the possession of the USAO-Miami. Mr. Mullane was an intern in our office on 2018.

Please contact me at the number listed below if you are in possession of any records, or if you have any questions

Please do not destroy or purge any records related to **Jonathan Mullane.**

Your prompt attention to this matter is greatly appreciated. Thank you.

Francys Marcenaros

**Paralegal Specialist/FOIA**

U.S. Attorney's Office

Southern District of Florida/Civil Division

99 N.E. 4th Street, Room 372

Miami, Florida 33132

Direct Line: 

Please be advised that any e-mails sent to or from this e-mail address are subject to retention and archiving by the United States Department of Justice.

(re: Jonathan Mullane /2019-000468)

# EXHIBIT E-1

**To:**  Conejo, Reinaldo *FOIA (b)(6)* @SEC.GOV]
**From:**  Roberts, Lisa T.
**Sent:**  2018-04-25T06:57:02-04:00
**Importance:**  Normal
**Subject:**  FW: Interim Suitability Determination – Intern
**Received:**  2018-04-25T06:56:00-04:00

:::::
;;;;;
Jonathan Mullane also needs to be on list. I have list in the office but will try to figure everything out from home. Mullane is not on your list. He is a legal intern.

**From:** Bickel, Daniel P.
**Sent:** Wednesday, April 11, 2018 12:30 PM
**To:** #MIRO - ADPs
**Cc:** Roberts, Lisa T.
**Subject:** FW: Interim Suitability Determination    Intern
*FOIA (b)(6)* has cleared. Only Jonathan Mullane remains to be cleared after this.

**From:** Workflow [mailto:collaborationsharepoint@sec.gov]
**Sent:** Wednesday, April 11, 2018 11:44 AM
**To:** #Interim Suitability
**Cc:** Nedd, Lindsey; Bethune, Tonya; Ledezma, Alexandria; Bickel, Daniel P.
**Subject:** Interim Suitability Determination    Intern

Based on a favorable suitability determination the following intern is eligible for access to SEC space and/or authorized technology systems:

    o   *FOIA (b)(6)*  (MIRO) – 11/21/2018
    o  UPN:


Notes:

Thanks,

Personnel Security Operations
U.S. Securities and Exchange Commission
Personnelsecurity@sec.gov

# EXHIBIT E-2



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

OFFICE OF
HUMAN RESOURCES

May 3, 2018

Jonathan Mullane
1100 S. Miami Ave, Apt 2806
Miami, FL 33130

Dear Mr. Mullane:

This letter rescinds the U.S. Securities and Exchange Commission (SEC) initial invitation to participate in the Student Honors Program in the Miami Regional Office as a Student Honors Volunteer. The SEC previously sent you an invitation, dated February 28, 2018. It explained that, prior to confirming this volunteer opportunity, the SEC must perform certain clearances, including completing a satisfactory pre-appointment check and inquiry into your background, training, and suitability for the position.

Based upon our review, the SEC has decided to rescind your initial invitation, effective immediately. I regret that you will not be joining the SEC's team at this time.

Sincerely,

Stephen Brown
Assistant Director
Talent Acquisition Group
Office of Human Resources

# EXHIBIT E-3

**To:**     Cardona, David A.[FOIA (b)(6)@SEC.GOV]; Bustillo, Eric I.[FOIA (b)(6)@SEC.GOV]
**From:**  Roberts, Lisa T.
**Sent:**    2018-05-03T12:46:16-04:00
**Importance:**    Normal
**Subject:**  Fwd: Securities and Exchange Commission - Student Honors Program
**Received:**          2018-05-03T12:46:17-04:00
Mullane, Jonathan 2018.pdf
ATT00001.htm

;;;I will not respond. Just FYI.

Sent from my iPhone

Begin forwarded message:

> **From:** Jonathan Mullane <j.mullane@icloud.com>
> **Date:** May 3, 2018 at 12:05:32 PM EDT
> **To:** "Roberts, Lisa T." FOIA (b)(6)@SEC.GOV>
> **Subject: Fwd: Securities and Exchange Commission - Student Honors Program**
>
>> Hi Lisa,
>> Sorry to bother you. I received a somewhat surprising email (below) this morning,
>> withdrawing my offer. As you may know, I was in your office last month for my
>> fingerprinting appointment. I was told that everything was fine, and that there was
>> plenty of time to complete the background check. This message appears
>> contradictory to the information I was given.
>
> Kind regards,
>
> Jonathan
>
> _____
>
> **Jonathan Mullane**
>
> Tel.: +1 (617) 800-6925 | j.mullane@icloud.com
>
> *This e-mail message and any attachments are confidential and may be privileged.*
> *Emails transmitted or received shall neither constitute acceptance of conducting*
> *transactions via electronic means nor shall create a binding contract in the*
> *absence of a fully signed written agreement.*
>
>> Begin forwarded message:

Case 1:19-cv-12379-DJC   Document 75-1   Filed 06/07/21   Page 42 of 88

# EXHIBIT F-1



**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

Suite 5.400, 3CON Building
175 N Street, NE
Washington, DC 20530

(202) 252-6020
FAX (202) 252-6048

December 18, 2018

Jonathan Mullane
60 Clyde Street
Somerville, MA 02145

Re: Request Number: 2019-000377
Date of Receipt: 10/15/2018
Subject of Request: Self

Dear Mr. Mullane:

In response to your Freedom of Information Act and/or Privacy Act request, the paragraph(s) checked below apply:

1. [ X ] A search for records located in EOUSA- Personnel has revealed no responsive records regarding the above subject.

2. [ ] A search for records located in the United States Attorney's Office(s) for the _____ has revealed no responsive records regarding the above subject.

3. [ ] After an extensive search, the records which you have requested cannot be located.

4. [ ] Your records have been destroyed pursuant to Department of Justice guidelines.

5. [ ] Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what you sought. Each file was given a separate Request Number (listed below), for which you will receive a separate response:

This is the final action on this above-numbered request. If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

You may contact our FOIA Public Liaison at the telephone number listed above for any further assistance and to discuss any aspect of your request. Additionally, you may contact the

Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Kevin Krebs
Assistant Director

# EXHIBIT F-2

Office of the Inspector General

April 10, 2019

Mr. Jonathan Mullane
j.mullane@icloud.com

Subject:     Freedom of Information/Privacy Act Request [19-OIG-103]

Dear Mr. Mullane:

This responds to your Freedom of Information Act (FOIA) request to the Office of the Office of the Inspector General (OIG). Specifically, you are requesting documents relating to yourself. The responsive documents have been reviewed. It has been determined that this material is appropriate for release with excisions pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6), b(7)(C). Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties. Exemption 7(C) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties. Consequently, please find enclosed that information which can be released pursuant to your request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552 (2012 & Supp. V 2017). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may contact our FOIA Public Liaison, Deborah Waller, at (202) 616-0646 for any further assistance of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA meditation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, email at ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW,

Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://www.foiaonline.gov/foiaonline/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

*Kim Kochurka*

Government Information Specialist
Office of the General Counsel

Enclosure

2

# EXHIBIT G-1

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

# U.S. District Court
## Southern District of Florida (Miami)
## CRIMINAL DOCKET FOR CASE #: 1:15-cr-20840-MGC-1

Case title: USA v. Acherman et al

Date Filed: 10/29/2015
Date Terminated: 12/14/2015

Assigned to: Judge Marcia G. Cooke

### Defendant (1)

**Martin Lustgarten Acherman**
07680-104
*TERMINATED: 12/14/2015*

represented by **E. Peter Mullane**
Email: peter@3mlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nathan Philip Diamond**
Nathan P. Diamond, P.A.
888 Biscayne Boulevard
Suite 501
Miami, FL 33132
305-371-5300
Fax: 305-371-6966
Email: attydiamon@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

### Pending Counts

8:1325A.F IMPROPER ENTRY BY
ALIEN
(1ss)

### Disposition

PRIOR JUDGMENT: Credit for Time
Served. No supervised release to follow.
AMENDED: 1 Day Credit for Time Served.
No supervised release to follow.

### Highest Offense Level (Opening)

Felony

### Terminated Counts

18 U.S.C. § 1956(h) - Money Laundering
Conspiracy
(1)

18 U.S.C. § 1512(k) - Conspiracy to
Obstruct an Official Proceeding
(2s)

### Disposition

Dismissed by AUSA.

Dismissed by AUSA.

# EXHIBIT G-2

**From:** Evelyn Baltodano-Sheehan <(b)(6)

**Sent:** Monday, May 14, 2018 9:07 PM

**To:** Sheehan, Evelyn B. (USAFLS) <esheehan@usa.doj.gov>

**Subject:** How the Feds Blew a Case Against an Alleged South American Drug Money Launderer - VICE

https://www.vice.com/en_us/article/8gk7xx/how-the-feds-blew-a-case-against-an-alleged-south-american-drug-money-launderer

# How the Feds Blew a Case Against an Alleged South American Drug Money Launderer

Experts and former drug warriors say the debacle

EOUSA-2019-000468-01431

represents a stunning blow against the US government's efforts to punish those who profit from the global drug trade.

For federal law enforcement officials, Martin Lustgarten Acherman was a prize catch in the war on drugs. Since 2007, investigators had been keeping tabs on the Miami-based businessman who maintains dual citizenship in Austria and Venezuela, methodically gathering evidence that Lustgarten was laundering tens of millions of dollars for Colombian and Mexican drug traffickers, as well as paramilitary groups, according to court documents obtained by VICE.

On April 8, 2015, authorities arrested Lustgarten in Miami after a grand jury indictment charged him with conspiracy to commit money laundering, obstruction of an official proceeding, and conspiracy to obstruct an official proceeding. His bust generated headlines heralding the dirty drug money nexus between Miami and Venezuela.

But nine months later, the case against Lustgarten suddenly unraveled as prosecutors dismissed the charges against him in what money laundering experts and former drug warriors say represents a stunning blow against the US government's efforts to punish those who profit from the narcotics trade.

"It is very unusual for a case like this to get dismissed," Michael Levine, a New York-based trial consultant who worked for a quarter-century as a Drug Enforcement Administration (DEA) special agent, told VICE. "It suggests to me that something was unearthed by the prosecutors that they decided to stop and not go any further with it."

"It is a steep fall for the government to dismiss a case like this one so abruptly and so quickly,"added Charles A. Intriago, a former Miami federal prosecutor who founded the Association of Certified Anti-Money Laundering Specialists.

Calls to the lead federal prosecutor, Joseph Palazzo, were referred to a US Department of Justice spokesman in Washington DC, who did not respond to VICE's requests for comment. A spokesman for the DEA's New England division, which handled the criminal investigation, likewise did not return phone calls seeking comment.

Of course, E. Peter Mullane, the lead attorney for Lustgarten, says the case was

dropped for a simple reason: his client is innocent. "From day one we had vigorously protested the fact that this person had been indicted for alleged offenses that he did not commit," Mullane said in an interview. "It took approximately nine months of extensive discovery and aggressive pleadings to make this point."

According to the feds' indictment, Lustgarten operated companies in Hong Kong, Singapore, and Panama that provided capital loans and purchase-order financing to Venezuelan firms involved in the international trade. In Venezuela, companies like Lustgarten's allegedly took advantage of that country's strict controls regarding the availability of US dollars by exchanging American currency in the black market for Venezuelan bolivars at a higher rate than normal. By striking deals with Lusgarten's companies, Venezuelan importers would have access to American cash in order to pay for consumer goods coming from outside the country.

Prosecutors argued Lustgarten was obtaining the US dollars from drug traffickers and paramilitary groups. The indictment details how the DEA Boston office seized accounts in March 2009 tied to Lustgarten's firms at a Bank of America branch in Doral, a city largely populated by Venezuelans in Miami-Dade County. Yet Lustgarten continued to launder drug proceeds through banks in Hong Kong, Singapore, and Switzerland, according to the feds. During an April 13 detention hearing in Miami, Palazzo accused the Venezuelan-Austrian businessman of laundering between $40 million and $100 million.

"The government's case is also very strong," Palazzo said at the time, according to a transcript of the hearing. "Mr. Lustgarten's arrest was the culmination of several years of investigation by a joint task force in the District of Massachusetts... Extensive wiretaps were conducted in the US and in Colombia and several search warrants were executed on Mr. Lustgarten's emails. So there is plenty of documentary evidence supporting the charges as well."

Palazzo also accused Lustgarten of being an unreliable confidential informant who routinely passed false information to the Boston task force investigators. "Mr. Lustgarten is basically a professional liar that has been lying to the DEA and Homeland Security and to the US Attorney's Office in Boston for several years," Palazzo told magistrate Judge Edwin G. Torres.

EOUSA-2019-000468-01433

The indictment went on to name a man named Salomon Bendayan, whom Palazzo alleged controlled shell companies that worked in concert with Lustgarten's supposedly shady businesses. Bendayan was arrested one month after Lustgarten.

While Lustgarten was held without bail for nine months, his defense team went to work taking apart the prosecution's case against their client. On November 19, Lustgarten's other lawyer Nathan P. Diamond filed a motion against Palazzo's request to delay the trial date until February, accusing the prosecutor of stall tactics and failing to produce evidence against his client. In essence, Diamond argued Lustgarten was being denied his right to a speedy trial, pointing out that the prosecutorial team had not provided documents detailing their client's banking transactions in seven countries.

That's because prosecutors never obtained the documents, according to Diamond. In order for prosecutors to obtain evidence in other countries, they must first obtain permission from foreign governments to do so under what is known as a mutual legal assistance treaty agreement.

That process appears to have helped derail the feds.

In Lustgarten's case, a request to gather evidence in Colombia was sent to that country's government in February, but US prosecutors did not receive a response until August, five months after he had been arrested, according to Diamond's motion, which cites a DOJ memo he apparently obtained. Prosecutors sent requests to Hong Kong officials in February, July and September, but said they did not get a reply at all, the motion states, and a request to Switzerland's government was made in July, three months after Lustgarten's arrest.

On November 20, Miami federal judge Marcia G. Cooke denied Palazzo's request to delay the trial, according to Lustgarten's court docket. About a month later, it seems like Palazzo gave up. On December 14, the US Attorney's Office dismissed the more serious charges when Lustgarten agreed to plead guilty to a misdemeanor charge of illegally entering the US on October 12, 2011, according to court documents obtained by VICE.

Bendayan, the other man charged in the indictment, also had money laundering charges dismissed against him when he pleaded guilty to a felony count of operating an unlicensed money transmitting business.

Andrew Ittleman, a partner in the Miami law firm at Fuerst Ittleman David & Joseph who specializes in money laundering cases, said Lustgarten's ordeal shows how difficult it is for the US government to prosecute international money laundering crime cases.

"It places a high burden on the government," Ittleman told me. "His defense attorneys did a masterful job of holding the government to its burden of not only proving beyond a reasonable doubt, but that government would also have to do it quickly."

The turning point in Lustgarten's case was the prosecutor's inability to secure cooperation from foreign countries, according to Ittleman.

"An assistant US attorney can't just make a phone call to another country to get permission," Ittleman said. "You need to abide by certain rules. In this case, the US government was not getting the cooperation it needed from Hong Kong, Argentina, Colombia, etc."

Gregory D. Lee, a retired supervisory DEA agent who also provides expert witness testimony, said he was surprised investigators and prosecutors did not attempt to retrieve Lustgarten's foreign banking documents prior to the indictment.

"Once you have somebody in custody, the clock starts ticking to go to trial," Lee explained. "You have to anticipate these type of problems so you avoid them. When you don't have the documents to turn over to the defense, it turns into a house of cards and it all comes tumbling down. Apparently that is what happened here."

*Follow Francisco Alvarado on Twitter.*

Case 1:19-cv-12379-DJC   Document 75-1   Filed 06/07/21   Page 56 of 88

# EXHIBIT F-3



# Miami Herald



AMERICAS

# As Venezuela spiraled into impoverished hellscape, rich expats cashed in, records reveal

We use cookies and similar technologies. By continuing to use this website, you consent to our  Terms of Service and our  Privacy Policy.

**ACCEPT COOKIES**



**Only have a minute? Listen instead**
19:52    Powered by **Trinity Audio**

**MORE FROM THE SERIES**

## The FinCEN Files

A massive leak of bank documents connects the dots between money laundering, the pilfering of public funds, terror-financing and ponzi schemes. The documents were leaked to BuzzFeed News, which shared them with the International Consortium of Investigative Journalists. ICIJ recruited a global team of journalists, including reporters from the Miami Herald, el Nuevo Herald and McClatchy.

**EXPAND ALL**

A few years ago, Venezuelan money maven Martin Lustgarten was stuck in a federal lockup on charges of laundering millions of dollars for Latin American drug traffickers as he confronted the grim reality of spending the rest of his life in prison.

Today, Lustgarten is a free man living in a $1 million Miami high-rise unit overlooking Biscayne Bay in a building aptly called Blue Condo — his criminal case dismissed because federal prosecutors mishandled it and couldn't even take him to trial.

Lustgarten continues to count the money he amassed as a currency broker for Venezuelan business elites suspected of stealing billions and moving their fortunes to bank accounts in Switzerland, Hong Kong, Panama and Miami, according to sources familiar with his history. But behind the scenes, he has also been helping the federal government build criminal cases against his former compatriots.

Since pleading guilty to a minor visa violation in late 2015, Lustgarten has been assisting federal investigators and prosecutors in a sprawling Miami money-laundering probe targeting a former Swiss banker, a handful of connected Venezuelan businessmen and high-ranking government officials. They are suspected of paying hefty bribes while enriching themselves off the regimes of President Nicolás Maduro and his predecessor, Hugo Chávez, the late leader of the country's socialist revolution.

We use cookies and similar technologies. By continuing to use this website, you consent to our Terms of Service and our Privacy Policy.

**ACCEPT COOKIES**

from a former Swiss banker, Charles De Beaumont, who became a business partner with Lustgarten after he left his bank, Compagnie Bancaire Helvetique, at the end of 2012, several sources familiar with his assistance said.

The hard drive, which De Beaumont shared with Lustgarten, detailed the money manager's and the Swiss banker's dealings with Venezuelan TV mogul Raul Gorrín and Venezuelan brothers Luis and Ignacio Oberto, both suspected kleptocrats close to the Venezuelan presidents, those sources said. The cadre of people close to Chávez and Maduro who have gotten rich under their regimes have their own class label: *boliburgueses*, a variation of bourgeoisie.



A source described Martin Lustgarten as a 'pioneer in what later became the regular usage of the Venezuelan foreign exchange market to launder drug and corruption proceeds.' A Miami resident, Lustgarten has managed to avoid prison and maintain a lavish lifestyle by dishing on his former associates to federal prosecutors.

According to a "Suspicious Activity Report," or SAR, filed by HSBC Bank USA with the Treasury Department, Lustgarten's various companies transmitted and received at least $402 million through banking accounts for Venezuelan and other

We use cookies and similar technologies. By continuing to use this website, you consent to our Terms of Service and our Privacy Policy.

**ACCEPT COOKIES**

million in transactions with global customers, including in Miami, between 2007 and 2015.

The amounts, reported by just two of the banks used by Lustgarten, are striking. They represent seven times as much money as the $100 million he was accused of laundering through U.S. bank accounts for Colombian and Mexican drug cartels in his criminal case, which was originally filed by federal prosecutors in Boston where Lustgarten had been an informant for the Drug Enforcement Administration. Their case was eventually transferred to Miami, where most of the alleged laundering took place, but it was eventually dismissed because Boston prosecutors were unable to obtain Swiss bank evidence in a timely way to go to trial.

The full panorama of Lustgarten's machinations is highlighted in a massive leak of documents consisting of SARs — documents filed mostly by bank compliance officers when it appears transactions show a pattern of potential money laundering or other possible illegality. By offering drug cartels and kleptocrats the means to clean their profits through shell companies and legitimate banks, money launderers prop up corruption and facilitate the criminal underworld, U.S. authorities say.



We use cookies and similar technologies. By continuing to use this website, you consent to our  Terms of Service and our  Privacy Policy.

**ACCEPT COOKIES**

# EXHIBIT H-1

**From:** Sheehan, Evelyn B. (USAFLS)
**Sent:** Tuesday, May 15, 2018 10:40 AM
**To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
**Subject:** FW: How the Feds Blew a Case Against an Alleged South American Drug Money Launderer - VICE

Hey

Until last night I did NOT know that our infamous intern's father represented one of these targets/current cooperator in the VZ matter. If you find out about stuff like this for future interns, pls be sure to share with me and others to make sure we wall that person off completely. Quite unnerving bc I usually take extra precautions with my papers, discussions, research assignments, etc. What are the chances!?!

E

---

**From:** Lehr, Alison (USAFLS)
**Sent:** Tuesday, May 15, 2018 10:55 AM
**To:** Sheehan, Evelyn B. (USAFLS) <esheehan@usa.doj.gov>
**Subject:** RE: How the Feds Blew a Case Against an Alleged South American Drug Money Launderer - VICE

E-

Apologies. I really thought I had told you. I know I discussed it with Nalina and Adrienne and, based on our discussions, we took away an assignment he was given initially.

A

---

**From:** Sheehan, Evelyn B. (USAFLS)
**Sent:** Tuesday, May 15, 2018 10:57 AM
**To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
**Subject:** RE: How the Feds Blew a Case Against an Alleged South American Drug Money Launderer - VICE

We're all super busy. If I was told it didn't quite register during one of my ADD moments. You need to hit me over the head with it

I'm having heartburn bc of my notes, etc. I wasn't careful with papers etc

---

**From:** Lehr, Alison (USAFLS)
**Sent:** Tuesday, May 15, 2018 10:59 AM
**To:** Sheehan, Evelyn B. (USAFLS)
**Subject:** RE: How the Feds Blew a Case Against an Alleged South American Drug Money Launderer - VICE

Very sorry.

I will make certain (should there be a next time) ▮▮▮▮▮▮▮

---

| | |
|---|---|
| **From:** | Sheehan, Evelyn B. (USAFLS) |
| **To:** | Lehr, Alison (USAFLS) |
| **Subject:** | RE: How the Feds Blew a Case Against an Alleged South American Drug Money Launderer - VICE |
| **Date:** | Tuesday, May 15, 2018 10:59:58 AM |

▮▮▮▮▮▮▮.

# EXHIBIT H-2

| From: | Lehr, Alison (USAFLS) |
|---|---|
| To: | "Jonathan Mullane" |
| Subject: | RE: Discussion today |
| Date: | Wednesday, February 21, 2018 8:54:00 AM |

Greetings, Jonathan.

Thank you for your thoughts and for providing information from your viewpoint. I think there has definitely been some miscommunication and possibly misinterpretation but I can certainly try to accommodate your request regarding no further work from Adrienne (sometimes, emergencies arise and we rely on "all hands," including interns, to get through them). That being said, and after you and I speak, I would like you to finish the current project for Adrienne. Please let's discuss when you next come in.

Alison

From: Jonathan Mullane [mailto:j.mullane@icloud.com]
Sent: Tuesday, February 20, 2018 6:24 PM
To: Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
Subject: Discussion today

Hi Alison,

Upon further reflection of our discussion today, I would like to request that I not be assigned any further work from Adrienne. While I certainly welcome any and all feedback from her, just as I welcome feedback from everyone else at the office (both positive and negative feedback), to be frank, I will not tolerate any comments from her or anyone else regarding my physical appearance. Not only did I find her comments to me this past Wednesday highly disrespectful, they were inappropriate and unprofessional. I did not appreciate her comment that my face looked "weird," nor did I appreciate her stating that I was "staring" at her when I was simply trying to figure out what she needed from me. She may very well think that I "think too fast," or that I am somehow impolite because I stop her to let her know that I'm struggling to follow her—nothing justifies an *ad hominem* attack between colleagues in such circumstances.

I am fully cognizant of my unique personality. However, I make every effort to treat each and every person I encounter with respect—from the cafeteria employees, to those who are in a position of authority. While I am certainly prone to *faux pas*, as you know, they are never made intentionally or maliciously.

As you know, I take a lot of pride in my work, and I work and study hard seven days a week. I truly enjoy helping others, adding value in the few ways I can, and contributing to the U.S. Attorney's Office. However, that being said, my self-respect is not something I am willing to give up for an unpaid internship.

I would like to emphasize that I have no interest in causing any problems for either you or your colleagues. Up until this past Wednesday, I genuinely enjoyed working with the Office, as it is certainly an invaluable learning opportunity for me. That being said, if the foregoing request cannot be granted, please let me know so that I can set up a meeting with the US Attorney and with the University of Miami in order to discuss my work environment.

EOUSA-2019-000468-01326

Thank you,

Jonathan

---

**Jonathan Mullane**
Tel.: +1 (617) 800-6925 | j.mullane@icloud.com
*This e-mail message and any attachments are confidential and may be privileged. Emails transmitted or received shall neither constitute acceptance of conducting transactions via electronic means nor shall create a binding contract in the absence of a fully signed written agreement.*

EOUSA-2019-000468-01327

# EXHIBIT I

| From: | Sheehan, Evelyn B. (USAFLS) |
| To: | Medetis, Maria (USAFLS) |
| Subject: | Fwd: Meeting |
| Date: | Tuesday, April 10, 2018 12:55:25 PM |

About to meet with Michelle to find out what happened in court

Begin forwarded message:

> **From:** "Lehr, Alison (USAFLS)" <ALehr@usa.doj.gov>
> **Date:** April 10, 2018 at 12:53:06 PM EDT
> **To:** "Sheehan, Evelyn B. (USAFLS)" <esheehan@usa.doj.gov>
> **Subject: RE: Meeting**
>
> Nope. I spoke with her before I spoke with Jonathan.
>
> **From:** Sheehan, Evelyn B. (USAFLS)
> **Sent:** Tuesday, April 10, 2018 12:42 PM
> **To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
> **Subject:** Re: Meeting
>
> Is Maria aware of all this
>
> On Apr 10, 2018, at 12:32 PM, Lehr, Alison (USAFLS) <ALehr@usa.doj.gov> wrote:
>
>> Where are you?
>>
>> **From:** Sheehan, Evelyn B. (USAFLS)
>> **Sent:** Tuesday, April 10, 2018 12:32 PM
>> **To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
>> **Cc:** Alvarez, Michelle (USAFLS) <MAlvarez@usa.doj.gov>
>> **Subject:** Re: Meeting
>>
>> Wait what? Why?
>>
>> On Apr 10, 2018, at 12:28 PM, Lehr, Alison (USAFLS) <ALehr@usa.doj.gov> wrote:
>>
>>> fyi
>>>
>>> **From:** Mullane, Jonathan (USAFLS)
>>> **Sent:** Tuesday, April 10, 2018 12:24 PM
>>> **To:** Greenberg, Benjamin (USAFLS) <BGreenberg@usa.doj.gov>

**Cc:** Lima, Annette (USAFLS) <alima@usa.doj.gov>; Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
**Subject:** Meeting

Dear Attorney Greenberg:

My name is Jonathan Mullane, I am a student intern working in the asset forfeiture division under Alison Lehr. This the final week of my internship here at the office.

At Judge Moreno's request I would like to schedule a brief meeting with you today or tomorrow. Please let me know if and when this would be possible. With your consent, I would also ask that Attorney Lehr be permitted to join this meeting.

Thank you, and I look forward to hearing from you.

Kind regards,

Jonathan

# EXHIBIT J-1

**Query    Reports    Utilities    Help    Log Out**

JB,REF_DISCOV,STAYED

# U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:20-cv-21339-AKK

Mullane v. Moreno et al
Assigned to: District Judge Abdul K Kallon
Referred to: Magistrate Judge Jacqueline Becerra
Cause: 18:1964 Racketeering (RICO) Act

Date Filed: 03/27/2020
Jury Demand: Plaintiff
Nature of Suit: 470 Racketeer/Corrupt Organization
Jurisdiction: Federal Question

**Plaintiff**

**Jonathan Mullane**

represented by **Jonathan Mullane**
30 Donnell Street
Cambridge, MA 02138
617-800-6925
Email: J.Mullane@icloud.com
PRO SE

V.

**Defendant**

**Federico A. Moreno**
*inclusively, in their individual and official capacities*

represented by **Dexter Lee**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9320
Fax: 530-7139
Email: dexter.lee@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karin D. Wherry**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9016
Fax: 530-7139
Email: karin.wherry@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alison W. Lehr**
*inclusively, in their individual and official capacities*

represented by **Dexter Lee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karin D. Wherry**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Benjamin G. Greenberg**
*inclusively, in their individual and official*
*capacities*

represented by **Dexter Lee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karin D. Wherry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lisa T. Roberts**
*inclusively, in their individual and official*
*capacities*

represented by **Dexter Lee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karin D. Wherry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1 through 10**
*inclusively, in their individuals and official*
*capacities*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/27/2020 | 1 | VERIFIED COMPLAINT against Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. Filing fees $ 400.00 Not Paid/No IFP, filed by Jonathan Mullane. (Attachments: # 1 Civil Cover Sheet)(pcs) (Attachment 1 replaced on 3/30/2020) (jas). (Main Document 1 replaced on 4/9/2020) (ail). (Attachment 1 replaced on 4/9/2020) (ail). (Additional attachment(s) added on 4/9/2020: # 3 Exhibit Exhibit A-B, # 4 Exhibit C -E, # 5 Exhibit F - G) (ail). (Entered: 03/27/2020) |
| 03/27/2020 | 2 | Clerks Notice of Judge Assignment to Chief Judge K. Michael Moore.<br><br>Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Jacqueline Becerra is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent.<br><br>Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (pcs) (Entered: 03/27/2020) |
| 03/27/2020 | 3 | MOTION for Referral to Volunteer Attorney Program by Jonathan Mullane. (pcs) (Entered: 03/27/2020) |
| 03/27/2020 | 5 | Clerks Notice of Receipt of Filing Fee received on 3/27/2020 in the amount of $ 400.00, receipt number FLS100206026. (scn) (Entered: 03/30/2020) |

| 03/27/2020 | 6 | NOTICE of Filing Civil Cover Sheet by Jonathan Mullane re 1 Complaint, Text Modified on 3/30/2020 (mee). (Entered: 03/30/2020) |
|---|---|---|
| 03/30/2020 | 4 | PAPERLESS PRETRIAL ORDER. This order has been entered upon the filing of the complaint. Plaintiff's counsel is hereby ORDERED to forward to all defendants, upon receipt of a responsive pleading, a copy of this Order. It is further ORDERED that S.D. Fla. L.R. 16.1 shall apply to this case and the parties shall hold a scheduling conference no later than twenty (20) days after the filing of the first responsive pleading by the last responding defendant, or within sixty (60) days after the filing of the complaint, whichever occurs first. However, if all defendants have not been served by the expiration of this deadline, Plaintiff shall move for an enlargement of time to hold the scheduling conference, not to exceed 90 days from the filing of the Complaint. Within ten (10) days of the scheduling conference, counsel shall file a joint scheduling report. Failure of counsel to file a joint scheduling report within the deadlines set forth above may result in dismissal, default, and the imposition of other sanctions including attorney's fees and costs. The parties should note that the time period for filing a joint scheduling report is not tolled by the filing of any other pleading, such as an amended complaint or Rule 12 motion. The scheduling conference may be held via telephone. At the conference, the parties shall comply with the following agenda that the Court adopts from S.D. Fla. L.R. 16.1: (1) Documents (S.D. Fla. L.R. 16.1.B.1 and 2) - The parties shall determine the procedure for exchanging a copy of, or a description by category and location of, all documents and other evidence that is reasonably available and that a party expects to offer or may offer if the need arises. Fed. R. Civ. P. 26(a)(1)(B). (a) Documents include computations of the nature and extent of any category of damages claimed by the disclosing party unless the computations are privileged or otherwise protected from disclosure. Fed. R. Civ. P. 26(a)(1)(C). (b) Documents include insurance agreements which may be at issue with the satisfaction of the judgment. Fed. R. Civ. P. 26(a)(1)(D). (2) List of Witnesses - The parties shall exchange the name, address and telephone number of each individual known to have knowledge of the facts supporting the material allegations of the pleading filed by the party. Fed. R. Civ. P. 26(a)(1)(A). The parties have a continuing obligation to disclose this information. (3) Discussions and Deadlines (S.D. Fla. L.R. 16.1.B.2) - The parties shall discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case. Failure to comply with this Order or to exchange the information listed above may result in sanctions and/or the exclusion of documents or witnesses at the time of trial. S.D. Fla. L.R. 16.1.I. Pursuant to Administrative Order 2016-70 of the Southern District of Florida and consistent with the Court of Appeals for the Eleventh Circuit's Local Rules and Internal Operating Procedures, within three days of the conclusion of a trial or other proceeding, parties must file via CM/ECF electronic versions of documentary exhibits admitted into evidence, including photographs of non-documentary physical exhibits. The Parties are directed to comply with each of the requirements set forth in Administrative Order 2016-70 unless directed otherwise by the Court. Telephonic appearances are not permitted for any purpose. Upon reaching a settlement in this matter the parties are instructed to notify the Court by telephone and to file a Notice of Settlement within twenty-four (24) hours. Signed by Chief Judge K. Michael Moore on 3/30/2020. (mgh) (Entered: 03/30/2020) |
| 03/30/2020 | 7 | PAPERLESS ORDER REFERRING PRETRIAL DISCOVERY MATTERS TO MAGISTRATE JUDGE JACQUELINE BECERRA. PURSUANT to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the above-captioned Cause is referred to United States Magistrate Judge Jacqueline Becerra to take all necessary and proper action as required by law with respect to any and all pretrial discovery matters. Any motion affecting deadlines set by the Court's Scheduling Order is |

| | | |
|---|---|---|
| | | excluded from this referral, unless specifically referred by separate Order. It is FURTHER ORDERED that the parties shall comply with Magistrate Judge Jacqueline Becerra's discovery procedures. Signed by Chief Judge K. Michael Moore on 3/30/2020. (mgh) (Entered: 03/30/2020) |
| 04/06/2020 | 8 | (RESTRICTED) Notice of Lawsuit and REQUEST to Waive Service of a Summons sent to Federico A. Moreno on 03/30/2020 by Jonathan Mullane. (cds) Text Modified on 4/7/2020 (cds). (Entered: 04/07/2020) |
| 04/06/2020 | | SYSTEM ENTRY - Docket Entry 10 [cmp] restricted/sealed until further notice. (pes) (Entered: 04/07/2020) |
| 04/06/2020 | 14 | NOTICE of Filing Service of Summons by Jonathan Mullane (cds) (Entered: 04/07/2020) |
| 04/07/2020 | 9 | MOTION for CM/EFC Access and for Leave to File Electronically by Jonathan Mullane. (cds) (Entered: 04/07/2020) |
| 04/07/2020 | 11 | Consent by Pro Se Litigant (Non-Prisoner) Jonathan Mullane to receive Notices of Electronic Filing at email address: J.Mullane@icloud.com (*Unsigned) (ail) (Entered: 04/07/2020) |
| 04/07/2020 | 12 | Summons Issued as to Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Jonathan Mullane. (ail) (Entered: 04/07/2020) |
| 04/07/2020 | 13 | Clerks Notice of Docket Correction re 10 Amended Complaint. **Document Restricted Due to Error.** (pes) (Entered: 04/07/2020) |
| 04/07/2020 | 15 | Clerks Notice of Docket Correction re 8 Request for Waiver of Service. **Wrong Event selected for Image see DE# 14** Other. (cds) (Entered: 04/07/2020) |
| 04/08/2020 | 16 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff Jonathan Mullane's Motion for Referral to Volunteer Attorney Program. 3 . Therein, Plaintiff Jonathan Mullane requests that the Court refer his request for counsel to the Court's Volunteer Attorney Program because he is unable to afford an attorney. Id. There is no right to counsel in civil actions. See Bass v. Perrin, 170 F.3d 1312, 1319 (11th Cir. 1999). "Where the facts and issues are simple, litigants will usually not need help." Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993). Moreover, it is within the Court's discretion to refer the matter to the Volunteer Attorney Program. Plaintiff brings an eighteen (18) count Complaint ("Compl.") (ECF No. 1) against Defendants Alison W. Lehr, Benjamin G. Greenberg, Lisa T. Roberts and the Honorable Federico A. Moreno. See generally Compl. In the Complaint, Plaintiff alleges that Defendants conspired to interfere with Plaintiff's current and prospective employment by spreading false and defamatory information about Plaintiff. See id. at 2431. Further, Plaintiff alleges that Judge Moreno unlawfully procured Plaintiff's employment records with the United States Attorney's Office and sent non-public hearing transcripts to various national legal publications. See id. at 3. The Court finds that the facts and issues of the matter are straightforward and thus referral to the Volunteer Attorney Program is not warranted. Accordingly, UPON CONSIDERATION of the Motion 3 , the pertinent portions of the record, and being otherwise fully advised in the premises, the Motion 3 is hereby DENIED. Signed by Chief Judge K. Michael Moore on 4/8/2020. (mgh) (Entered: 04/08/2020) |
| 04/09/2020 | 17 | Clerks Notice of Docket Correction re 1 Verified Complaint __Error: Images Incomplete __Correction: Documents Replaced with Complete Image. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A-B, # 3 Exhibit C-E, # 4 Exhibit F-G). SEE ATTACHED FOR COPY (ail) (Entered: 04/09/2020) |
| 05/05/2020 | 18 | VERIFIED OMNIBUS MOTION FOR RECUSAL AND FOR REASSIGNMENT TO AN OUT-OF DISTRICT JUDGE, AND INCORPORATED MEMORANDUM OF LAW ( |

Responses due by 5/19/2020) by Jonathan Mullane. (cds) (Entered: 05/05/2020)

| 05/07/2020 | 19 | VERIFIED MOTION FOR SERVICE OF PROCESS BY THE UNITED STATES MARSHALS SERVICE PURSUANT TO FED. R. CIV. P. 4(c)(3) AND INCORPORATED MEMORANDUM OF LAW by Jonathan Mullane. Responses due by 5/21/2020 (cds) (Entered: 05/07/2020) |
|---|---|---|
| 05/07/2020 | 20 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff's Motion for Service of Process by the United States Marshal Service. 19 . Therein, Plaintiff requests that Court order that a United States Marshal effectuate service pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure because Defendants have failed to timely sign and return a waiver of service. Id. at 12. Rule 4(c)(3) provides that, "[a]t the plaintiffs request, the court may order that services be made by a United States marshal or deputy marshal or a by a person specifically appointed by the court." Fed. R. Civ. P. 4(c)(3). If a plaintiff is not proceeding in forma pauperis, it is within the Courts discretion to order the United States Marshal to serve civil process. See Prospectus v. Todd, No. 8:17-cv-996-T-33MAP, 2017 WL 2291367, at *1 (M.D. Fla. May, 25, 2017). Further, "a plaintiff requesting appointment of the United States Marshal in order to comply with the service requirement of Rule 4 must provide a factual basis for why a court order is necessary to accomplish service." Id. Plaintiff does not indicate why service by the United States Marshals Service is necessary to accomplish service. See generally 19 ; see also Prospectus, 2017 WL 2291367, at *1 (finding service by a United States Marshal was not necessary to complete service where Plaintiff had alternatives available to effectuate service). The mere fact that Defendants have not waived service is not grounds for the Court to order a United States Marshal to effectuate service on Defendants as there are alternatives available to Plaintiff, such as hiring a private process server. Id. Moreover, the Advisory Committee Notes state that service by the United States Marshals Service "is generally proper when it is necessary to keep the peace," a circumstances not present in the instant action. Davis v. U.S. Installation Group, Inc., No. 12-80392-CIV, 2012 WL 4511359, at *2 (S.D. Fla. Oct. 2, 2012) (citation omitted). Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, being otherwise fully advised in the premises, the Motion 19 is DENIED. Signed by Chief Judge K. Michael Moore on 5/7/2020. (mgh) (Entered: 05/07/2020) |
| 05/26/2020 | 21 | MOTION to Supplement re 18 OMNIBUS MOTION FOR RECUSAL AND FOR REASSIGNMENT TO AN OUT-OF DISTRICT JUDGE by Jonathan Mullane. (cds) (Main Document 21 replaced with complete copy on 6/8/2020 (See Exhibit E) (ail). (Entered: 05/26/2020) |
| 05/27/2020 | 22 | FIRST MOTION for Judicial Notice and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Exhibit)(cds) (Entered: 05/27/2020) |
| 06/01/2020 | 23 | NOTICE of Attorney Appearance by Dexter Lee on behalf of Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. Attorney Dexter Lee added to party Benjamin G. Greenberg(pty:dft), Attorney Dexter Lee added to party Alison W. Lehr(pty:dft), Attorney Dexter Lee added to party Federico A. Moreno(pty:dft), Attorney Dexter Lee added to party Lisa T. Roberts(pty:dft). (Lee, Dexter) (Entered: 06/01/2020) |
| 06/01/2020 | 24 | Defendant's MOTION for Extension of Time to File Response/Reply/Answer as to 1 Complaint, by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. (Attachments: # 1 Text of Proposed Order)(Lee, Dexter) (Entered: 06/01/2020) |
| 06/01/2020 | 25 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff's Motion for Judicial Notice. 22 . Therein, Plaintiff moves the Court to take judicial notice of (1) a complaint filed by proposed Plaintiff-Intervenor E. Peter Mullane in Mullane v. Moreno, No. 1:18-CV-12618-PBS, in the United States District Court for the District of Massachusetts; and (2) the ongoing appeal of the claims of the proposed Plaintiff- |

Intervenor E. Peter Mullane in the United States Court of Appeals for the First Circuit. Id. at 1. Plaintiff does not indicate for what purpose he seeks judicial notice of these documents and proceedings. See generally id.

A court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute and either (1) generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. See Grayson v. Warden, Commr, Ala. DOC., 869 F.3d 1204, 1224-25 (11th Cir. 2017) (citing Fed. R. Evid. 201(b)). However, "[i]f a court could take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation omitted). Thus, "[a] court may only take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, a court cannot take judicial notice of factual findings of another court." Grayson, 869 F.3d at 1224-25 (citation omitted).

Here, Plaintiff requests that the Court take judicial notice of documents and proceedings in the District of Massachusetts and the First Circuit. See generally 22 . Plaintiff does not indicate if he seeks judicial notice of these documents and proceedings to establish that there is ongoing litigation or to establish an adjudicative fact. See generally id. Regardless, it is only proper for the Court to take judicial notice of these documents and proceedings for the limited purpose of establishing the fact of such litigation. See Grayson, 869 F.3d at 1224-25; Jones, 29 F.3d at 1553. And, it is improper for the Court to take judicial notice of these documents or proceedings to establish any adjudicative facts at issue in the instant matter. See Grayson, 869 F.3d at 1224-25; Jones, 29 F.3d at 1553.

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion 22 is GRANTED. The Court will take judicial notice of the documents and proceedings in the District of Massachusetts and the ongoing appeal in the First Circuit for the limited purpose of establishing the fact of such litigation and related filings. The Court does not take judicial notice of any adjudicative fact in the documents nor any factual findings of either the District of Massachusetts or First Circuit in these litigations and related filings. Signed by Chief Judge K. Michael Moore on 6/1/2020. (mgh) (Entered: 06/01/2020)

| | | |
|---|---|---|
| 06/01/2020 | 26 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendants' Unopposed Motion for Extension of Time to Respond to the Complaint. 24 . UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion 24 is GRANTED. Defendants Benjamin Greenberg, Alison Lehr, Lisa Roberts and the Honorable Federico Moreno shall answer or otherwise respond to the Complaint on or before July 12, 2020. Signed by Chief Judge K. Michael Moore on 6/1/2020. (mgh) (Entered: 06/01/2020) |
| 06/02/2020 | | Reset Deadlines Benjamin G. Greenberg answer due 7/12/2020; Alison W. Lehr answer due 7/12/2020; Jonathan Mullane answer due 7/12/2020; Lisa T. Roberts answer due 7/12/2020 per DE#26. (cqs) (Entered: 06/02/2020) |
| 06/08/2020 | 27 | Clerks Notice of Docket Correction re 21 MOTION to Supplement the re 18 MOTION for Recusal MOTION to Change Venue.ERROR: Incomplete Document Filed Correction: Image replaced with complete image (See Exhibit E). SEE ATTACHED for complete copy. (ail) (Entered: 06/08/2020) |
| 06/08/2020 | 28 | Letter to the court re 9 MOTION for Leave to File by Jonathan Mullane. (cds) Modified text and terminated motion on 6/9/2020 (asl). (Entered: 06/09/2020) |

| | | |
|---|---|---|
| 06/09/2020 | | SYSTEM ENTRY - Docket Entry 29 [motion] restricted/sealed until further notice. (nc) (Entered: 06/09/2020) |
| 06/11/2020 | 30 | NOTICE of Attorney Appearance by Karin D. Wherry on behalf of Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. Attorney Karin D. Wherry added to party Benjamin G. Greenberg(pty:dft), Attorney Karin D. Wherry added to party Alison W. Lehr(pty:dft), Attorney Karin D. Wherry added to party Federico A. Moreno(pty:dft), Attorney Karin D. Wherry added to party Lisa T. Roberts(pty:dft). (Wherry, Karin) (Entered: 06/11/2020) |
| 06/11/2020 | | SYSTEM ENTRY - Docket Entry 31 [order] restricted/sealed until further notice. (cbr) (Entered: 06/11/2020) |
| 06/23/2020 | 32 | NOTICE of Voluntary Dismissal Without Prejudice as to Lisa T. Roberts by Jonathan Mullane. (cds) (Entered: 06/23/2020) |
| 07/10/2020 | 33 | MOTION for Leave to File a First Amended Complaint and Incorporated Memorandum by Jonathan Mullane. (cds) (Main Document 33 replaced on 7/10/2020) (wc). (Additional attachment(s) added on 7/14/2020: # 1 Copy of Motion) (cqs). (Entered: 07/10/2020) |
| 07/10/2020 | 34 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer *to Amended Complaint* by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno. (Attachments: # 1 Text of Proposed Order)(Wherry, Karin) (Entered: 07/10/2020) |
| 07/13/2020 | 35 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff Jonathan Mullane's ("Plaintiff") Motion for Recusal and Assignment for Out-of-District Judge. 18 . Therein, Plaintiff requests that the undersigned (1) recuse himself, and either (2) reassign this matter to an independent out-of-district judge, or (3) request that the Chief Judge of the Eleventh Circuit reassign this matter to an out-of-district judge. Id. at 9.<br><br>Pursuant to 28 U.S.C. § 292(b), "[t]he chief judge of a circuit may, in the public interest, designate and assign temporarily any district judge of the circuit to hold a district court within any district within the circuit."<br><br>District courts have "broad discretion to stay proceedings as incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 70607 (1997) (citation omitted). Indeed "district courts have inherent, discretionary authority to issue stays in many circumstances." Advanced Bodycare Sols., LLC v. Thione Intl, Inc., 524 F.3d 1235, 1241 (11th Cir. 2008). "Federal courts routinely exercise their power to stay a proceeding where a stay would promote judicial economy and efficiency." Morrissey v. Subaru of Am., Inc., No. 1:15-CV-21126-KMM, 2015 WL 4512641, at *2 (S.D. Fla. July 24, 2015) (citation omitted). Although courts must be on guard against depriving the processes of justice, plaintiffs "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." Landis v. N. Am. Co., 299 U.S. 248, 256 (1936).<br><br>On July 13, 2020, the undersigned requested that Chief Judge William H. Pryor of the United States Court of Appeals for the Eleventh Circuit assign an out-of-district judge to this matter. Further, the Court finds that it is proper to stay this matter until the Court receives a response from Chief Judge Pryor. A stay will promote judicial economy and efficiency and Plaintiff will not be unduly prejudiced by a brief stay of this matter. See Landis, 299 U.S. at 256.<br><br>Accordingly, UPON CONSIDERATION of the Motion 18 , the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff's Motion for Recusal 18 is GRANTED IN PART and DENIED |

| | | IN PART. It is hereby ORDERED that this case is STAYED pending receipt of a response from Chief Judge Pryor. The Clerk of Court is INSTRUCTED to STAY this case. All pending motions, if any, are DENIED AS MOOT. Signed by Chief Judge K. Michael Moore on 7/13/2020. (mgh) (Entered: 07/13/2020) |
|---|---|---|
| 07/13/2020 | 36 | DESIGNATION OF UNITED STATES JUDGE FOR SERVICE WITHIN THE CIRCUIT. Signed by Chief Judge William H. Pryor, Jr., Eleventh Circuit Court of Appeals on 7/13/2019. *See attached document for full details*. (yar) (Entered: 07/13/2020) |
| 07/16/2020 | 37 | Case Reassigned to District Judge Abdul K Kallon. Chief Judge K. Michael Moore no longer assigned to the case. Pursuant to DE 36 Order (mr1) Modified on 7/16/2020 (mr1). (Entered: 07/16/2020) |
| 07/22/2020 | 38 | ORDER Re: 33 Motion for Leave to File Amended Complaint is GRANTED. Also, the 34 Motion for Extension of Time to File Answer to Amended Complaint is GRANTED. Accordingly, Mullane shall file his first amended complaint, doc. 33 at 9-115, as a separate docket entry, and the defendants shall respond to the amended complaint within thirty days after Mullane files it. Signed by District Judge Abdul K Kallon on 7/22/2020. *See attached document for full details*. (khy) (Entered: 07/22/2020) |
| 07/22/2020 | 39 | ORDER The 9 Motion for Leave to File Electronically is DENIED. Signed by District Judge Abdul K Kallon on 7/22/2020. *See attached document for full details*. (khy) (Entered: 07/22/2020) |
| 07/23/2020 | 40 | Renewed and Assented- to MOTION for CM/EFC Access and for Leave to File Electronically by Jonathan Mullane. (cds) (Entered: 07/23/2020) |
| 07/28/2020 | 41 | RENEWED MOTION FOR REFERRAL TO THE VOLUNTEER ATTORNEY PROGRAM AND INCORPORATED MEMORANDUM OF LAW by Jonathan Mullane. (cds) (Entered: 07/28/2020) |
| 08/07/2020 | 42 | RESPONSE in Opposition re 41 MOTION for Referral to Volunteer Attorney Program filed by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. Replies due by 8/14/2020. (Attachments: # 1 Exhibit A - Mullane v. Breaking Media, Inc., Case No. 20-1080 (1st. Cir.))(Lee, Dexter) (Entered: 08/07/2020) |
| 08/11/2020 | 43 | Stipulated MOTION for Leave to File A Second Amended Complaint and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 [Proposed] Verified Second Amended Complaint)(cds) (Entered: 08/11/2020) |
| 08/19/2020 | 44 | ORDER denying 40 Plaintiff's Renewed And Assented-To Motion For CM/ECF Access And For Leave To File Electronically; denying 41 Plaintiff's Renewed Motion For Referral to the Volunteer Attorney Program And Incorporated Memorandum of Law; granting 43 Plaintiff's Stipulated Motion for Leave to File A Second Amended Complaint and Incorporated Memorandum of Law. The Clerk is DIRECTED to file Mullane's second amended complaint, doc. 43-1, as a separate docket entry. The defendants' response is due thirty days after the second amended complaint is docketed. Signed by District Judge Abdul K Kallon on 08/19/2020. *See attached document for full details*. (yar) (Entered: 08/19/2020) |
| 08/19/2020 | 45 | Verified Second AMENDED COMPLAINT against Does 1 through 10, Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts, filed by Jonathan Mullane.(cds) (Entered: 08/20/2020) |
| 08/31/2020 | 46 | NOTICE of Filing Proposed Summons(es) by Jonathan Mullane (cds) (Entered: 08/31/2020) |
| 08/31/2020 | 47 | Clerks Notice to Filer re: Summons(es) cannot be issued. Attorney or Pro Se party's return address is not listed (cds) (Entered: 08/31/2020) |

| 09/09/2020 | 48 | Summons Issued as to Lisa T. Roberts. (cds) (Entered: 09/09/2020) |
|---|---|---|
| 09/18/2020 | 49 | Defendant's MOTION for Extension of Time to File Response/Reply/Answer as to 45 Amended Complaint/Amended Notice of Removal by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. (Attachments: # 1 Text of Proposed Order) (Wherry, Karin) (Entered: 09/18/2020) |
| 09/28/2020 | 50 | Verified Opposition re 49 Defendant's MOTION for Extension of Time to File Response/Reply/Answer as to 45 Amended Complaint/Amended Notice of Removal filed by Jonathan Mullane. Replies due by 10/5/2020. (cds) (Entered: 09/28/2020) |
| 10/05/2020 | 51 | ORDER For good cause shown, the Defendants' 49 Motion for Extension of Time to File Response/Answer to Second Amended Complaint is GRANTED IN PART, the dfts' consolidated response is due twenty-one (21) days after Mr. Mullane serves Lisa T. Roberts with the summons and complaint. Signed by District Judge Abdul K Kallon on 10/5/2020. *See attached document for full details.* (khy) (Entered: 10/05/2020) |
| 10/15/2020 | 52 | Defendant's MOTION for Leave to File Excess Pages *Defendants' Motion to Dismiss Second Amended Complaint* by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. (Attachments: # 1 Exhibit A - Defendants' Motion to Dismiss Second Amended Complaint, # 2 Text of Proposed Order)(Lee, Dexter) (Entered: 10/15/2020) |
| 10/15/2020 | 53 | ORDER Granting in part 52 Motion for Leave to File Excess Pages. The defendants may file a motion to dismiss of up to 30 pages, and the plaintiff may file a brief in opposition of up to 30 pages, dft's reply, if any, is limited to 10 pages. Signed by District Judge Abdul K Kallon on 10/15/2020. See attached document for full details. (khy) (Entered: 10/15/2020) |
| 10/15/2020 | 54 | Verified Motion for Costs of Service and Incorporated Memorandum of Law by Jonathan Mullane. (Attachments: # 1 Exhibit)(cds) (Entered: 10/16/2020) |
| 10/15/2020 | 55 | AFFIDAVIT signed by: Natasha A. Caplan by Jonathan Mullane (cds) (Entered: 10/16/2020) |
| 10/16/2020 | 56 | Defendant's MOTION TO DISMISS 45 Amended Complaint/Amended Notice of Removal FOR FAILURE TO STATE A CLAIM by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. Responses due by 10/30/2020 (Attachments: # 1 Exhibit A - Plaintiff's Verified Motion for Recusal for Cause, # 2 Exhibit B - Certification of Scope of Employment (Oct. 9, 2020))(Lee, Dexter) (Entered: 10/16/2020) |
| 10/26/2020 | 57 | ORDER re 54 MOTION for Costs of Service filed by Jonathan Mullane and 56 Defendant's MOTION TO DISMISS filed by Federico A. Moreno, Alison W. Lehr, Benjamin G. Greenberg, Lisa T. Roberts. The parties' resonses to the motions are due by November 9, 2020, replies, if any are due by November 16, 2020. Signed by District Judge Abdul K Kallon on 10/26/2020. *See attached document for full details.* (khy) (Entered: 10/26/2020) |
| 11/09/2020 | 58 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 54 MOTION Verified Motion for Costs of Service and Incorporated Memoradum of Law by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. (Attachments: # 1 Text of Proposed Order)(Wherry, Karin) (Entered: 11/09/2020) |
| 11/10/2020 | 59 | Assented- to MOTION for Enlargement of Time to File Response/Reply/Answer as to 56 Defendant's MOTION TO DISMISS 45 Amended Complaint/Amended Notice of Removal FOR FAILURE TO STATE A CLAIM by Jonathan Mullane. (cds) (Entered: 11/10/2020) |
| 11/17/2020 | 60 | RESPONSE to Motion re 54 MOTION Verified Motion for Costs of Service and |

| | | Incorporated Memoradum of Law filed by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. Replies due by 11/24/2020. (Wherry, Karin) (Entered: 11/17/2020) |
|---|---|---|
| 11/25/2020 | 61 | OMNIBUS RESPONSE in Opposition re 56 Defendant's MOTION TO DISMISS 45 Amended Complaint/Amended Notice of Removal FOR FAILURE TO STATE A CLAIM and Opposition to the Motion for Westfall Act Substitution filed by Jonathan Mullane. Replies due by 12/2/2020. (Attachments: # 1 Exhibit)(cds) (Attachment 16-1 replaced on 12/1/2020 with complete document) (ail). Text Modified on 12/1/2020 (ail). (Entered: 11/25/2020) |
| 11/25/2020 | 62 | Cross-MOTION to for Leave to Amend Count XI of the Complaint ( Responses due by 12/9/2020), Cross-Motion for Judicial Notice, Cross-MOTION for Limited Scope-of-Employment Discovery by Jonathan Mullane. For Image SEE DE# 61 (cds) (Entered: 11/25/2020) |
| 12/01/2020 | 63 | Clerks Notice of Docket Correction re 61 Response in Opposition to Motion. **ERROR:** Exhibit (16-1) replaced with best, complete copy by Clerk. SEE ATTACHED for Image. Document being retained in Miami Office (ail) (Entered: 12/01/2020) |
| 12/01/2020 | 64 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 61 Response in Opposition to Motion, by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. (Attachments: # 1 Text of Proposed Order)(Wherry, Karin) (Entered: 12/01/2020) |
| 12/03/2020 | 65 | ORDER Granting 64 Motion for Extension of Time to File a Reply. Defendant's reply is due by 12/8/2020. Signed by District Judge Abdul K Kallon on 12/3/2020. *See attached document for full details.* (khy) (Entered: 12/03/2020) |
| 12/08/2020 | 66 | NOTICE of Filing Letter to the Court by Jonathan Mullane (cds) (Entered: 12/08/2020) |
| 12/08/2020 | 67 | Clerks Notice of Docket Correction re [61-1] Response in Opposition to Motion and 66 Letter. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15) (khy) (Entered: 12/08/2020) |
| 12/08/2020 | 68 | REPLY to Response to Motion re 56 Defendant's MOTION TO DISMISS 45 Amended Complaint/Amended Notice of Removal FOR FAILURE TO STATE A CLAIM filed by Benjamin G. Greenberg, Alison W. Lehr, Federico A. Moreno, Lisa T. Roberts. (Lee, Dexter) (Entered: 12/08/2020) |
| 12/29/2020 | 69 | MOTION FOR LEAVE TO FILE A SURREPLY by Jonathan Mullane. (cds) (Entered: 12/29/2020) |
| 01/04/2021 | 70 | ORDER The 69 Motion for Leave to File a Surreply is DENIED as set out. Signed by District Judge Abdul K Kallon on 1/4/2021. *See attached document for full details.* (khy) (Entered: 01/04/2021) |
| 03/23/2021 | 71 | Notification of Ninety Days Expiring by Jonathan Mullane re 61 OMNIBUS RESPONSE, 62 Cross-MOTION to for Leave to Amend Count XI of the Complaint, Cross-Motion for Judicial Notice, Cross-MOTION for Limited Scope-of-Employment Discovery filed by Jonathan Mullane (cds) (Entered: 03/24/2021) |
| 04/06/2021 | 72 | ORDER Mullane's Motion for Costs 54 is GRANTED. Defendants' Motion for Extension of Time to Respond 58 is MOOT. Signed by District Judge Abdul K Kallon on 4/6/2021. *See attached document for full details.* (khy) (Entered: 04/06/2021) |

# EXHIBIT J-2



FILED BY.

OCT 1 7 2020

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

JONATHAN MULLANE,                                    Docket No. 1:20-CV-21339-AKK

    *Plaintiff*,

v.

FEDERICO A. MORENO,
ALISON W. LEHR,
BENJAMIN G. GREENBERG,
LISA T. ROBERTS, and
DOES 1 through 10 inclusive,
in their individual and official capacities,

    *Defendants*.

_____/

## AFFIDAVIT OF NATASHA A. CAPLAN

I, **NATASHA A. CAPLAN**, after first being duly sworn, do hereby depose and state as

follows:

1.    I am personally familiar with all of the facts stated below.

2.    I am a fully-licensed process server in the State of Florida (Identification No. 2327), and

    am authorized by law to execute service of process throughout the County of Miami-Dade

    as well as other counties in this State.

3.    I am licensed under Florida law to carry out personal service on each and every Defendant

    in this matter.

4.   I have significant work experience as a process server, and have worked as a process server in the State of Florida for approximately seven years.

5.   I am fully familiar with the relevant professional standards which apply to process servers in this State, and am also fully familiar with Florida law as it relates to service of process and personal service on individuals.

6.   In addition to my work as a process server, I currently serve as the President and managing director of my own firm, NAC Process Servers.

7.   In or around May 2020, Plaintiff Jonathan Mullane hired NAC Process Servers to make personal service on each individual Defendant in this lawsuit.

8.   In the early afternoon of May 23, 2020, I drove to the home address of Defendant Alison W. Lehr ("Lehr") in the upscale Venetian Islands district of Miami Beach to personally serve her with a summons and a copy of the complaint in this lawsuit.

9.   After gently knocking on the front door of 109 3rd Dilido Terraces, Miami Beach, a middle-aged Caucasian woman appeared at the front door of the home and stood at the doorway of the property.

10.  The woman in question refused to immediately open the door.

11.  This woman verbally identified herself to me as Defendant Alison W. Lehr.

12.  In response, I proceeded to identify myself as a licensed Florida process server.

13.  Ms. Lehr stated that she was well aware that I was a process server because her son had spoken with me during my previous attempt to make personal service on her.

2

14. After identifying myself as a licensed process server, I politely informed Lehr that I was performing personal service, and that I was serving her with a summons and a copy of the complaint in this federal lawsuit.

15. In response, Lehr informed me that she was a "federal prosecutor[.]"

16. Lehr also advised me that she worked in the "U.S. Attorney's Office in Downtown Miami[.]"

17. Lehr then stated that she "refuse[d] to be served[,]" and that she refused to accept my authorized, appropriate, and properly-executed personal service on her.

18. Lehr falsely informed me that, under the applicable procedural rules, I could *only* legally serve "[her] attorney in the U.S. Attorney's Office."

19. In response, I politely and respectfully informed Lehr that I was indeed authorized to serve her personally under Florida law, and that she could not legally "refuse" to accept my personal service.

20. Appearing increasingly erratic and aggressive, Lehr began shouting and screaming loudly through the glass panels of the front door, while consistently reiterating that she "refuse[d] to be served[.]"

21. When I bent down to simply leave the complaint and summons at the doorway, Lehr began violently pounding the glass panels of the door while shouting that I "[could not] leave the documents there[.]"

22. Appearing extremely erratic and incoherent, Lehr shouted that I was not free to leave, and that she refused to allow me to leave the property.

23. By this point in time, Ms. Lehr had become physically and verbally hostile, aggressive, and erratic.

24. Fearing for my physical safety, and in an attempt to escape from Ms. Lehr, I immediately left the complaint and summons at the doorway of the home and ran towards our car which was parked nearby.

25. Ms. Lehr then called over to a middle-aged Caucasian man who was also present in her home at the time. She specifically asked him to help her detain me, and to assist her in preventing me from leaving her property.

26. At this point, Ms. Lehr and her male companion then opened the door to the home and proceeded to chase after me outside, shouting that I "[could not] leave" her property.

27. After shouting that I "[could not] leave[,]" Ms. Lehr began shouting that the complaint and summons were both "contaminated[,]" and that I had "contaminated [her] house with the coronavirus[.]"

28. However, in spite of these supposed concerns of "coronavirus infection[,]" Ms. Lehr subsequently left her home without wearing any mask or gloves while attempting to physically restrain me.

29. Coincidentally, my elderly father, Solomon Caplan ("Mr. Caplan"), had joined me that day, and was waiting in the car along with our small dog while I served Ms. Lehr with the summons and complaint.

30. Mr. Caplan, who is also a fully-licensed process server in the State of Florida (Identification No. 076), is an experienced process server with over 40 years of work experience.

31. After reaching our car, Mr. Caplan and I—both extremely fearful for our lives, and seeking to flee to safety—immediately ensured that all of the car's doors were closed and locked.

32. Before we were able to drive away to safety, Ms. Lehr and her male companion, who had been pursuing me as I ran back to the car, had finally caught up to me.

33. Upon observing my elderly father and me sitting inside the locked car, Ms. Lehr began screaming loudly.

34. In addition to reiterating that we were not free to leave, Ms. Lehr threatened both Mr. Caplan and myself and proceeded to detain us against our will.

35. Ms. Lehr and her male companion threatened to physically restrain both Mr. Caplan and myself.

36. After I had rolled up all of the windows in the vehicle in order to prevent Lehr from physically harming us, Ms. Lehr appeared increasingly hostile and began violently pounding her fists on the glass windows of the vehicle. The unidentified male accompanying her began pounding on both the glass windows and on the car itself.

37. I held up my official Florida process server identification badge to clearly display it to both Ms. Lehr and the Caucasian male accompanying her, while desperately pleading with them both to allow us to leave the property.

38. Upon realizing that they would not be able to successfully reach inside the vehicle in order to harm us, and in apparent frustration, Ms. Lehr and her male companion began harassing and taunting us by intermittently taking photographs and video recordings of Mr. Caplan, our terrified dog, and myself with their mobile devices.

5

39. To ensure that Ms. Lehr was fully aware that Mr. Caplan and I were licensed Florida process servers, I then rolled window down to clearly show her—once again—my Florida process server identification badge.

40. When Mr. Caplan and I attempted to drive away in order to escape, the Caucasian male assisting Ms. Lehr proceeded to detain and hold us hostage by pushing and leaning his body on the front of our vehicle for an extended 20-minute period.

41. I then attempted to reverse and back up on three separate occasions in order to flee to safety.

42. However, each time I did so in an attempt to escape, Ms. Lehr stood directly behind my vehicle in order to prevent me from escaping.

43. Throughout this entire period of time, Ms. Lehr and the Caucasian male assisting her physically blocked our sole means of escape in order to detain Mr. Caplan and myself.

44. I once again politely reiterated my request that Ms. Lehr and the unidentified male stop what they were doing immediately, yet both persisted and continued to detain us.

45. Upon realizing that we would not be physically able to escape from Ms. Lehr, and being left with no alternative, I proceeded to call 911 on my cell phone and urgently requested immediate police intervention and assistance.

46. It was not until uniformed police officers of the Miami Beach Police Department intervened in response to our 911 call that Ms. Lehr and her male companion finally withdrew.

47. As a female process server working in a male-dominated, high risk profession, I continue to feel extremely traumatized as a result of the events of May 23, 2020.

48. As a consequence of the trauma resulting from Ms. Lehr's actions towards my elderly father and myself, since the events of May 23, 2020, I have personally suffered from heart palpitations and severe anxiety.

49. The trepidations that I continue to experience on a near-daily basis include, amongst other things, an omnipresent fear that I will be attacked, assaulted, or retaliated against by Ms. Lehr or by others while carrying out my duties as a process server.

50. By deliberately choosing to hold Mr. Caplan and myself hostage in the early afternoon of May 23, 2020, Ms. Lehr's actions have negatively impacted my ability to work as a process server, and my ability to fulfill the numerous requirements of my demanding, high-risk job.

51. As a female process server working in a dangerous work environment on a daily basis, the significant trauma resulting from the events of May 23, 2020 still continues to interfere with my ability to work—even to this day.

52. I am extremely concerned that either I or one of my family members will be assaulted, attacked, or retaliated against in the same manner for simply doing my job.

53. On May 28, 2020, I filed a formal criminal complaint against Ms. Lehr with a police detective of the Miami Beach Police Department.

54. Under Florida law, and pursuant to Fla. Stat. § 843.01, interfering with the official duties of a process server is a third-degree felony criminal offense.

**SUBSCRIBED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, THIS 21 DAY OF SEPTEMBER, 2020.**

NATASHA A. CAPLAN

# EXHIBIT 2

(Aff. Pl. J. Mullane, with Exhibits Thereto)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JONATHAN MULLANE,                    )
                                     )          Docket No. 1:19-CV-12379-DJC
          Plaintiff,                 )
                                     )
v.                                   )
                                     )
UNITED STATES DEPARTMENT             )
OF JUSTICE and UNITED                )
STATES SECURITIES AND                )
EXCHANGE COMMISSION,                 )
                                     )
          Defendants.                )
                                     )

## SECOND AFFIDAVIT OF PLAINTIFF JONATHAN MULLANE

I, JONATHAN MULLANE, being the undersigned Affiant, do hereby depose and state as

follows:

1.    I am the Plaintiff in the above-captioned cause. As such, I have personal knowledge of the

      facts set forth herein.

## Procedural history of the contemporaneous *Moreno* litigation in the District of Massachusetts.

2.    In its March 19, 2021 Memorandum and Order [D.E. 66, p. 10 ¶ 2], this Court held in

      pertinent part:

           Mullane asserts that DOJ has "successfully perpetrated a fraud" in Breaking
           Media, as well as this matter, and "knowingly committed an obstruction of
           justice" by withholding responsive documents that would lead to a different
           outcome in that case. D. 44 at 8, 12. His only basis is conjecture about the
           temporal coincidence of the dismissal in Breaking Media and when the
           USAO-SDFL began its search for responsive documents. Id. at 8, 12, 17.
           But the claims against Judge Moreno and Lehr were dismissed on
           September 16, 2019, nearly four months before the USAO-SDFL
           processing began on January 8, 2020. Breaking Media, No. 18-cv-12618-

PBS, D. 134 (D. Mass. Sept. 16, 2019). The remaining claims dismissed in January 2020 were only against Breaking Media, Inc. and a journalist, for defamation. See Mullane v. Breaking Media, Inc., 433 F. Supp. 3d 102, 106 (D. Mass. 2020). Moreover, the judge in the other session dismissed that case for lack of personal jurisdiction, as Judge Moreno and Lehr reside in Florida, and Mullane's internship took place there too. Breaking Media, D. 134. These are publicly known facts, and Mullane fails to explain how these publicly known facts turn upon internal documents that were withheld, how the disposition of Breaking Media could have differed based on same, or how such sequence of events reflects bad faith on the part of the Agencies.

Ibid.

3. It is respectfully submitted that this Court appears to have misapprehended the procedural history of Mullane v. Breaking Media, et al., 1:18-CV-12618-PBS (D. Mass. Dec. 20, 2018).

4. Unfortunately, the Court appears to have inadvertently overlooked the fact that my motion for *reconsideration* of the order dismissing Judge Moreno and the DOJ defendants in that action was not ruled upon until **January 6, 2020** (not on September 16, 2019).[1]

5. Indeed, that motion for reconsideration—styled as "Plaintiff's Motion for Reconsideration of the Order on the Report and Recommendations"—is visible on the docket sheet of that action as **D.E. 140**.

6. Furthermore, Defendants DOJ and SEC have never argued in any filing herein that the claims against Moreno and the DOJ defendants were definitively dismissed on September 16, 2019 (as opposed to January 6, 2020)—and for good reason. The parties hereto are all in agreement that the claims against those defendants were not definitely dismissed by

---

[1] Indeed, at Judge Saris unambiguously stated in her January 6, 2020 order: "Plaintiff's remaining motions (Docket Nos. 103, **140**, 141, 142, 143, 144, 145, 157, 162) are DENIED as MOOT." Breaking Media, D.E. 164, p. 2 ¶ 2. While it is understandably confusing how that motion for reconsideration [D.E. 140] could possibly have been "moot" (it was not), that unusual ruling does not change the fact that **Judge Moreno and the DOJ defendants were not definitively dismissed from the case until January 6, 2020. Thus, those defendants subjectively had no reason to think otherwise prior to that particular date and point in time.** In point of fact, the internal DOJ correspondence produced in this case proves that, in reality, the USAO remained extremely concerned about how the Moreno litigation would be disposed of—even up until January 6, 2021.

Judge Saris until **January 6, 2020**—not on September 16, 2019, as inadvertently misstated in the March 19, 2021 Memorandum and Order [D.E. 66, p. 10 ¶ 2].

7.   Thus, that contention unfortunately appears to have been raised *sua sponte* by this Court in the aforesaid Memorandum and Order, and is not easily understood.

8.   It is respectfully submitted that the procedural history and timeline of events in the Moreno litigation is "crystal clear." Indeed, there is no dispute between the parties hereto that:

   (i)   The Moreno motion to dismiss, together with the motion for reconsideration, were not definitely and finally resolved by Judge Saris until **January 6, 2020**; and

   (ii)   The Miami USAO did not *begin* to process the October 2018 FOIA/PA requests until forty-eight (48) hours later on **January 8, 2020** (as previously stated in earlier filings).

9.   With respect to this Court's finding that the Moreno case was dismissed "for lack of personal jurisdiction, as Judge Moreno and Lehr reside in Florida, and Mullane's internship took place there too[,]" it is unclear how those particular facts (none of which are disputed) relate to the issue of agency "bad faith" and the DOJ's withholding of the requested FOIA/PA records.

10.   *Firstly*, as this Court is aware, the factually-correct statement that my internship took place in Florida has no nexus with the tort of defamation. In defamation cases, the tort is *de jure* deemed to have occurred where the defamation is "published" and/or "circulated"—*not* where the defendant made the defamatory remarks, or where the underlying events took place.

3

11.     In a multistate defamation action, the "single publication rule" allows a plaintiff to recover in one action for damages to his or her reputation suffered in all jurisdictions in which the defamatory material *circulated* (as opposed to the jurisdiction wherein the defamatory representation was uttered or written by the tortfeasor). See, e.g., Restatement (Second) of Torts, § 577A(4); Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984) (personal jurisdiction existed over the publisher of a national magazine which published an allegedly defamatory article about a resident of another state, as the publication was widely circulated in that state).

12. In point of fact, given that this Court is now presiding over another related action, *viz.* Mullane v. Massachusetts Board of Bar Examiners, et al., 1:20-CV-11382-DJC (D. Mass. Jul 23, 2020), it is certainly difficult to imagine how the defamatory representations of Defendants Moreno and Lehr, both verbal and written, were somehow *not* "circulated," "published," and "re-published"[2] here in the Commonwealth of Massachusetts.

13.     *Secondly*, and more importantly, **Moreno and the DOJ defendants were *not* anticipating dismissal on personal jurisdiction grounds, and had fully litigated the Moreno case on the merits.**

14.     **At that precise moment in time, the Government Defendants in Moreno had no subjective reason to believe that Judge Saris would be dismissing the case against them on personal jurisdiction grounds.[3]**

---

[2] The term "publication" is a term of art which has a separate and distinct meaning in a defamation-law context. For instance, slander (the verbal form of defamation) can be "published" and "re-published[.]"

[3] Of course, even in cases wherein personal jurisdiction is a concern, it is certainly not unusual for the presiding judge to simply transfer the case to the correct district. Why the Moreno court inexplicably declined to transfer the entire case to the Southern District of Florida (something which the defendants therein would have reasonably anticipated, and certainly would not have been surprised by) is far from clear.

15. Therefore, as a matter of deductive reasoning, the DOJ had every possible reason and motive to delay the processing of my FOIA/PA requests until **January 8, 2020**. There can be no *bona fide* dispute that producing the requested FOIA/PA records while litigation was ongoing would **not** have served their legal interests, and that those documents would have irreparably damaged the Government's theory of the case: that the plaintiff had engaged in an improper *ex parte* conversation by asking Moreno's clerk for a certified copy of the record, and that Moreno was simply performing his job in "good faith" and did not have any corrupt, ulterior motive or ill-will toward the undersigned. But see ABA Code of Judicial Conduct, Rule 2.9(A)(1) ("When circumstances require it, ***ex parte* communication for scheduling, *administrative*, or emergency purposes, which does not address substantive matters, is permitted**, provided: (a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication; and (b) the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication, and gives the parties an opportunity to respond.").[4]

16. Unfortunately, because the FOIA/PA records were not produced by the Government until *after* the Moreno litigation had already ended, I was unlawfully and unjustly deprived of my right to proffer the voluminous FOIA/PA records which directly called into question the Government's theory of the case and arguments made to Judge Saris. Such FOIA/PA records include, without limitation:

---

[4] Furthermore, it was not a "coincidence" that this fabricated allegation was the exact same allegation that my father, E. Peter Mullane, Esq., had originally made against a state-court judge in Massachusetts in a separate case. Indeed, Moreno himself even states in the April 10, 2018 hearing transcript that he was fully aware of the foregoing.

(1)     AUSAs expressing their desire to "spit" on Plaintiff, as well as their disgust for
        Plaintiff's father;

(2)     defamatory remarks, including one extraordinary accusation by a Miami AUSA
        that Plaintiff was not even capable of using Westlaw;

(3)     malicious and derogatory remarks including, *inter alia*, the acting United States
        Attorney himself, Benjamin G. Greenberg, joking about "send[ing] the SWAT
        team" to Plaintiff's house; and

(4)     emails describing how, immediately after Plaintiff's April 10, 2018 hearing before
        Judge Moreno, Greenberg himself and several AUSAs treated Judge Moreno to
        dinner at a local Thai restaurant to thank and reward Moreno for assisting them in
        corruptly pressuring Plaintiff to resign (Moreno even brought with him video
        surveillance footage that he had procured from the USMS without a warrant, which
        they laughed about over dinner).

17.   Further, if these delays were not the result of deliberate dilatory tactics by the agency, and
      were instead caused by a purported "lack of agency resources," **it is difficult to imagine
      *why* the United States Attorney herself, Ariana Fajardo Orshan, decided to personally
      participate and inject herself into this allegedly "ordinary," run-of-the-mill FOIA/PA
      request.**

18.   Even assuming *arguendo* that no improper delays occurred with respect to the processing
      of my FOIA/PA requests (and there absolutely were), at a minimum, one cannot truthfully
      state that there was no incentive for Defendant DOJ to delay production of the above-
      referenced FOIA/PA documents due to the pendency of the Moreno litigation against its
      own employees—nor can it be truthfully stated that the legal interests of Defendant DOJ

6

were not greatly benefitted and served by waiting until January 8, 2020 to *begin* processing my FOIA/PA requests (and they were indeed).

19. Without any limited discovery and/or evidentiary hearing, any judgment of this Court conclusively determining that the timing of Defendant DOJ's processing of the FOIA/PA is merely a "temporal coincidence" is unfortunately speculative and premature.

20. *Thirdly*, in the March 19, 2021 Memorandum and Order [D.E. 66, p. 10, ¶ 2], the Court appears to suggest that the Moreno litigation was dismissed solely on personal jurisdiction grounds. This is unfortunately incorrect, and overlooks the fact that Judge Saris *also* made specific findings vis-à-vis the "plausibility" of my allegations therein. See, e.g., Moreno, D.E. 164, p. 24 ¶ 2 ("**The complaint also *fails to allege any tortious act*. Mullane's argument that Judge Moreno violated his privacy by sending Defendants the hearing transcript is *implausible*, as explained above**."). Of course, those "plausibility" findings were made by Judge Saris *before* the Government produced the FOIA/PA records, and before the Government even began processing my FOIA/PA request on January 8, 2020.

21. Notwithstanding the Moreno court's factually-unsupported conclusion to the contrary, my allegations in Moreno are sadly no more "implausible" than:

    (i) a federal prosecutor and AUSA, to-wit, former AUSA Alison W. Lehr (who has since been terminated from her USAO employment) criminally assaulting my process server;

    (ii) my inability to become a member of a state bar for the past two-and-a-half years, notwithstanding my lack of a criminal record (and the fact that I have successfully passed federal background checks for FINRA, the USAO, and the SEC);

7

(iii) defamatory letters from the Miami USAO to the University of Miami, falsely asserting that my writing abilities are "subpar" for a student of my age;

(iv) emails from the U.S. Attorney himself, Benjamin G. Greenberg, maliciously joking about sending the SWAT team to my home in Miami;

(v) emails from AUSAs discussing their desire to "spit" on me;

(vi) USAO emails defaming my father for statements he had made during the Lustgarten case, wherein he correctly and properly accused the Miami USAO of unlawful conduct (the Government withdrew and voluntarily dismissed the entire case shortly thereafter);

(vii) USAO emails defaming my father for statements made in the *Vice.com* article publicly disclosing the incompetence and lack of professionalism in the Miami USAO; and

(vii) the countless other unusual facts of the Moreno litigation—**none** of which were ever disclosed to Judge Saris or to the undersigned prior to January 6, 2020.

22. By way of further example, the impromptu April 10, 2018 "miscellaneous hearing"— which Moreno himself arranged by personally calling the undersigned on his cell phone— related to a *personal* credit score dispute, and obviously was not something that should have been common knowledge in the Miami USAO (where I was an intern, and did not have regular contact with many USAO employees).

23. **Notwithstanding the foregoing, less than one (1) hour after the Moreno hearing had terminated, AUSA Evelyn B. Sheehan wrote at precisely 12:55pm: "About to meet with Michelle to find out what happened *in court*." See Ex. 1 pp. 1-2.**

8

24.     Yet, as unequivocally demonstrated by the email chain, there is no mention whatsoever of any "court" or "court hearing[,]" and the fact that Sheehan's "unpaid student intern" was in court on April 10, 2018 in a personal matter was certainly not common knowledge in the USAO—nor was that information that Sheehan should have had as of 12:55pm unless she knew of the Moreno hearing in advance.

25.     AUSA Sheehan was fully aware of the fact that the Moreno hearing had been corruptly staged and planned in advance. As she confirmed in her email dated February 6, 2019 [Ex. 1, p. 3]:

**No *good deed* goes unpunished. We should have fired for cause.**

Ibid. Of course, this "good deed" meant enlisting Moreno to intimidate Plaintiff into resigning, as opposed to the USAO simply firing him "for cause[.]"

## Defendant DOJ's inability to locate the "bounced" email allegedly sent to an incorrect email address speaks for itself, and precludes summary judgment in its favor.

26.     As this Court's March 19, 2021 Memorandum and Order [D.E. 66, p. 66 n.2] correctly states, "EOUSA claims it incorrectly entered Mullane's email address such that the first two productions were never received." Ibid.

27.     Based upon the March 19, 2021 Memorandum and Order [D.E. 66, p. 66 n.2], it would appear that the Court may have inadvertently overlooked the argument which was made by my attorney, and the important issue that that fact presents.

28.     The problem here is *not* that an anonymous, unnamed DOJ employee (whom Defendant tellingly fails to identify) may have "incorrectly entered" my email address. Of course,

agency employees are human beings, and incorrectly typing someone's email address is a common mistake that any person could easily make—including myself.

29.   Instead, the relevant issue here is that Defendant DOJ has represented to this Court (in a sworn statement, no less) that its emails to the undersigned were sent to the wrong email address, yet is **unable to produce a copy of the "bounced" email.**

30.   If indeed Defendant DOJ had truly processed my FOIA/PA requests in "good faith," as this Court's March 19, 2021 Memorandum and Order appears to conclude, then Defendant should not have any problem producing a copy of the "bounced" email.

31.   However, in light of Defendant DOJ's apparent inability to comply with that basic request, this Court's determination that the agency acted in "good faith" at all times relevant hereto unfortunately appears to be premature.

### **"Bad faith" vis-à-vis Defendant DOJ's Processing of the Subject FOIA/PA Requests.**

32.   While the March 19, 2021 Memorandum and Order [D.E. 66] appears to conclude that there was no "bad faith" whatsoever in how Defendant DOJ has conducted itself in this matter, I believe that the procedural history of the instant case suggests otherwise (*i.e.*, in addition to the procedural history of the separate Moreno action in the District of Massachusetts).

33.   *Firstly*, under the so-called "sunset clause" of the FOIA Improvement Act of 2016, *even if* an agency properly exempts FOIA records pursuant to the "deliberative process" privilege, the agency is *still* required to release all of those records regardless in full and in unredacted form after twenty-five (25) years

10

34. The DOJ's <u>Vaughn</u> indexes baldly claim that releasing the FOIA/PA records to me now (*i.e.*, in 2021) would somehow "confuse the public" and "chill" the agency's deliberative discussions on "agency policy[.]" Assuming *arguendo* that those assertions are all true, the notion that the public would somehow be less "confuse[d]" when the agency releases these documents in full 25 years from now is both illogical and implausible.

35. Of course, providing me the requested records 25 years from now certainly would not lessen the alleged "chill[ing]" effect, nor would it help avoid the "parade of horribles" alleged by Defendant DOJ.

36. Providing me the requested FOIA/PA records twenty-five (25) years from now *would*, however, ensure that these records never see the light of day in the currently-pending <u>Moreno</u> litigation, and that they will never be judicially noticed and/or filed as exhibits in that action.

37. Other than the fact that there is currently an ongoing lawsuit against DOJ employees (*i.e.*, the contemporaneous <u>Moreno</u> litigation in the Southern District of Florida), the agency's own affidavits tellingly **fail to identify any reason and/or legitimate agency interest for why the agency is currently withholding the requested FOIA/PA records from the undersigned now in 2021, but will then be able to release those exact same FOIA/PA records to him in 25 years (as required under the "sunset clause" of the FOIA Improvement Act of 2016)**.

38. Of course, as the agency is well aware, the <u>Moreno</u> litigation will have terminated long before the year **2046**—in which case I will never be able to use those FOIA/PA records in that proceeding.

39.     *Secondly*, it was not until I filed a federal lawsuit in this Court that the DOJ finally *began* processing my FOIA/PA requests. In other words, had I not filed a lawsuit, my FOIA/PA requests never would have been acted upon.

40.     As this Court is aware, private citizens generally do not need to file a federal lawsuit to motivate federal agencies to begin processing FOIA/PA requests—something which the statute requires that the agency do within **twenty (20) days**. 5 U.S.C. § 552(a)(6)(A)(i). Here, the agency tellingly began processing my FOIA/PA requests fifteen (15) *months* later (not days), and not until I was forced to file a federal lawsuit to get them to begin processing the October 2018 FOIA/PA requests.

41.     *Thirdly*, courts have held that even a **six (6) month** delay in processing a PA request "is not a 'prompt' response[.]" Schaeuble v. Reno, 87 F. Supp. 2d 383, 389-90 (D.N.J. 2000). Yet here, the agency's delay was **fifteen (15) months**—something which Defendant DOJ curiously claims has absolutely nothing to do with the pendency of ongoing litigation against its employees in the Southern District of Florida.

42.     Of course, the foregoing assertion is directly contradicted by the agency's own affidavits wherein Miami-based DOJ paralegal Francys Marcenaros (*i.e.*, the DOJ employee tasked with processing my FOIA/PA requests) openly admits to:

        (i)     personally following my lawsuit in the District of Massachusetts, even though she was not tasked with that responsibility in her capacity as a paralegal in Miami; and

        (ii)    personally reviewing the allegations of my Verified Complaint in the Moreno litigation in Boston in connection with my FOIA/PA requests, in violation of federal law specifically prohibiting agency employees from doing so.[5]

---

[5] As the Supreme Court of the United States has consistently held, a requester's rights under FOIA are neither diminished nor enhanced by the fact that the requester is *also* a litigant in a separate, concurrent lawsuit. NLRB v.

12

43.     While this Court's March 19, 2021 Memorandum and Order [D.E. 66] determined that

        Defendant DOJ did not act in "bad faith" vis-à-vis the FOIA/PA searches, that

        determination unfortunately does not square with the facts which are presently of record—

        namely the fact that Marcenaros, a paralegal, had no legitimate reason to be reading any of

        my court filings in the first place.

44.     In fact, Defendants' own affidavits conspicuously fail to explain to this Court:

        (i)      *why* Marcenaros was reading court filings from the Moreno litigation; and

        (ii)     how reading those court filings from a case in Boston was somehow part of her job

                 description in her capacity as a paralegal and FOIA/PA coordinator.

45.     What is more, while Marcenaros' sworn statement contains the implausible and factually-

        unsupported claim that she was unable to timely process my October 2018 FOIA/PA

        requests due to a purported lack of agency "resources" [D.E. 57-1, p.4 ¶ 11], that

        misrepresentation is contradicted by the fact that Marcenaros (*i.e.*, the Miami office

        FOIA/PA coordinator) apparently had so much free time at work that she began reviewing

        court filings in the unrelated and irrelevant Moreno case in Boston—something which was

        never part of her responsibilities as a FOIA/PA coordinator, and something which she was

        never asked to do.[6]

---

Robbins Tire & Rubber Co., 437 U.S. 214, 242 n.23 (1978); see also United Technologies Corp. v. FAA, 102 F.3d 688, 690 (2d Cir. 1996) ("It is a basic principle under FOIA that the individuating circumstances of a requester are ***not* to be considered** in deciding whether a particular document should be disclosed. All requesters are considered to have equal rights of access."); Smith v. Fed. BATFE, 2014 U.S. Dist. LEXIS 97977, at *26 (E.D. Mich. Jun. 24, 2014) ("Smith's underlying criminal prosecution and conviction has no relevance to his FOIA request.").

[6] Similarly, if the resources of Defendant DOJ are so scarce and limited as claimed, it seems unlikely that the agency would knowingly choose to waste those purportedly scarce resources litigating a lawsuit relating to documents concerning a mere "unpaid student intern[.]" Stated differently, the agency's own conduct directly belies its representations to this Court. Even after this lawsuit was filed on November 19, 2019, instead of simply complying with the October 2018 FOIA/PA requests (*i.e.*, which it had received 11 months earlier, by that point) and resolving this dispute amicably, the agency has tellingly opted to litigate this lawsuit over document production "tooth and nail." Of course, under the "sunset clause" of the FOIA Improvement Act of 2016, the agency will be releasing all of these documents *regardless*. Thus, other than preventing timely disclosure of the documents while the Moreno action is

13

46. In addition, it is unclear whether the Marcenaros affidavits (Marcenaros is not an attorney) were written by Marcenaros herself, or whether she was even afforded an opportunity to review these sworn statements for accuracy and factualness.

47. For instance, in her supplemental affidavit [D.E. 57-1, p. 2 ¶ 6], Marcenaros writes:

> **Judge "Moreno" was the chief judge of our District during the time-period covered by Plaintiff's request**, and maintained an active docket of cases involving the U.S. as a party. Searches for these extremely common terms would have yielded an overwhelming number of hits and required more work to sift through them than what is reasonable or feasible in light of the Plaintiff's targeted request for documents concerning himself.

(Emphasis supplied) id.

48. However, as Marcenaros herself is certainly well aware, that statement is simply not true. In fact, the last time Judge Moreno was the Chief Judge of that district was *years* earlier, in **2014**—something which is obviously common knowledge in the Miami USAO. See, e.g., https://www.fjc.gov/history/judges/moreno-federico

49. The foregoing misstatement is concerning because, as the affidavit correctly notes, the United States does indeed have a significant amount of litigation in that court. Accordingly, it is simply not plausible or cogent that Marcenaros, who works in the Miami USAO, was unaware of the fact that the **Hon. K. Michael Moore** is the Chief Judge of that court (not Moreno), and that Chief Judge Moore has held that position for the past seven (7) years.

50. Under the present circumstances, I believe that no proverbial "reasonable person" or objective onlooker could truthfully conclude that Defendant DOJ and its employees have somehow *not* acted in "bad faith" in this matter.[7]

---

ongoing, wasting "scarce" agency resources litigating this FOIA/PA lawsuit appears to serve no legitimate, identifiable agency interest.

[7] In determining whether the agency acted in "bad faith," the March 19, 2021 Memorandum and Order [D.E. 66] limited its inquiry to the FOIA/PA *searches* themselves. Stated differently, the Court did not take into account: (1)

51. Marcenaros directly communicated with Alison W. Lehr on numerous occasions about my FOIA/PA requests, discussing with Lehr the potential implications.

52. Further, in one email, Lehr was questioned by her USAO coworkers about what had happened to my October 2018 FOIA/PA requests.

53. This Court's assumption that Defendant DOJ has proceeded in "good faith" vis-à-vis my October 2018 FOIA/PA requests is difficult to understand in light of the disturbing content of the hitherto-released records from that agency—in addition to the fact that Alison W. Lehr, a former employee of Defendant DOJ (she was later terminated), criminally assaulted my process server and unlawfully detained her upon being served in the Moreno action (which directly relates to the content of the same FOIA/PA records requested in the case at bar).

54. As this Court is aware, the Moreno litigation pertains to the exact same subject matter of the requested FOIA/PA records in the instant action.

55. The foregoing is simply part and parcel to the DOJ's continued and successful efforts to prevent the timely production of these FOIA/PA records while the Moreno litigation remains ongoing in the Southern District of Florida.

56. *Thirdly*, notwithstanding the fact that the subject FOIA/PA requests were submitted in October 2018, the DOJ has yet to provide me the documents I requested—even to-date.

---

"bad faith" in the agency's writing and/or generating the underlying FOIA/PA records themselves; (2) "bad faith" vis-à-vis Defendant DOJ's concerning inability to produce a "bounced" email, or any other documentation supporting its alleged inability to timely email me the requested FOIA/PA records; (3) whether the agency acted in "bad faith" by assaulting Plaintiff's process server in the contemporaneously-filed civil action; (4) whether Defendant DOJ acted in "bad faith" by engaging in a so-called "document dump" of approximately 4,000 pages of records, over 85% of which were either non-responsive or duplicative; or (5) all other indicia of "bad faith" in this matter. By failing to take into account any of the foregoing, the March 19, 2021 Memorandum and Order is unfortunately violative of the holding of Jones v. FBI, 41 F.3d 238 (6th Cir. 1994) (to determine whether agency "bad faith" exists in a FOIA/PA case, the district court is *de jure* required to consider whether the underlying FOIA/PA records were written and/or generated by the agency in "bad faith" (as opposed to "bad faith" in the narrow context of the subsequent *search* for those particular records)).

The fact that the DOJ continues to expend its scarce agency resources and taxpayer funds litigating a dispute over documents relating to a mere "unpaid student internship" instead of simply turning over the requested FOIA/PA records speaks for itself.

57. In fact, when this Court provided Defendant DOJ yet *another* opportunity to transmit the requested documents through its order dated March 19, 2021 (*i.e.*, a year and a half after this lawsuit was filed), the DOJ refused to comply yet again. As a result, the parties are presently required to go through yet another round of summary judgment motion practice, and the DOJ now continues to successfully to prevent the timely production of the requested FOIA/PA records for the foreseeable future.

### Defendant DOJ's "document dump" of non-responsive FOIA/PA records.

58. The March 19, 2021 Memorandum and Order stated, in pertinent part: "In total, EOUSA transmitted **3,897** pages unredacted, 377 pages redacted and withheld 88 pages." D.E. 66, p. 4 ¶ 2.

59. However, the foregoing does not accurately state the number of *responsive*, non-duplicative pages of FOIA/PA records produced.

60. In reality, approximately 85% of the 3,897 pages produced were either: (1) *not* responsive to my FOIA/PA requests; or (2) duplicative.

61. The agency's "3,897 pages" of unreacted pages consisted of, *inter alia*:

    (1) court filings from the Moreno litigation, all of which are already publicly available on PACER;

    (2) rulings on motions from Judge Dein;

(3) **an entire academic textbook on asset forfeiture law** (something which was obviously not requested or desired); and

(4) numerous other unwanted documents.

62. On June 2, 2020, I directly contacted Mr. Wilkinson, an employee of Defendant DOJ, to inform him that the agency's production of FOIA/PA records may omit all such publicly-available court filings—none of which I needed or wanted.

63. Instead of simply omitting such non-responsive and duplicative FOIA/PA records, Mr. Wilkinson informed me via email correspondence dated June 2, 2020 that, if the agency "were to remove those portions, it would further delay [their] response."

64. Mr. Wilkinson further informed me that, "[i]n an effort to prioritize timeliness, we have left them in."

65. As a foreseeable result of the foregoing, Defendant DOJ unnecessarily caused my attorney and me to spend approximately five (5) entire days sifting through thousands of pages of non-responsive and unwanted material.

66. Such discovery practices are commonly referred to as a "document dump."

67. In addition, many of the FOIA/PA records produced by Defendant DOJ were not even Bates-stamped or otherwise marked. As such, I continue to be unduly prejudiced by being unable to even reference such documents in this FOIA/PA action.

68. Under such circumstances, courts have routinely imposed the remedy of an entry of default. See, e.g., Stooksbury v. Ross, 528 Fed. Appx. 547 (6th Cir. 2013) (affirming entry of default judgment as sanction for party's discovery submission which "was merely a document dump of mostly unresponsive information"); Atlas Resources, Inc. v. Liberty Mutual Ins. Co., 291 F.R.D. 638, 642 (D. N. Mex. 2013) (describing "'document-dumping'

17

where the defendant's disclosure of material was presented in such a disorganized fashion
as to violate the Rules of Professional Conduct and cause undue delay in the litigation of
this case").

### Facts specific to the FOIA Improvement Act of 2016.

69. *Firstly*, as Defendants are well aware, the FOIA Improvement Act of 2016 requires the
agency to demonstrate that it will incur "foreseeable harm" by simply giving me documents
about myself and my "unpaid student internship[.]"

70. Indeed, "**an agency must release a record—***even if* **it falls within a FOIA exemption—
if releasing the record would not reasonably harm an exemption-protected
interest[.]**" Rosenberg v. U.S. Dep't of Def., 342 F. Supp. 3d 62, 73 (D.D.C. 2018).

71. At no point was I ever informed that the agency would incur "foreseeable harm" by giving
me the documents which purportedly "[fell] within a FOIA exemption[.]"

72. In fact, after reviewing Defendants' various affidavits in this lawsuit, I have not been able
to identify any part of the record articulating precisely how the agencies interests would be
"foreseeably harm[ed]" by simply giving me the documents that I have been asking for
since October 2018.

73. *Secondly*, under the FOIA Improvement Act of 2016, demonstrating "foreseeable harm" is
still not enough. The agency is legally required to *also* prove that that "foreseeable harm"
is specifically "**identifiable[,]**" and must also "**articulate [to the court] both the nature
of the harm and the link between the specified harm and specific information
contained in the material withheld**." Judicial Watch, Inc. v. United States DOJ, 487 F.
Supp. 3d 38, at \*44 (D.D.C. 2020).

18

74. After reviewing Defendants' various affidavits in this matter, my communications with DOJ employees such as Wilkinson, and the agency correspondence that I have received in connection with my outstanding October 2018 FOIA/PA requests, I have not been able to locate anything which would potentially satisfy any of the above-mentioned requirements of the FOIA Improvement Act of 2016.

## Facts specific to Defendant SEC.

75. According to both of the affidavits of SEC employee Ray McInerney [D.E. 28-3; 57-3], the SEC's search for records in Washington, DC, was specifically limited to the SEC's Office of Human Resources ("OHR").

76. According to these affidavits, at no point was any search performed in any other location, such as the SEC's Office of the General Counsel or the office which initiated the background check on the undersigned (*i.e.*, offices where responsive records are known to exist).

77. Furthermore, according to these agency affidavits, at no point was *any* search made for non-email records. These would include, without limitation: mobile device ESI; text messages; letters; handwritten notes; telephone records; and all other forms of responsive FOIA/PA records. See, e.g., Crt. for Biological Diversity v. EPA, 279 F. Supp. 3d 121, 140-44 (D.D.C. 2017) (*finding declaration insufficient because agency failed to search "instant messages, text messages, or other electronic communications."*).

78. Similarly, the McInerney affidavit is *de jure* deficient because it fails to provide the names of any of the anonymous, unnamed SEC employees who "informed" and "advised" him where to search, and where the responsive FOIA/PA records were supposedly located.

19

Further Affiant sayeth naught.

SUBSCRIBED AND SWORN TO under the pains and penalties of perjury under the laws

of the United States of America this 3rd Day of June, 2021.

/s/ Jonathan Mullane
JONATHAN MULLANE

# EXHIBIT 1

| From: | Sheehan, Evelyn B. (USAFLS) |
|-------|------------------------------|
| To: | Medetis, Maria (USAFLS) |
| Subject: | Fwd: Meeting |
| Date: | Tuesday, April 10, 2018 12:55:25 PM |

About to meet with Michelle to find out what happened in court

Begin forwarded message:

**From:** "Lehr, Alison (USAFLS)" <ALehr@usa.doj.gov>
**Date:** April 10, 2018 at 12:53:06 PM EDT
**To:** "Sheehan, Evelyn B. (USAFLS)" <esheehan@usa.doj.gov>
**Subject: RE: Meeting**

Nope. I spoke with her before I spoke with Jonathan.

**From:** Sheehan, Evelyn B. (USAFLS)
**Sent:** Tuesday, April 10, 2018 12:42 PM
**To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
**Subject:** Re: Meeting

Is Maria aware of all this

On Apr 10, 2018, at 12:32 PM, Lehr, Alison (USAFLS) <ALehr@usa.doj.gov> wrote:

Where are you?

**From:** Sheehan, Evelyn B. (USAFLS)
**Sent:** Tuesday, April 10, 2018 12:32 PM
**To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
**Cc:** Alvarez, Michelle (USAFLS) <MAlvarez@usa.doj.gov>
**Subject:** Re: Meeting

Wait what? Why?

On Apr 10, 2018, at 12:28 PM, Lehr, Alison (USAFLS) <ALehr@usa.doj.gov> wrote:

fyi

**From:** Mullane, Jonathan (USAFLS)
**Sent:** Tuesday, April 10, 2018 12:24 PM
**To:** Greenberg, Benjamin (USAFLS)
<BGreenberg@usa.doj.gov>

**Cc:** Lima, Annette (USAFLS) <alima@usa.doj.gov>; Lehr,
Alison (USAFLS) <ALehr@usa.doj.gov>
**Subject:** Meeting

Dear Attorney Greenberg:

My name is Jonathan Mullane, I am a student intern working
in the asset forfeiture division under Alison Lehr. This the
final week of my internship here at the office.

At Judge Moreno's request I would like to schedule a brief
meeting with you today or tomorrow. Please let me know if
and when this would be possible. With your consent, I would
also ask that Attorney Lehr be permitted to join this
meeting.

Thank you, and I look forward to hearing from you.

Kind regards,

Jonathan

| From: | Sheehan, Evelyn B. (USAFLS) |
|---|---|
| To: | Lehr, Alison (USAFLS) |
| Cc: | Alvarez, Michelle (USAFLS) |
| Subject: | Re: Mullane v. United States et al., Docket No. 1:18-CV-12618-PBS (D. Mass. Dec. 20, 2018) |
| Date: | Wednesday, February 6, 2019 9:58:17 AM |

What the what?!

No good deed goes unpunished. We should have fired for cause. I'll defer to michelle but we need to make HR and Executive Division aware.

On Feb 6, 2019, at 8:24 AM, Lehr, Alison (USAFLS) <ALehr@usa.doj.gov> wrote:

> Good morning-
> I'm not certain what next steps are, but I wanted to let you know that former intern,
> Jonathan Mullane, is seeking to add me as a Defendant in a civil case. I allegedly
> transmitted his time sheet information to Judge Moreno, who is also named as a
> defendant.
> I look forward to hearing from you.
> Alison
>
> **From:** Jonathan Mullane <j.mullane@icloud.com>
> **Sent:** Tuesday, February 5, 2019 10:42 PM
> **To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
> **Subject:** Mullane v. United States et al., Docket No. 1:18-CV-12618-PBS (D. Mass.
> Dec. 20, 2018)
> Dear Alison:
> I hope all is well.
> Pursuant to L.R. 15.1(b), please take notice of the attached motion draft and
> proposed complaint seeking to add you as a Defendant, to be filed in the District
> of Massachusetts on or after **February 20, 2019**.
>
> ---
>
> **Jonathan Mullane**
>
> Tel.: +1 (617) 800-6925 | j.mullane@icloud.com
>
> *This e-mail message and any attachments are confidential and may be privileged. Emails transmitted or
> received shall neither constitute acceptance of conducting transactions via electronic means nor shall create
> a binding contract in the absence of a fully signed written agreement.*

| From: | Raurell, Carlos (USAFLS) |
|---|---|
| To: | Francis, Tricia (USAEO) |
| Cc: | Marcenaros, Francys (USAFLS) |
| Subject: | Re: FOIA Litigation with Jonathan Mullane |
| Date: | Wednesday, January 8, 2020 12:21:41 PM |

Tricia,

Carlos

On Jan 8, 2020, at 12:03 PM, Francis, Tricia (USAEO) <                    > wrote:

Carlos,

**(USAEO)**

| | |
|---|---|
| **From:** | MRUFOIA Requests <MRUFOIA.Requests@usdoj.gov> |
| **Sent:** | Tuesday, October 23, 2018 1:43 PM |
| **To:** | USAEO-FOIA Requests |
| **Subject:** | Mullane, Jonathan (MRU-FOIA-67-322) |
| **Attachments:** | Mullane, Jonathan (MRU-FOIA-67-322).pdf; Mullane, Jonathan (MRU-FOIA-67-322).pdf; |
| | Mullane, Jonathan (MRU-FOIA-67-322).pdf |

The Mail Referral Unit has reviewed the FOIA request below and is sending it to your office for processing. The request contains information that is specific to your organization. If you have any questions, then please contact Joe Gerstell at

1

| From: | Lehr, Alison (USAFLS) |
|---|---|
| To: | Feliciano, Lazaro (USAFLS); Hummel, Randy (USAFLS) |
| Cc: | Hampton, Cynthia (USAFLS); Carvajal, Odisa (USAFLS); Alvarez, Michelle (USAFLS); Weinkle, James (USAFLS) |
| Subject: | RE: FOIA Litigation with Jonathan Mullane |
| Date: | Friday, December 20, 2019 11:16:41 AM |

Hi, Laz.

I do not recall receiving or answering a FOIA from Mullane. I will send you a correspondence that involved Connor Hackert (CIV) and Wendy Jacobus at the time I was in the process of requesting representation. Perhaps Connor might have knowledge of it?

Also, I am cc:ing James Weinkle on this email as he was the one who communicated the Litigation Hold to me.

Thanks.

Alison

Alison W. Lehr | Assistant United States Attorney | Southern District of Florida
99 N.E 4th Street| Suite 700 | Miami, FL 33132

**From:** Feliciano, Lazaro (USAFLS)
**Sent:** Friday, December 20, 2019 10:56 AM
**To:** Hummel, Randy (USAFLS) ; Lehr, Alison (USAFLS)
**Cc:** Hampton, Cynthia (USAFLS) ; Carvajal, Odisa (USAFLS) ; Alvarez, Michelle (USAFLS)
**Subject:** FW: FOIA Litigation with Jonathan Mullane
**Importance:** High

Hello, do you call answering to a FOIA from Mullane back in 2018? If so, EOUSA needs the FOIA and also the records we might have provided at the time. Apparently he has filed another FOIA asking for his records of employment at the USAO-SDFL. As I recall he technically was not an employee, but rather a volunteer law clerk. There is a short deadline that EOUSA has to respond by, your attention to this is much appreciated. Thank you. Laz

Laz Feliciano
Administrative Officer
U.S Attorney's Office
Southern District of Florida

**From:** Francis, Tricia (USAEO) <
**Sent:** Thursday, December 19, 2019 4:20 PM
**To:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Carvajal, Odisa (USAFLS)
<OCarvajal@usa.doj.gov>
**Cc:** Weida, Jason (USAMA) <JWeida@usa.doj.gov>
**Subject:** RE: FOIA Litigation with Jonathan Mullane

Laz and Odisa,

Good afternoon again. Laz, we spoke moments ago, but our call was interrupted. I understand from

| **From:** | Weinkle, James (USAFLS) |
| **To:** | Feliciano, Lazaro (USAFLS); Lehr, Alison (USAFLS) |
| **Cc:** | Hampton, Cynthia (USAFLS); Carvajal, Odisa (USAFLS); Alvarez, Michelle (USAFLS); Varela, Jacquie (USAFLS); Hummel, Randy (USAFLS) |
| **Subject:** | Lit Hold - USAFLS-2019-001 - Mullane |
| **Attachments:** | Mullane v. US.Docket Sheet as of 12.20.2019.pdf |

As an FYI (and this is NOT directly related to Mullane's FOIA request), the above-referenced Lit Hold I instituted remains in effect. I just checked the D. Mass docket and the case is still active...A copy of the Docket Sheet is attached.

James

**James A. Weinkle**

Assistant United States Attorney

Office of the United States Attorney

Southern District of Florida

99 N.E. 4th Street, Suite 300

Miami, Florida 33132

305.961.9290 (o)

James.Weinkle@usdoj.gov

The information transmitted is intended only for the person or entity to which it is addressed and may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message you are hereby notified that any use, review, retransmission, dissemination, distribution, reproduction or any action taken in reliance upon this message is prohibited. If you received this in error, please immediately notify us by calling the sender at 305.961-9290 and delete the material from any computer. Any views expressed in this message are those of the individual sender and may not necessarily reflect the views of the Department of Justice.

**From:** Feliciano, Lazaro (USAFLS)
**Sent:** Friday, December 20, 2019 11:30 AM
**To:** Lehr, Alison (USAFLS)
**Cc:** Hampton, Cynthia (USAFLS) ; Carvajal, Odisa (USAFLS) ; Alvarez, Michelle (USAFLS) ; Weinkle, James (USAFLS) ; Varela, Jacquie (USAFLS) ; Hummel, Randy (USAFLS)
**Subject:** RE: FOIA Litigation with Jonathan Mullane

Thank you Alison.

Laz Feliciano

Administrative Officer

U.S Attorney's Office

Southern District of Florida

**From:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
**Sent:** Friday, December 20, 2019 11:17 AM
**To:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Hummel, Randy (USAFLS) <RHummel@usa.doj.gov>
**Cc:** Hampton, Cynthia (USAFLS) <CHampton@usa.doj.gov>; Carvajal, Odisa (USAFLS)



MIAMILAW | CDO Career Development Office
UNIVERSITY OF MIAMI SCHOOL OF LAW

**For Judge/Supervising Attorney:**
**Spring 2018 Externship Program – Extern's Final Evaluation Form**

Student Name: Jonathan Mullane

Court/Organization: Office of the United States Attorney, Southern District of Florida

Judge/Supervising Attorney: Alison W. Lehr, Assistant United States Attorney

Date: 4/26/2018

1. Please summarize the work the student performed. Jonathan observed a variety of court proceedings and attended Eleventh Circuit appellate arguments. Jonathan researched different forfeiture-related topics including whether an unsecured bond

2. How would you evaluate the student's research, writing, and analytical skills?

   Skills need to be honed.

3. Please evaluate the student's oral communication skills and ability to present legal ideas and concepts, either in meetings with you or in other settings.

   Skills need to be honed.

4. Please evaluate the student's understanding of professional responsibility and confidentiality issues.

5. Please evaluate the student's time management skills and ability to meet deadlines.

   Student was generally careful to advise of

possible. Thanks.

Sent from my iPhone

On Jan 6, 2020, at 6:12 PM, Lehr, Alison (USAFLS) <ALehr@usa.doj.gov> wrote:

> Jason-
> Thank you for the information. I feel as if I can/should dance
> a jig! Many thanks for your continued efforts.
> Happy new year, indeed!
> Alison
> Alison W. Lehr | Assistant United States Attorney | Southern
> District of Florida
> 99 N.E 4th Street| Suite 700 | Miami, FL 33132
>
> ▉▉▉▉▉▉▉▉▉▉▉▉
> **From:** Weida, Jason (USAMA) <JWeida@usa.doj.gov>
> **Sent:** Monday, January 6, 2020 5:05 PM
> **To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
> **Subject:** Privileged & Confidential
> Alison,
>
>
>
> I hope you enjoyed the holidays. By way of update in the
> *Mullane* matter, today Judge Saris dismissed the
> remaining claims against the media defendants. Now the
> entire case has been dismissed.
>
>
>
> ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
> ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
>
>
>
> I will let you know when I have more information.
>
>
>
> Happy New Year!

| | |
|---|---|
| **From:** | Raurell, Carlos (USAFLS) |
| **To:** | Feliciano, Lazaro (USAFLS) |
| **Cc:** | Francis, Tricia (USAEO); Weida, Jason (USAMA); Carvajal, Odisa (USAFLS); Marcenaros, Francys (USAFLS); Hampton, Cynthia (USAFLS); Varela, Jacquie (USAFLS); Jacobus, Wendy (USAFLS) |
| **Subject:** | Re: FOIA Litigation with Jonathan Mullane |
| **Date:** | Friday, December 20, 2019 7:55:26 PM |

Good evening, all. It's extremely unlikely that we would have directly sent Mr. Mullane records responsive to a FOIA request, and even more unlikely that we would have made our own redactions thereto. We are aware of one FOIA request and our office has not processed it (that is, searched for and gathered records for EOUSA).

[redacted]

Carlos Raurell
AUSA
[redacted]

Sent from my iPhone

On Dec 20, 2019, at 6:24 PM, Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov> wrote:

> Jason and Tricia, we do have a FOIA on record for Jonathan Mullane. I have included Francys Marcenaros, FOIA Paralegal Specialist, for her to provide the status of the FOIA we have processed, and any information or materials that were provided. Thank you. Laz
>
> Laz Feliciano
> Administrative Officer
> U.S Attorney's Office
> Southern District of Florida
>
> [redacted]
>
> **From:** Francis, Tricia (USAEO) <[redacted]
> **Sent:** Friday, December 20, 2019 3:10 PM
> **To:** Weida, Jason (USAMA) <JWeida@usa.doj.gov>
> **Cc:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Carvajal, Odisa (USAFLS) <OCarvajal@usa.doj.gov>
> **Subject:** RE: FOIA Litigation with Jonathan Mullane

| **From:** | Weinkle, James (USAFLS) |
| **To:** | Feliciano, Lazaro (USAFLS); Lehr, Alison (USAFLS) |
| **Cc:** | Hampton, Cynthia (USAFLS); Carvajal, Odisa (USAFLS); Alvarez, Michelle (USAFLS); Varela, Jacquie (USAFLS); Hummel, Randy (USAFLS) |
| **Subject:** | Lit Hold - USAFLS-2019-001 - Mullane |
| **Attachments:** | Mullane v. US.Docket Sheet as of 12.20.2019.pdf |

As an FYI (and this is NOT directly related to Mullane's FOIA request), the above-referenced Lit Hold I instituted remains in effect. I just checked the D. Mass docket and the case is still active...A copy of the Docket Sheet is attached.

James

**James A. Weinkle**
Assistant United States Attorney
Office of the United States Attorney
Southern District of Florida
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
305.961.9290 (o)
James.Weinkle@usdoj.gov

The information transmitted is intended only for the person or entity to which it is addressed and may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message you are hereby notified that any use, review, retransmission, dissemination, distribution, reproduction or any action taken in reliance upon this message is prohibited. If you received this in error, please immediately notify us by calling the sender at 305.961-9290 and delete the material from any computer. Any views expressed in this message are those of the individual sender and may not necessarily reflect the views of the Department of Justice.

**From:** Feliciano, Lazaro (USAFLS)
**Sent:** Friday, December 20, 2019 11:30 AM
**To:** Lehr, Alison (USAFLS)
**Cc:** Hampton, Cynthia (USAFLS) ; Carvajal, Odisa (USAFLS) ; Alvarez, Michelle (USAFLS) ; Weinkle, James (USAFLS) ; Varela, Jacquie (USAFLS) ; Hummel, Randy (USAFLS)
**Subject:** RE: FOIA Litigation with Jonathan Mullane

Thank you Alison.

Laz Feliciano
Administrative Officer
U.S Attorney's Office
Southern District of Florida

███████████████

**From:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
**Sent:** Friday, December 20, 2019 11:17 AM
**To:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Hummel, Randy (USAFLS) <RHummel@usa.doj.gov>
**Cc:** Hampton, Cynthia (USAFLS) <CHampton@usa.doj.gov>; Carvajal, Odisa (USAFLS)

| From: | Lehr, Alison (USAFLS) |
|---|---|
| To: | Feliciano, Lazaro (USAFLS); Hummel, Randy (USAFLS) |
| Cc: | Hampton, Cynthia (USAFLS); Carvajal, Odisa (USAFLS); Alvarez, Michelle (USAFLS); Weinkle, James (USAFLS) |
| Subject: | RE: FOIA Litigation with Jonathan Mullane |
| Date: | Friday, December 20, 2019 11:16:41 AM |

Hi, Laz.

I do not recall receiving or answering a FOIA from Mullane. I will send you a correspondence that involved Connor Hackert (CIV) and Wendy Jacobus at the time I was in the process of requesting representation. Perhaps Connor might have knowledge of it?

Also, I am cc:ing James Weinkle on this email as he was the one who communicated the Litigation Hold to me.

Thanks.

Alison

Alison W. Lehr | Assistant United States Attorney | Southern District of Florida
99 N.E 4th Street| Suite 700 | Miami, FL 33132

**From:** Feliciano, Lazaro (USAFLS)
**Sent:** Friday, December 20, 2019 10:56 AM
**To:** Hummel, Randy (USAFLS) ; Lehr, Alison (USAFLS)
**Cc:** Hampton, Cynthia (USAFLS) ; Carvajal, Odisa (USAFLS) ; Alvarez, Michelle (USAFLS)
**Subject:** FW: FOIA Litigation with Jonathan Mullane
**Importance:** High

Hello, do you call answering to a FOIA from Mullane back in 2018? If so, EOUSA needs the FOIA and also the records we might have provided at the time. Apparently he has filed another FOIA asking for his records of employment at the USAO-SDFL. As I recall he technically was not an employee, but rather a volunteer law clerk. There is a short deadline that EOUSA has to respond by, your attention to this is much appreciated. Thank you. Laz

Laz Feliciano
Administrative Officer
U.S Attorney's Office
Southern District of Florida

**From:** Francis, Tricia (USAEO) <
**Sent:** Thursday, December 19, 2019 4:20 PM
**To:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Carvajal, Odisa (USAFLS) <OCarvajal@usa.doj.gov>
**Cc:** Weida, Jason (USAMA) <JWeida@usa.doj.gov>
**Subject:** RE: FOIA Litigation with Jonathan Mullane

Laz and Odisa,

Good afternoon again. Laz, we spoke moments ago, but our call was interrupted. I understand from

who I'm set to speak with tomorrow.  Can you speak at 11:00 a.m. today with me?

Tricia

**From:** Raurell, Carlos (USAFLS) <CRaurell@usa.doj.gov>
**Sent:** Friday, December 20, 2019 7:55 PM
**To:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>
**Cc:** Francis, Tricia (USAEO) ████████████ >; Weida, Jason (USAMA) <JWeida@usa.doj.gov>; Carvajal, Odisa (USAFLS) <OCarvajal@usa.doj.gov>; Marcenaros, Francys (USAFLS) <FMarcenaros@usa.doj.gov>; Hampton, Cynthia (USAFLS) <CHampton@usa.doj.gov>; Varela, Jacquie (USAFLS) <JVarela@usa.doj.gov>; Jacobus, Wendy (USAFLS) <WJacobus@usa.doj.gov>
**Subject:** Re: FOIA Litigation with Jonathan Mullane

Good evening, all. It's extremely unlikely that we would have directly sent Mr. Mullane records responsive to a FOIA request, and even more unlikely that we would have made our own redactions thereto.  We are aware of one FOIA request and our office has not processed it (that is, searched for and gathered records for EOUSA).

████████████████████████████████
████████████████████████████████
████████████████████████████████

Carlos Raurell
AUSA
████████████

Sent from my iPhone

On Dec 20, 2019, at 6:24 PM, Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov> wrote:

> Jason and Tricia, we do have a FOIA on record for Jonathan Mullane.  I have included Francys Marcenaros, FOIA Paralegal Specialist, for her to provide the status of the FOIA we have processed, and any information or materials that were provided.  Thank you.  Laz
>
> Laz Feliciano
> Administrative Officer
> U.S Attorney's Office

| | |
|---|---|
| **From:** | Sheehan, Evelyn B. (USAFLS) |
| **To:** | Lehr, Alison (USAFLS) |
| **Subject:** | FW: research |
| **Date:** | Friday, March 2, 2018 9:39:24 AM |
| **Attachments:** | US v Pizano.pdf |
| | image001.png |
| | US v Martin.pdf |

He needs to learn how to KeyCite. The blaring YELLOW FLAG with Negative Treatment should have been a pretty good clue.

**From:** Sheehan, Evelyn B. (USAFLS)
**Sent:** Friday, March 02, 2018 9:34 AM
**To:** Moore, Karen (USAFLS) ; Alvarez, Michelle (USAFLS)
**Cc:** Lehr, Alison (USAFLS) ; Mullane, Jonathan (USAFLS)
**Subject:** RE: research

Good morning,

This is going to require further research and analysis because the holding in *Martin* (which applied the 1998 USSC) was superseded by the 2001 USSG.

" KeyCite Yellow Flag - Negative Treatment

> **Superseded by Statute as Stated in** U.S. v. Pizano, 8th Cir.(Iowa), August 31, 2005

Footnote 3 in *Martin*:

> On November 1, 2001, the Sentencing Guidelines for money laundering were amended substantially. The "value of the
> funds" is no longer used as a specific offense characteristic. Instead, the base offense level for money laundering is
> determined by reference to the underlying offense from which the laundered funds were derived or by reference to the
> chart in § 2B1.1 corresponding to the "value of the laundered funds." U.S.S.G. § 2S1.1(a). Additionally, under the 2001
> Guidelines, a defendant's base offense level is increased 2 levels for "sophisticated laundering," such as two or more
> levels (i.e. layering) of transactions. U.S.S.G. § 2S1.1(b)(3) & cmt. n. 5 (2001). The 1998 Guidelines do not contain a
> similar provision regarding sophisticated laundering.
> This case only involves the interpretation of "value of the funds" in § 2S1.1(b)(2) of the 1998 Guidelines. Given the
> substantial changes to the money laundering provisions, our holding today does not apply to the "value of the laundered
> funds" in § 2S1.1(a)(2) of the 2001 Guidelines. In other words, although the district court properly aggregated the funds
> from layered transactions in determining the "value of the funds" **under § 2S1.1(b)(2) of the 1998 Guidelines,** it might
> be improper for a district court to do so when determining the "value of the laundered funds" under § 2S1.1(a)(2) of
> the 2001 Guidelines because § 2S1.1(b)(3) of the 2001 Guidelines provides for a two level increase for "sophisticated
> laundering."

I will need to discuss with Tamen and will also take a look at the PSI to see what the Court did at the sentencing since the new USSG applied in this case.

Pizano (attached) further explains/confirms that the underlying USSG was changed after *Neal*, *Li*, and

**From:** Francis, Tricia (USAEO)
**Sent:** Wednesday, January 8, 2020 11:01 AM
**To:** Raurell, Carlos (USAFLS) <CRaurell@usa.doj.gov>
**Subject:** RE: FOIA Litigation with Jonathan Mullane

Give me five minutes

**From:** Francis, Tricia (USAEO)
**Sent:** Wednesday, January 8, 2020 9:38 AM
**To:** Raurell, Carlos (USAFLS) <CRaurell@usa.doj.gov>
**Subject:** RE: FOIA Litigation with Jonathan Mullane

Yes...I will call you at 11:00 a.m.  Thanks Carlos.

**From:** Raurell, Carlos (USAFLS) <CRaurell@usa.doj.gov>
**Sent:** Wednesday, January 8, 2020 9:37 AM
**To:** Francis, Tricia (USAEO)
**Subject:** RE: FOIA Litigation with Jonathan Mullane

Yes, Tricia,
Would you like to call me at the number below?

Carlos J. Raurell
Assistant United States Attorney
Southern District of Florida
99 NE 4th Street
Miami, FL 33132

**From:** Francis, Tricia (USAEO) <
**Sent:** Wednesday, January 08, 2020 9:36 AM
**To:** Raurell, Carlos (USAFLS) <CRaurell@usa.doj.gov>
**Subject:** RE: FOIA Litigation with Jonathan Mullane
**Importance:** High

Carlos,

Do you have  moment to talk with me about this one?  I'm working from home today
and could use some background to prepare for a conversation with our litigating AUSA,

| From: | Weinkle, James (USAFLS) |
|---|---|
| To: | Feliciano, Lazaro (USAFLS); Lehr, Alison (USAFLS) |
| Cc: | Hampton, Cynthia (USAFLS); Carvajal, Odisa (USAFLS); Alvarez, Michelle (USAFLS); Varela, Jacquie (USAFLS); Hummel, Randy (USAFLS) |
| Subject: | Lit Hold - USAFLS-2019-001 - Mullane |
| Attachments: | Mullane v. US.Docket Sheet as of 12.20.2019.pdf |

As an FYI (and this is NOT directly related to Mullane's FOIA request), the above-referenced Lit Hold I instituted remains in effect. I just checked the D. Mass docket and the case is still active...A copy of the Docket Sheet is attached.

James

**James A. Weinkle**

Assistant United States Attorney

Office of the United States Attorney

Southern District of Florida

99 N.E. 4th Street, Suite 300

Miami, Florida 33132

305.961.9290 (o)

James.Weinkle@usdoj.gov

The information transmitted is intended only for the person or entity to which it is addressed and may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message you are hereby notified that any use, review, retransmission, dissemination, distribution, reproduction or any action taken in reliance upon this message is prohibited. If you received this in error, please immediately notify us by calling the sender at 305.961-9290 and delete the material from any computer. Any views expressed in this message are those of the individual sender and may not necessarily reflect the views of the Department of Justice.

**From:** Feliciano, Lazaro (USAFLS)
**Sent:** Friday, December 20, 2019 11:30 AM
**To:** Lehr, Alison (USAFLS)
**Cc:** Hampton, Cynthia (USAFLS) ; Carvajal, Odisa (USAFLS) ; Alvarez, Michelle (USAFLS) ; Weinkle, James (USAFLS) ; Varela, Jacquie (USAFLS) ; Hummel, Randy (USAFLS)
**Subject:** RE: FOIA Litigation with Jonathan Mullane

Thank you Alison.

Laz Feliciano

Administrative Officer

U.S Attorney's Office

Southern District of Florida

**From:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
**Sent:** Friday, December 20, 2019 11:17 AM
**To:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Hummel, Randy (USAFLS) <RHummel@usa.doj.gov>
**Cc:** Hampton, Cynthia (USAFLS) <CHampton@usa.doj.gov>; Carvajal, Odisa (USAFLS)

possible. Thanks.

Sent from my iPhone

On Jan 6, 2020, at 6:12 PM, Lehr, Alison (USAFLS)
<ALehr@usa.doj.gov> wrote:

> Jason-
> Thank you for the information. I feel as if I can/should dance
> a jig! Many thanks for your continued efforts.
> Happy new year, indeed!
> Alison
> Alison W. Lehr | Assistant United States Attorney | Southern
> District of Florida
> 99 N.E 4th Street| Suite 700 | Miami, FL 33132
> ▮▮▮▮▮▮▮▮▮▮
>
> **From:** Weida, Jason (USAMA) <JWeida@usa.doj.gov>
> **Sent:** Monday, January 6, 2020 5:05 PM
> **To:** Lehr, Alison (USAFLS) <ALehr@usa.doj.gov>
> **Subject:** Privileged & Confidential
> Alison,

> I hope you enjoyed the holidays. By way of update in the
> *Mullane* matter, today Judge Saris dismissed the
> remaining claims against the media defendants. Now the
> entire case has been dismissed.

> I will let you know when I have more information.

> Happy New Year!

| From: | Lehr, Alison (USAFLS) |
|---|---|
| To: | Feliciano, Lazaro (USAFLS); Hummel, Randy (USAFLS) |
| Cc: | Hampton, Cynthia (USAFLS); Carvajal, Odisa (USAFLS); Alvarez, Michelle (USAFLS); Weinkle, James (USAFLS) |
| Subject: | RE: FOIA Litigation with Jonathan Mullane |
| Date: | Friday, December 20, 2019 11:16:41 AM |

Hi, Laz.

I do not recall receiving or answering a FOIA from Mullane. I will send you a correspondence that involved Connor Hackert (CIV) and Wendy Jacobus at the time I was in the process of requesting representation. Perhaps Connor might have knowledge of it?

Also, I am cc:ing James Weinkle on this email as he was the one who communicated the Litigation Hold to me.

Thanks.

Alison

Alison W. Lehr | Assistant United States Attorney | Southern District of Florida

99 N.E 4th Street| Suite 700 | Miami, FL 33132

**From:** Feliciano, Lazaro (USAFLS)
**Sent:** Friday, December 20, 2019 10:56 AM
**To:** Hummel, Randy (USAFLS) ; Lehr, Alison (USAFLS)
**Cc:** Hampton, Cynthia (USAFLS) ; Carvajal, Odisa (USAFLS) ; Alvarez, Michelle (USAFLS)
**Subject:** FW: FOIA Litigation with Jonathan Mullane
**Importance:** High

Hello, do you call answering to a FOIA from Mullane back in 2018? If so, EOUSA needs the FOIA and also the records we might have provided at the time. Apparently he has filed another FOIA asking for his records of employment at the USAO-SDFL. As I recall he technically was not an employee, but rather a volunteer law clerk. There is a short deadline that EOUSA has to respond by, your attention to this is much appreciated. Thank you. Laz

Laz Feliciano
Administrative Officer
U.S Attorney's Office
Southern District of Florida

**From:** Francis, Tricia (USAEO) <
**Sent:** Thursday, December 19, 2019 4:20 PM
**To:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Carvajal, Odisa (USAFLS) <OCarvajal@usa.doj.gov>
**Cc:** Weida, Jason (USAMA) <JWeida@usa.doj.gov>
**Subject:** RE: FOIA Litigation with Jonathan Mullane
Laz and Odisa,
Good afternoon again. Laz, we spoke moments ago, but our call was interrupted. I understand from

| | |
|---|---|
| **From:** | Raurell, Carlos (USAFLS) |
| **To:** | Feliciano, Lazaro (USAFLS) |
| **Cc:** | Francis, Tricia (USAEO); Weida, Jason (USAMA); Carvajal, Odisa (USAFLS); Marcenaros, Francys (USAFLS); Hampton, Cynthia (USAFLS); Varela, Jacquie (USAFLS); Jacobus, Wendy (USAFLS) |
| **Subject:** | Re: FOIA Litigation with Jonathan Mullane |
| **Date:** | Friday, December 20, 2019 7:55:26 PM |

Good evening, all. It's extremely unlikely that we would have directly sent Mr. Mullane records responsive to a FOIA request, and even more unlikely that we would have made our own redactions thereto. We are aware of one FOIA request and our office has not processed it (that is, searched for and gathered records for EOUSA).

Carlos Raurell
AUSA

Sent from my iPhone

On Dec 20, 2019, at 6:24 PM, Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov> wrote:

> Jason and Tricia, we do have a FOIA on record for Jonathan Mullane. I have included Francys Marcenaros, FOIA Paralegal Specialist, for her to provide the status of the FOIA we have processed, and any information or materials that were provided. Thank you. Laz
>
> Laz Feliciano
> Administrative Officer
> U.S Attorney's Office
> Southern District of Florida
>
> **From:** Francis, Tricia (USAEO) <T...
> **Sent:** Friday, December 20, 2019 3:10 PM
> **To:** Weida, Jason (USAMA) <JWeida@usa.doj.gov>
> **Cc:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>; Carvajal, Odisa (USAFLS) <OCarvajal@usa.doj.gov>
> **Subject:** RE: FOIA Litigation with Jonathan Mullane

who I'm set to speak with tomorrow.  Can you speak at 11:00 a.m. today with me?

Tricia

**From:** Raurell, Carlos (USAFLS) <CRaurell@usa.doj.gov>
**Sent:** Friday, December 20, 2019 7:55 PM
**To:** Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>
**Cc:** Francis, Tricia (USAEO) ▓▓▓▓▓▓▓▓▓▓▓>; Weida, Jason (USAMA)
<JWeida@usa.doj.gov>; Carvajal, Odisa (USAFLS) <OCarvajal@usa.doj.gov>;
Marcenaros, Francys (USAFLS) <FMarcenaros@usa.doj.gov>; Hampton, Cynthia
(USAFLS) <CHampton@usa.doj.gov>; Varela, Jacquie (USAFLS) <JVarela@usa.doj.gov>;
Jacobus, Wendy (USAFLS) <WJacobus@usa.doj.gov>
**Subject:** Re: FOIA Litigation with Jonathan Mullane

Good evening, all. It's extremely unlikely that we would have directly sent Mr. Mullane
records responsive to a FOIA request, and even more unlikely that we would have
made our own redactions thereto.  We are aware of one FOIA request and our office
has not processed it (that is, searched for and gathered records for EOUSA).

████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████

Carlos Raurell
AUSA
████████████████

Sent from my iPhone

On Dec 20, 2019, at 6:24 PM, Feliciano, Lazaro (USAFLS) <LFeliciano@usa.doj.gov>
wrote:

> Jason and Tricia, we do have a FOIA on record for
> Jonathan Mullane.  I have included Francys Marcenaros,
> FOIA Paralegal Specialist, for her to provide the status of
> the FOIA we have processed, and any information or
> materials that were provided.   Thank you.  Laz
>
>
> Laz Feliciano
> Administrative Officer
> U.S Attorney's Office

# EXHIBIT 3

(ABA Code of Judicial Conduct, Rule 2.9(A)(1))

February 14, 2020

# Rule 2.9: Ex Parte Communications

Share:



(A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending* or impending matter,* except as follows:

(I) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:

(a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and

(b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

(2) A judge may obtain the written advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives advance notice to the parties of the person to be consulted and the subject matter of the advice to be solicited, and affords the parties a reasonable opportunity to object and respond to the notice and to the advice received.

(3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

(4) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to settle matters pending before the judge.

(5) A judge may initiate, permit, or consider any ex parte communication when expressly authorized by law* to do so.

(B) If a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

(C) A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed.

(D) A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control.

Comment | Back to homepage | Next Rule

**ABA** American Bar Association  |
/content/aba-cms-
dotorg/en/groups/professional_responsibility/publications/model_code_of_judicial_conduct/model_code_of_judicial_conduct_canon_2/rule2_9expartecommunications

TO REUSE: Cover or mark through any previous shipping information.

ORIGIN ID:DUTA   (617) 661-9000
JONATHAN MULLANE
MULLANE MICHEL & MCINNES
30 DONNELL ST

CAMBRIDGE, MA 02138
UNITED STATES US

SHIP DATE: 09JUN21
ACTWGT: 1.00 LB
CAD: 6890622/SSF02202

BILL THIRD PARTY

TO  **CLERK OF COURT**
   **UNITED STATES DISTRICT COURT**
   **400 NORTH MIAMI AVENUE, 8TH FLOOR**

   **MIAMI FL 33128**
   (000) 000-0000          REF:
   INV:
   PO:                     DEPT:



FedEx
Express

**E**

REL#
3765346

TRK#
0201  **2802 0978 2303**

THU – 10 JUN 10:30A
PRIORITY OVERNIGHT

ble

**XH MPBA**

33128
FL-US   MIA

