# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:20-cv-21339-AKK

JONATHAN MULLANE,        )
                             )
      Plaintiff,         )
v.                          )
                             )
FREDERICO A. MORENO, et al.,    )
                             )
      Defendants.       )

## <u>MEMORANDUM OPINION</u>

Jonathan Mullane brings this action again United States District Court Judge Frederico A. Moreno; Alison W. Lehr, an assistant U.S. Attorney at the U.S. Attorney's Office for the Southern District of Florida ("USAO"); Benjamin G. Greenberg, the former U.S. Attorney for the Southern District of Florida; Lisa T. Roberts, an attorney for the Securities and Exchange Commission ("SEC"); and fictitious defendants 1-10. Doc. 45. Mullane alleges among other things that the defendants conspired to deprive Mullane of his anticipated future employment with the SEC and admission to the Massachusetts Bar. *Id.* This action is currently before the court on the defendants' motion to dismiss. Doc. 56. For the reasons explained below, the motion is due to be granted. Consequently, Mullane may only pursue the claims he filed under Florida law and must do so against the United States.

## I.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), the court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff[.]" *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017) (citing *Strickland v. Alexander*, 772 F.3d 876, 882 (11th Cir. 2014)). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). And, to survive a motion to dismiss, a complaint must establish "more than

a sheer possibility that a defendant has acted unlawfully" and must "'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## II.[1]

Mullane's claims arise from his internship with the USAO, a civil case he filed against Barclays Bank pending before Judge Moreno, and purported agreements he had with the SEC for future employment. *See* doc. 45. In particular, Mullane, while in his second year at the University of Miami School of Law, worked as an unpaid intern in the USAO's office from January or February 2018 until the USAO ended his internship several weeks early in mid-April 2018. *Id.* at 3, 56. According to Mullane, Lehr, his supervisor at the USAO, engaged in misconduct by assigning him projects on an asset forfeiture case relating to a money laundering scheme. *Id.* at 5. Mullane contends that Lehr assigned him the projects even though he disclosed to her that his father, a criminal defense attorney, served as lead counsel

---

[1] The facts set out herein are taken from Mullane's Verified Second Amended Complaint, doc. 45, and are assumed to be true for purposes of this memorandum opinion.

to an alleged co-conspirator in the scheme and that Mullane had assisted his father by translating confidential documents relating to the seized assets.  *See id.* at 4-5. Allegedly, Lehr and Greenberg attempted to hide Lehr's alleged misconduct by quietly discharging Mullane, and enlisted Judge Moreno and Roberts to help with their scheme when Mullane refused to leave voluntarily.  *Id.* at 5-10, 20.

      As part of the alleged scheme, Greenberg purportedly asked Judge Moreno to accuse Mullane of misconduct in Mullane's civil case against Barclay's Bank.  *Id.* at 7, 10.  Judge Moreno then set a hearing in the underlying civil case on April 18, 2018, and he called Mullane, who appeared pro se in that case, to "ensure that [Mullane] would be appearing alone and without counsel[.]"  *Id.* at 8.  During the hearing, Judge Moreno inquired about why Mullane told Judge Moreno's career law clerk that he worked at the USAO when he visited Judge Moreno's chambers to ask about filing a writ of mandamus in Mullane's personal lawsuit.  *Id.* at 61-63, 66, 68-73.  Allegedly, Judge Moreno falsely accused Mullane of criminal conduct during the hearing to provide cause for Lehr and Greenberg to discharge Mullane from his student internship.  *Id.* at 8.  Following the hearing, Mullane filed a motion for Judge Moreno to recuse, which Judge Moreno granted.  *Id.* at 90-91.  Thereafter, Judge Moreno sent a malicious and defamatory letter to Mullane's law school expressing concerns about alleged misrepresentations in the motion to recuse.  *Id.* at 11, 88.

To make matters worse for Mullane, allegedly, Lehr transmitted a copy of the transcript of the hearing to the media and submitted a defamatory performance evaluation to Mullane's law school that referred to the transcript. *Id.* at 12. This evaluation and the publication of the hearing transcript allegedly forced Mullane to transfer to another law school and has prevented him from gaining admission to the Massachusetts State Bar Association. *Id.* at 12, 15-16, 18.

Mullane claims also that the defendants informed Roberts of their alleged scheme. *Id.* at 20. And, for her part and in furtherance of the alleged scheme, Roberts interfered with Mullane's internship offer from the SEC and withdrew her promise of future employment with the SEC. *See id.* Allegedly, Roberts persuaded the SEC to withdraw the offer for an internship even though Roberts knew that Mullane had successfully cleared the SEC's background check. *Id.*

### III.

Mullane asserts a variety of state and federal claims against Judge Moreno, Lehr, Greenberg, Roberts, and fictitious defendants. Doc. 45. The defendants raise six primary arguments in their motion: (A) Mullane cannot pursue claims against the fictitious defendants; (B) Judge Moreno is entitled to judicial immunity; (C) Mullane did not plead viable § 1985 claims; (D) the defendants are entitled to qualified immunity on the *Bivens* claims; (E) Mullane did not plead viable RICO claims; and (F) the United States should be substituted for Lehr, Greenberg, and

Roberts as to the state law tort claims.   Doc. 56.   The court addresses these contentions in turn.

## A.

"As a general matter, fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam) (citation omitted).   Nevertheless, the Eleventh Circuit recognizes an exception to that general rule "when the plaintiff's description of the defendant is so specific to be 'at the very worst, surplusage.'" *Id.* (quotation omitted).[2]   And, district courts in this circuit have allowed fictitious party pleading when the identity of the fictitious defendants easily could be discerned in discovery based on the plaintiff's allegations.[3]

---

[2] *See also Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (finding that a pro se plaintiff's description of "Chief Deputy of the Jefferson County Jail John Doe" "was sufficiently clear to allow service of process on the 'Chief'").

[3] *See Taylor v. Brooks*, Case No. 5:20-cv-00467-CLS, 2020 WL 3129862, at *3-4 (N.D. Ala. June 12, 2020) (allowing a plaintiff limited discovery to determine the identities of "Deputy Sheriffs A-C" who handcuffed, questioned, or allegedly assaulted the plaintiff on a specific day); *King v. Ala. Dept. of Corr.*, 2012 WL 2568162, at *3 (M.D. Ala. July 2, 2012) (denying a motion to dismiss when the plaintiff "used specific descriptors which could readily lead to identification of the unknown parties after discovery"); *see also Daleo v. Polk Cnty. Sherriff*, Case No. 8:11-cv-2521-T-30TBM, 2012 WL 1805501, at *1, 4-6 (M.D. Fla. May 17, 2012) (denying motion to dismiss claims against "unnamed Polk County Deputies" who allegedly wrongfully entered and searched the plaintiff's home on a specific day); *McDermott v. Brevard Cnty. Sheriff's Office*, Case No. 6:07-cv-150-Orl-31KRS, 2007 WL 948430, *1, 3 (M.D. Fla. Mar. 27, 2007) (denying a motion to dismiss claims arising "out of four separate incidents" against "Deputies Doe 1-15 of the Brevard County Sheriff's Office" and informing the plaintiff that he must identify and serve those deputies within the time allowed by Rule 4 of the Federal Rules of Civil Procedure).

Here, Mullane pleads that fictitious parties Does 1-10 are "other persons or entities presently unknown to Plaintiff" and "are responsible in part and in some manner for the conduct described in this complaint[.]"   Doc. 45 at 2.   Allegedly, Does 1-10:   "had actual knowledge of the unlawful acts and omission committed by all other Defendants against Plaintiff[;]" "knowingly aided, abetted, and assisted Defendants in pursuance of the scheme, and in furtherance of the unlawful conduct vis-à-vis Plaintiff[;]" and "knew, or had reason to know, that Plaintiff would be significantly and irreparably harmed . . . as a result of their material assistance in the scheme[.]"   Doc. 45 at 40-41.   These allegations fail to show what Does 1-10 allegedly did, when and where their alleged actions occurred, or that Does 1-10 actually exist.[4]   Thus, Mullane has failed to plead that he could easily identify Does 1-10 through discovery, and his claims against them are due to be dismissed.

---

[4] Mullane contends that the defendants have fraudulently suppressed the identities of Does 1-10 by "failing to disclose the existence of responsive ESI in their own internal DOJ Litigation Hold addenda" and "unlawfully conducting official government business through personal email accounts and telephone numbers" in order to "unlawfully evade FOIA/Privacy Act requests, and to successfully prevent the production and disclosure of such responsive ESI."   Doc. 61 at 6-7.   But, the exhibits Mullane attaches to his brief do not support his contentions.   Rather, they show that Lehr and Greenberg signed litigation hold notices, that Lehr "may have communicated with [] Mullane via personal telephone" or by her personal email account, and that Lehr forwarded an email from her USAO email address to her personal email address.   Docs. 61-1 at 1, 8-9, 13, 84-98, 137-43; 67-1 at 2-16.   In addition, the supplemental documents Mullane submitted to the court, which consist of declarations Mullane and his father submitted in a FOIA and Privacy Act case pending in the District of Massachusetts, *see* docs. 75-1; 75-2, do not provide any information suggesting that Does 1-10 may exist or that the defendants suppressed the identities of those fictitious defendants.

## B.

Mullane pleads seventeen claims against Judge Moreno arising from Mullane's underlying civil case before Judge Moreno and based on, among other things, an alleged conspiracy to interfere with Mullane's employment and employment prospects.[5]  Doc. 45.  "A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court."  *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Dykes v. Hosemann*, 776 F.2d 942, 945 (11th Cir. 1985) (en banc)).  "A

---

[5] Mullane takes issue with the following alleged conduct by Judge Moreno:

- calling Mullane personally to ensure Mullane would attend a scheduled miscellaneous hearing without counsel and to lead Mullane to believe that the hearing was a routine matter, doc. 45 at 8, 34;

- threatening, intimidating, and falsely accusing Mullane of criminal conduct at the April 2018 hearing to manufacture good cause for Greenberg and Lehr to terminate Mullane's federal employment, and making defamatory and insulting remarks about Mullane and his father during the hearing, *id.* at 8-10, 28, 34;

- accusing Mullane during the hearing of unlawfully pretending "to have been sent on behalf of the United States government to 'deceptively' obtain certified copies of publicly-available and unsealed records from a clerk in [Mullane's] $1,600 credit card civil case," *id.* at 9, 28;

- issuing an order containing "factually false and defamatory" statements, *id.* at 11, 90-91;

- refusing to retract the "defamatory misrepresentations and allegations" he made in Mullane's civil case, *id.* at 26

- encouraging Lehr to deceptively request Mullane's employment records and timesheet for the U.S. Attorney's Office and to transmit those records to Judge Moreno without Mullane's consent, *id.* at 13-14; and

- sending "a malicious and defamatory letter" to Mullane's law school, *id.* at 11, 42-43, 88.

judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356-57 (quoting *Bradley v. Fisher*, 13 Wall. 335, 351 (1872)).  Still, absolute immunity applies only to a judge's "judicial acts," and not to administrative acts the judge may perform.  *See Forrester v. White*, 484 U.S. 219, 227-28 (1988); *Lowe v. Letsinger*, 772 F.2d 308, 312 (7th Cir. 1985) (citing *Stump*, 435 U.S. at 360).

To determine if Judge Moreno is immune from suit in this case, the court must decide, first, whether the acts Mullane complains of qualify as "judicial acts," and, second, whether Judge Moreno acted in the clear absence of jurisdiction.  *See Dykes*, 776 F.2d at 945 (citing *Stump*, 435 U.S. at 357).[6]  "'[W]hether an act by a judge is a judicial one relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'"  *Mireles v. Waco*, 502 U.S. 9, 12 (1991)

---

[6] Mullane contends that Judge Moreno cannot assert immunity because the U.S. Attorney did not include Judge Moreno in her Westfall Act certification.  Doc. 61 at 11-12; *see also* docs. 61-1 at 7; 67-2.  The doctrine of judicial immunity predates both the Federal Tort Claims Act, which permits suits against the United States for injuries caused within a federal employee's scope of employment, and the Westfall Act, which amended the FTCA to provide that the United States shall be substituted as the defendant in a tort action against a federal employee if the Attorney General certified that the employee was acting within the scope of employment when the tort occurred.  *See Bradley v. Fisher*, 80 U.S. 335 (1871); 28 U.S.C. §§ 1346, 2679(d); Pub. L. 100-694 (Nov. 18, 1988).  Neither the FTCA nor the Westfall Act abrogated or limited judicial immunity.  *See* 28 U.S.C. §§ 1346, 2679(d); *Washington Mut. Bank v. Bush*, 220 F. App'x 974, 976 (11th Cir. 2007).  Accordingly, the U.S. Attorney's Westfall Act certification has no bearing on whether Judge Moreno is entitled to judicial immunity.

(quoting *Stump*, 435 U.S. at 362) (alteration in original omitted).  And, "[a] judge acts in 'clear absence of all jurisdiction' only if he lacked subject-matter jurisdiction[,]" which is a "rare circumstance."  *McCullough*, 907 F.3d at 1332 (quoting *Dykes*, 77 F.2d at 947-49).  Judge Moreno has made the relevant showing on both prongs for all of the claims against him.

1.

As an initial matter, the court notes that Mullane claims that Judge Moreno may not invoke absolute immunity because of Judge Moreno's purported malice and intention to interfere with Mullane's federal employment, and his failure to submit evidence.  *See* doc. 61 at 14-17; *see also* doc. 45 at 10, 36.[7]  But, a judge's absolute immunity provides "immunity from suit, not just from ultimate assessment of damages[,] . . . [and] is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."  *Mireles*, 502 U.S. at 11 (citations omitted).  And, "[a] judge's motivation is irrelevant to determining whether his act was judicial."  *McCullough*, 907 F.3d at 1331 (citing *Dykes*, 776 F.2d at 947).  Moreover, whether judicial

---

[7] Mullane also asks the court to take judicial notice of the Ninth Circuit's decision in *Rodriguez v. Copenhaver*, 823 F.3d 1238 (9th Cir. 2016), documents filed in a *Bivens* action pending against Judge Moreno, and a letter to the House Judiciary Committee regarding allegations of misconduct against Judge Moreno.  Doc. 61 at 32-34; *see also* docs. 67-3; 67-4; 67-9.  Although the court considered those items, because the allegations against Judge Moreno in unrelated actions are irrelevant to this case and a "judge's motivation is irrelevant" to the judicial immunity decision, *see McCullough*, 907 F.3d at 1331, they had no impact on or relevance to the court's analysis.

immunity applies depends on the allegations in the complaint, and a judge is not required to submit any evidence to establish her immunity. *See Sibley v. Lando*, 437 F.3d 1067, 1070 n.2 (11th Cir. 2005) (noting that dismissal based on the doctrine of judicial immunity is available "when the defense is an obvious bar given the allegations") (citation omitted). Therefore, Mullane's contentions are unavailing.

2.

Judge Moreno's statements during the hearing and in the subsequent order he issued, *see* doc. 45 at 9-11, 28, 60-86, 90-91, are judicial acts deriving from normal judicial functions. Judge Moreno made the statements in his courtroom or chambers, the statements centered around Mullane's civil case pending before Judge Moreno and Mullane's actions to prosecute the case, and the statements arose directly out of Mullane's interactions with Judge Moreno in his official capacity. *See Dykes*, 77 F.2d at 946; *see also Sibley*, 437 F.3d at 1071. Likewise, Judge Moreno's alleged refusal to retract statements he made on the record or docket in the underlying case, *see* doc. 45 at 26, is also a judicial act. The alleged action relates directly to the statements Judge Moreno made on the record in Mullane's civil case and to Judge Moreno's "'unquestionable' authority to control [his] own docket." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (citation omitted). And because Judge Moreno made the allegedly defamatory statements or refused to retract them in the course of a case pending before him, he did not act in the clear

11

absence of jurisdiction.  Thus, Judge Moreno is entitled to judicial immunity for claims based on the allegedly defamatory statements he made during the hearing and in the written order, and on his alleged refusal to retract those statements.

3.

Judge Moreno is also entitled to immunity for the phone call.  Allegedly, Judge Moreno called Mullane prior to the scheduled hearing to ensure Mullane would believe that the hearing was a routine matter and attend it without counsel. Doc. 45 at 8, 34.  Based on the hearing transcript that Mullane attached to his complaint, Judge Moreno called Mullane to notify him of the hearing because Mullane, a pro se plaintiff, did not receive automatic email notices from the court. *Id.* at 78-79.[8]  Even if calling a pro se litigant personally is unusual, giving notice of matters set for a hearing is a normal judicial function.  The notice centers around the case over which Judge Moreno had jurisdiction and for a hearing Judge Moreno was holding in his official capacity.  Judge Moreno's alleged nefarious motivation for providing notice through a telephone call to Mullane does not impact whether judicial immunity applies to the act.  *See McCullough*, 907 F.3d at 1331 (citation omitted).  As a result, the call constitutes a judicial act, *see Dykes*, 77 F.2d at 946, involving a hearing in a matter over which he had jurisdiction, and Judge Moreno is entitled to absolute immunity.

---

[8] Mullane did not challenge Judge Moreno's description of the call during the hearing, but instead stated, "I appreciate it."  Doc. 45 at 79.

4.

Judge Moreno is also entitled to immunity for allegedly encouraging Lehr to "deceptively request" Mullane's employment records and timesheet, which were stored on Mullane's personal computer, and to send those records to Judge Moreno without Mullane's consent.  Doc. 45 at 13-14.  Based on the order in the underlying civil case that Mullane attached to his amended complaint, Judge Moreno requested the time records to determine whether Mullane was working at the USAO on the day Mullane visited his chambers.  *See id.* at 90-91.  In the order, Judge Moreno noted that Mullane represented in his motion for recusal that he was "wearing shorts and flip flops" that day, but that "according to the log of attendance at the United States Attorney's Office, [Mullane] reported that he worked from 11:00 AM to 5:00 PM on the day in question[.]"  *Id.* at 90.  Thus, based on the order, Judge Moreno's alleged request to Lehr related directly to his decision on a motion pending before him, and the nature and function of the request amounted to seeking information to rule on the motion.  Because ruling on a motion is a normal judicial function, Judge Moreno did not act in the clear absence of jurisdiction when he made the alleged request to Lehr.  As a result, Judge Moreno is entitled to judicial immunity for claims based on the allegedly deceptive request.

5.

Finally, Judge Moreno is also entitled to immunity for sending a letter to Mullane's law school.  In the letter, Judge Moreno stated that "the Court is still concerned with the allegations made in paragraph 16" of Mullane's motion for recusal, which Judge Moreno described as a "blatant misstatement in a 'verified pleading,'" and then outlined the basis for his contention.[9] Doc. 45 at 88 (emphasis omitted).  Mullane claims the letter contains "malicious and defamatory" statements, but never identified the portions of the letter that purportedly rise to this level.  *See id.* at 11, 42-43, 88.

The defendants contend that the letter qualifies as a judicial act because it stemmed from Judge Moreno's legitimate  concern for the integrity of the judicial system and the contents arose from Judge Moreno's interactions with Mullane in a case he presided over and Mullane's visit to the judge in his official capacity.  *See*

---

[9] The letter states in full:  "Enclosed please find materials filed in the case *Jonathan Mullane v. Barclay's Bank of Delaware, Inc.*, Case No. 18-29596-CIV-SCOLA (formerly MORENO) and also an article on Law 360 with quotes attributed to student Jonathan Mullane.  Although the lawsuit was dismissed by Mr. Mullane, the Court is still concerned with the allegations made in paragraph 16 of the 'Plaintiff's Verified Motions for Recusal for Cause.'  In that paragraph, Mr. Mullane stated:  'Given Plaintiff's personal appearance at the time in question, and the simply fact that he was "dressed for the beach," no reasonable person could possibly conclude that a young man wearing yellow shorts and flip-flops was conducting official business on behalf of the U.S. Attorney's Office or the United States government.'  If you desire to view the videos of Mr. Mullane entering the Courthouse, as well as chambers, on March 23, 2018, they are available to confirm that he was properly dressed with long pants, a coat, and a tie.  I leave it to the University of Miami School of Law to decide if any other action is necessary for this blatant misstatement in a 'verified pleading.'"  Doc. 45 at 88 (emphasis in original).

doc. 56 at 6-7, 9, 12.   Indeed, the letter reflects Judge Moreno's interactions with Mullane, which stemmed from a case Judge Moreno presided over in his official capacity.   *See* doc. 45 at 88.   While Mullane may disagree with Judge Moreno's decision to contact Mullane's law school, Canon 3(B)(5) of the applicable Code of Conduct for United States Judges directs judges to "take appropriate action upon learning of reliable evidence indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct."[10]   To be sure, Mullane was not a lawyer at the time.   But, he was training to be one.   And, Judge Moreno was rightly concerned about a statement Mullane made in a pleading regarding his attire that was flatly contradicted by the court's surveillance video.   Such a "blatant misstatement" warrants action from the court, and if Mullane was a lawyer, the report may well have been to the state bar.   However, as a law student, Judge Moreno's only option for reporting Mullane's conduct was to send the information to Mullane's law school for it "to decide if any other action is necessary . . . ."   Doc. 45 at 88.   Critically, Judge Moreno copied Mullane on the letter, thereby giving Mullane an opportunity to relay his position and to challenge Judge Moreno's contention.

---

[10] The Code of Conduct was revised effective March 12, 2019.  The Code effective at the relevant time is available at https://www.uscourts.gov/sites/default/files/vol02a-ch02_0.pdf.

"The Code of Conduct is the law with respect to the ethical obligations of federal judges." *United States v. Microsoft Corp.*, 253 F.3d 34, 113 (D.C. Cir. 2001). Moreover, nothing in the Code suggests that a judge's obligations cease when his jurisdiction over a case ends, or that a judge should overlook alleged ethical infractions by non-lawyers. Therefore, because reporting evidence of a violation of the rules of professional conduct or matters that concern the integrity of the judicial system is a normal judicial function and the content of letter arose from a case Judge Moreno presided over and Mullane's visit to the judge in his official capacity, Judge Moreno is entitled to absolute judicial immunity for claims based on the letter.

\*       \*       \*

To summarize, Judge Moreno is entitled to judicial immunity for all the claims against him, and the motion to dismiss Judge Moreno is due to be granted.

## C.

Mullane also asserts claims for alleged violations of 42 U.S.C. §§ 1985(3) and 1986[11] and the Civil Rights Act of 1871 (Counts XI and XII). Doc. 45 at 36-38. Claims based on violations of § 1985(3) "require[] a showing of some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action,'" *Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir.

---

[11] Under 42 U.S.C. § 1986, it is unlawful to refuse or neglect to act when one has knowledge of a conspiracy to violate § 1985 and has power to prevent or help prevent the planned violation of § 1985.

16

1992) (quotation omitted), which Mullane acknowledge he failed to plead, *see* doc. 45. In light of this failure, Mullane asks for leave to amend to plead violations of § 1985(1) and (2) instead, doc. 61 at 34-35, which do not require allegations of class-based discriminatory animus. *See Kush v. Rutledge*, 460 U.S. 719, 726-27 (1983); *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1340 (7th Cir. 1977). Even so, the amendment would be futile.

1.

Section 1 of the Civil Rights Act of 1871 prohibits two or more people from conspiring to:

> [1] prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or
>
> [2] [] induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties[.]

42 U.S.C. § 1985(1). Mullane has not alleged—nor can he—that he was an officer of the United States—Mullane served as an unpaid intern at the USAO, had an offer to work "as a law clerk intern in the Miami, Florida office of the SEC," and had an alleged promise of future full-time employment with the SEC. Doc. 45 at 3, 17. In addition, although Mullane alleges that the defendants' conduct and alleged fraud

caused the SEC to wrongfully withdraw the internship offer and the alleged promise of future employment, doc. 45, Mullane does not plead that any defendant prevented him "by force, intimidation, or threat [] from accepting or holding any office, trust, or place of confidence under the United States," *see* 42 U.S.C. § 1985(1).  Thus, his proposed amendment fails to state a valid claim under § 1985(1), and is futile.

2.

Section 2 prohibits two or more people from conspiring to "deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . . ."  42 U.S.C. § 1985(2).  Because these clauses "refer to conspiracies that are designed to obstruct the course of justice 'in any court of the United States,' plaintiffs seeking to recover under those clauses must show a nexus between the alleged conspiracy and a proceeding in federal court." *Bradt v. Smith* , 634 F.2d 796, 801 (5th Cir. Unit A 1981).  Mullane does not allege that the defendants deterred him from attending or testifying freely at the hearing in his underlying case, or in any other proceeding.  *See* doc. 45.  In addition, Mullane does not allege that the defendants injured him "on account of his having [] attended" the hearing or any other proceeding in federal court. *See id.*  Instead, Mullane claims that the defendants conspired against him in order to hide Lehr's alleged misconduct

18

relating to a conflict of interest Mullane disclosed to Lehr. *Id.* at 3-13; *see also* doc. 61 at 24.  This allegation is insufficient to state a valid claim under § 1985(2).

*     *     *

To close, because Mullane does not allege that the defendants acted with class-based discriminatory animus, his claims based on 42 U.S.C. § 1985(3) (Counts XI and XII) are due to be dismissed.  Moreover, the proposed amendment to assert a claim based on 42 U.S.C. § 1985(1) or (2) is futile, and is denied.

<h2 style="text-align:center">D.</h2>

Mullane asserts *Bivens* claims based on alleged violations of the Fourth Amendment, his right to privacy, his alleged rights to a *Garrity*[12] or *Kalkines*[13] warning and *Loudermill*[14] hearing, and his property rights in the USAO and SEC

---

[12] In *Garrity*, "the Supreme Court held that Fifth Amendment protections apply to public employees who, under the threat of job loss, are required to make incriminating statements" during internal investigations.  *U.S. v. Smith*, 821 F.3d 1293, 1302 (11th Cir. 2016) (citing *Garrity v. State of New Jersey*, 385 U.S. 493, 499-500 (1967)).

[13] In *Kalkines*, the Court of Claims held that federal employees may be discharged for refusing to answer questions in an internal investigation if the government adequately warns the employees that they may be discharged for not answering the questions and that their answers (and their fruit) cannot be used against them in criminal proceedings.  *Kalkines v. United States*, 473 F.2d 1391, 1393 (Fed. Cl. 1973) (citations omitted).

[14] In *Cleveland Board of Education v. Loudermill*, the Supreme Court held that due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment."  470 U.S. 532, 542 (1985) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)).  However, because "[p]roperty interests are not created by the Constitution," whether an employee has a protected property interest in his employment depends upon "'existing rules or understandings that stem from an independent source such as state law[.]'"  *Id.* (quoting *Roth*, 408 U.S. at 577).

19

employment agreements (Counts XIII and XIV).[15]   Doc. 45 at 39-40.   The defendants are entitled to qualified immunity on these claims.

The doctrine of qualified immunity "shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights' . . . ."  *Iqbal*, 556 U.S. at 672 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  An official asserting qualified immunity "must initially establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[16]  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  Then, to overcome the defense, the plaintiff must show that the official violated a constitutional right and that the right was clearly established at the time of the alleged violation.  *Id.* (citations omitted); *see also Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009) (citations omitted).  In addition, "[b]ecause vicarious liability is inapplicable to *Bivens* [] suits, a plaintiff

---

[15] Mullane also contends, without any factual support, that the defendants violated his "right to petition the judiciary for redress" and his "right to legal counsel in all criminal matters."  Doc. 45 at 40.  However, the Sixth Amendment right to counsel does not apply to Mullane's underlying civil matter in which he appeared pro se.  Also, Mullane does not allege that the defendants initiated formal criminal proceedings against him or any other circumstances in which the right to counsel would attach.  *See id.* at 8-10, 12; *see also Moran v. Burbine*, 475 U.S. 412, 1144-47 (1986) (discussing when the right to counsel attaches).

[16] Mullane does not dispute the defendants' contention that they were acting within their discretionary authority when the alleged acts occurred.  *See* docs. 56 at 15; 61 at 17-22.

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 677.

1.

Mullane asserts that the defendants violated his right to privacy and the Fourth Amendment by conspiring to obtain his time sheets from his personal laptop.  Docs. 45 at 13-15; 61 at 18.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  Thus, a Fourth Amendment violation requires a plaintiff to show the defendants engaged in an unreasonable search or seizure.   A Fourth Amendment violation related to a search "occurs when government officers violate a person's 'reasonable expectation of privacy[.]'" *United States v. Jones*, 565 U.S. 400, 406 (2012) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967)).  And, "[a] seizure of property occurs when there is a 'meaningful interference' with a person's possessory interest in it." *Crocker*, 886 F.3d at 1136 (citing *United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007)).

The alleged unlawful seizure of the timesheets occurred when "Lehr deceptively requested that [Mullane] transmit to her certain personal employment records [that] were on [Mullane's] personal laptop computer" by telling Mullane that she needed the records "for legitimate work-related reasons."  Doc. 45 at 13. Critically, however, Mullane does not contend that his compliance with Lehr's

21

allegedly deceptive request interfered with his possessory interest in those files.  *See* docs. 45; 61.  Thus, Mullane has failed to plead a valid Fourth Amendment claim.

To the extent the Fourth Amendment claim is related to Mullane's privacy interests in his employment records and timesheets, the claim also fails.  "When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' [the Supreme Court has] held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause."  *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).  Here, however, Mullane has not cited any authority suggesting that an employee has a reasonable expectation of privacy in his work schedule or timesheets.  *See* doc. 61. And, albeit in an unpublished opinion, the Tenth Circuit in the only case directly on point found that police officers had "no objectively reasonable expectation of privacy" in their time records kept by the police department or a property management company where they worked as private security guards.  *McCarty v. City of Bartlesville*, 8 F. App'x 867, 876-77 (10th Cir. 2001) (citations omitted). Thus, because Mullane does not allege that the defendants searched or seized his personal computer, and he has not shown that he had a reasonable expectation of privacy in his timesheets, Mullane has not established that the allegedly fraudulent

procurement of those records violated the Fourth Amendment or his right to privacy.[17]

2.

Mullane also pleads a violation of his due process rights for alleged interference with his property interests in future government employment and the failure to provide him with a *Loudermill* hearing or a *Garrity* or *Kalkines* warning prior to the April 2018 hearing Judge Moreno held. Docs. 45; 61 at 20. These contentions are also unavailing.

a.

Mullane has not cited any cases suggesting that *Garrity* or *Kalkines* provides protection to an unpaid student intern or prospective employees, *see* doc. 61, and the court has not found any binding authority on that point. In addition, Mullane has not alleged that any defendant compelled him to make incriminating statements at the April hearing. *See* doc. 45. Thus, Mullane has not pleaded that the defendants

---

[17] Mullane asserts that Lehr's alleged deception in obtaining his employment records renders the defendants' acquisition of his records an unlawful search under the Fourth Amendment. Doc. 61 at 19-22. But, Mullane has not cited any authority suggesting that a fraudulent request for a particular record that a plaintiff voluntarily gives to the defendant constitutes a Fourth Amendment search. *See* doc. 61. Rather, in the cases Mullane cites, the defendants used deception to gain access to a plaintiff's computer, hotel room, or home, and then searched the plaintiff's property or room themselves. *See Pagan-Gonzalez v. Moreno*, 919 F.3d 582, 587 (1st Cir. 2019); *United States v. Montes-Reyes*, 547 F. Supp. 2d 281, 283-84 (S.D.N.Y. 2008); *United States v. Vazquez-Velaquez*, 2012 WL 917845, at *1-3 (N.D. Ga. Feb. 23, 2012). Moreover, as discussed above, even if Lehr's allegedly deceptive request for records constitutes a search under the Fourth Amendment, Mullane did not show that he has a reasonable expectation of privacy in his timesheets.

23

violated any clearly established right by failing to provide him with a *Garrity* or *Kalkines* warning.  Even if he did allege a violation, Mullane has not cited any authority for the proposition that a violation of *Garrity* or *Kalkines* is actionable under § 1983 or *Bivens*.[18]  *See* doc. 61.  As a result, the claims related to the failure to provide a *Garrity* or *Kalkines* warning fail.

b.

Mullane contends also that he had a protected property interest under *Loudermill* in his unpaid internship with the USAO, the unpaid internship offer with the SEC, and the SEC's alleged offer of future employment.  Doc. 61 at 7-11.  The cases Mullane cites do not support his contention.

(1)

To begin, as to Mullane's contention that his unpaid internships qualify him as an employee of the federal government, *see* doc. 61 at 7-8, the statute and case he cites relate only to whether an individual may be considered a federal employee for purposes of determining liability under the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. § 2671 (defining employee for purposes of the FTCA); *Schmidt v. Fed. Corr. Inst.*, 2018 WL 4620672, at *6 (D.N.J. Sept. 26, 2018); *see also* doc. 61 at 7-

---

[18] It is unlikely that the violation would lead to a plausible § 1983 or Bivens claim.  For example, the Circuit has held that an officer's failure to provide a *Miranda* warning "does not violate the substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created."  *Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999).

24

8.  In *Schmidt*, the court held that "because the FTCA works to benefit persons who are injured by torts committed by 'employees of the United States, not to benefit those 'employees' themselves," a person incarcerated at a federal prison and engaged in a Bureau of Prisons work program may be considered an employee for purposes of the FTCA even though that person would not be considered an employee for the purposes of other federal statutory schemes.  2018 WL 4620672, at *5-6.  A holding that the definition of employee under the FTCA is generally broader than under other federal statutory schemes does not establish that Mullane has a protected property interest in his unpaid internship or offer for one, or that the defendants violated a clearly established right by failing to provide him with a *Loudermill* hearing.

(2)

Similarly, Mullane's contention that the promise of future full-time employment with the SEC creates a protected property interest, doc. 61 at 8-11, 17, 20, also misses the mark.  The cases Mullane cites address only whether a public employee has a property interest in his or her continued employment with the public entity.[19]  Relevant here, courts have generally found that no protected property

---

[19] *See Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. Dist. Ct. App. 2004) (holding that a firefighter employed by the Town of Davie who alleged that the Town's ordinances established that he could not be discharged without cause had a property interest in continued employment with the Town); *McRae v. Douglas*, 644 So. 2d 1368, 1372-76 (Fla. Dist. Ct. App. 1994) (affirming dismissal of the plaintiff's due process claim because under the relevant statutory framework, a deputy sheriff is an at-will employee and has no protected property interest in his position); *Metro.*

25

interest exists in an offer of prospective employment.[20]  Consequently, Mullane has

not alleged that the defendants violated a clearly established right by withdrawing

the alleged offer of future employment with the SEC.[21]

(3)

Finally, Mullane contends that the defendants violated his "'liberty interest'

in his reputation and choice of occupation."  *See* docs. 61 at 20; 45 at 39.[22]  An

"injury to reputation, by itself, does not constitute a deprivation of a liberty or

property interest protected under the Fourteenth Amendment."  *Behrens v. Regier*,

422 F.3d 1255, 1259 (11th Cir. 2005) (citing *Paul v. Davis*, 424 U.S. 693, 701-02

---

*Dade Cnty. v. Sokolowski*, 439 So. 2d 932, (Fla. Dist. Ct. App. 1983) (holding that police officers employed by the county have a property interest in continued, uninterrupted employment based on a county ordinance); *Johnson v. Sch. Bd. of Palm Beach Cnty.*, 403 So. 2d 520, 524-25 (Fla. Dist. Ct. App. 1981) (holding that a public school teacher "by virtue of his tenure had a legitimate claim of entitlement to continued employment absent sufficient cause for his discharge, and therefore had a property interest in his continued employment"); *see also* doc. 61.

[20] *See Abramson v. Pataki*, 278 F.3d 93, 100 (2d Cir. 2002); *Crenshaw v. City of New Haven*, 652 F. App'x 58, 60 (2d Cir. 2016); *Smith v. Orange Cnty. Sch. Bd.*, 2006 WL 8439525, at *8 (M.D. Fla. Nov. 29, 2006) ("There is no protective property or liberty interest in prospective employment.") (citing *Martinez v. City of New York*, 82 F. App'x 253, 254 (2d Cir. 2003) and *Moore v. Muncie Police & Fire Merit Comm'n*, 312 F.3d 322, 326 (7th Cir. 2002)).

[21] Mullane contends that he is entitled to relief under a theory of promissory estoppel based on Roberts's alleged promise of future employment.  Doc. 61 at 10-11.  Mullane does not assert a promissory estoppel claim, however, *see* doc. 45, and the court has found no binding authority for the proposition that such a claim may give rise to a protected property interest for purposes of an alleged due process violation.

[22] Mullane does not include this contention in his *Bivens* claims.  *See* doc. 45 at 39-40.  But, because the court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), the court addresses Mullane's contentions regarding the defendants alleged interference with his choice of occupation.

(1976)).[23]  Thus, "'a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation "plus" the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause.'"  *Id.* at 1260 (quoting *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1303 (11th Cir. 2001)).  To satisfy this test, a plaintiff must show that the defendants' conduct not only damaged his reputation, but also deprived him "'of a right or status previously recognized under state law.'"  *Id.* (quoting *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003)).

"[T]he right to hold specific [] employment and to follow a chosen profession free from unreasonable government interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment."  *Greene v. McElroy*, 360 U.S. 474, 492 (1959).  Nevertheless, the right "to choose one's field of private employment" is "subject to reasonable government regulation."  *Conn v. Gabbert*, 526 U.S. 286, 292 (1999).  And, under Florida law, a government official does not violate a plaintiff's right to follow a chosen profession by preventing the plaintiff from working at a particular facility or location.[24]  Thus, under Florida law, the defendants

---

[23] Mullane asserts that the defendants violated his Fifth Amendment due process rights.  Doc. 61 at 20.  "Because the language and motivating policies of the due process clauses of [the Fifth and Fourteenth Amendment] are substantially similar, opinions interpreting the Fourteenth Amendment due process clause" are applicable to alleged violations of the Fifth Amendment due process clause.  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 944 (11th Cir. 1997) (citation omitted).

[24] *See Chakra 5, Inc. v. City of Miami Beach*, 254 So. 3d 105, 1067-68 (Fla. Dist. Ct. App. 2018) (citations omitted*); Int'l Longshoremen's Ass'n, Locals 1416 v. Miami-Dade Cnty.*, 926 So. 2d

did not violate Mullane's due process rights by allegedly preventing him from working at the USAO and SEC.

Mullane also contends that Judge Moreno's allegedly false accusations of criminal and unethical conduct, which Lehr purportedly sent to media outlets, have prevented him from becoming a licensed attorney. *See* docs. 45 at 11-12, 15-17; 61 at 8, 20. Mullane cites *Ridpath v. Board of Governors Marshall University*, 447 F.3d 292 (4th Cir. 2006), in support of his contention that Judge Moreno's and Lehr's alleged actions violated a clearly established right. *Ridpath* is not binding in this Circuit, however, and "only binding precedent can clearly establish a right for qualified immunity purposes." *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013). Moreover, *Ridpath* is distinguishable.

In *Ridpath*, the Fourth Circuit found that officials at a public university were not entitled to qualified immunity on claims based on allegations that they issued a corrective action accusing the plaintiff of serious misconduct and demoting him without giving him notice or an opportunity for a hearing. 447 F.3d at 313-15. The Circuit found that the defendants had "'fair warning' that their conduct was unconstitutional" based on prior Fourth Circuit decisions holding "that a public employer's stigmatizing remarks may infringe on an employee's liberty interest if

---

433, 436 (Fla. Dist. Ct. App. 2006) (citing *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 898 (1961)); *Ammons v. Okeechobee Cnty.*, 710 So. 2d 641, 645 (Fla. Dist. Ct. App. 1998).

such remarks are 'made in the course of a discharge or significant demotion,'" and on the Supreme Court's decision in *Board of Regents v. Roth*, which "recognized that 'notice and an opportunity to be heard are essential' when a public employee's liberty interest is infringed by a charge implying such serious character defects as 'dishonesty or immorality' lodged in the course of an injury such as failure to rehire." *Id.* (quotations and alteration in original omitted).

Here, however, the allegedly stigmatizing remarks and actions were not made or taken in the course of a discharge, demotion, or failure to rehire.  *See* doc. 45. Rather, Judge Moreno made his remarks during a hearing in a civil case he presided over and in a letter to Mullane's law school, and Lehr allegedly transmitted the hearing transcript to the media.  *See* doc. 45.  Thus, *Roth*, or *Ridpath* for that matter, do not give "the defendants 'fair warning' that their alleged conduct was unconstitutional." *Vaughn v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  Consequently, Mullane has not shown that the defendants violated a clearly established right by allegedly taking actions that prevented him from becoming a member of the Massachusetts bar.

*     *     *

To summarize, Mullane "fails to allege the violation of a clearly established constitutional right." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (quotation omitted).  Thus, the defendants are entitled to qualified immunity,

29

and the motion to dismiss the *Bivens* claims (Counts XIII and XIV) is due to be granted.

### E.

Mullane also pleads civil RICO and RICO conspiracy claims (Counts I and II).  Doc. 45 at 21-27.  To state a civil RICO claim, a plaintiff must allege, among other things, that the defendants "operated or managed [] an enterprise [] through a pattern [] of racketeering activity that included at least two predicate acts of racketeering[.]"[25]  *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (citing *Ray*, 836 F.3d at 1348).  A properly pleaded pattern of racketeering activity "must charge that:  (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature."  *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original) (citations omitted).  The defendants challenge whether Mullane has pleaded viable predicate acts, and, if so, whether they are of a continuing nature.

1.

The first issue of contention is whether Mullane has pleaded purported criminal conduct of a continuing nature.  Doc. 56 at 21.  "[T]wo types of continuity [] may establish a RICO claim:  closed-ended continuity and open-ended

---

[25] The remaining elements of the RICO claim are that the defendants' conduct "caused [] injury to the business or property of the plaintiff."  *Cisneros*, 972 F.3d at 1211.

continuity." *Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241-42 (1989)).  For closed-ended continuity, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242.  While no bright-line rule exists, "the substantial period of time requirement . . . cannot be met with allegations of schemes lasting less than a year." *Jackson*, 372 F.3d at 1266 (citations and emphasis in original omitted).  In addition, a single scheme with a discrete goal or involving only one victim does not satisfy closed-ended continuity even when the scheme lasts for a substantial period of time.  *Id.* at 1267; *Daedalus Capital*, 625 F. App'x at 976 (citing *Jackson*, 372 F.3d at 1267; *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990)).

Here, Mullane alleges the defendants engaged in a pattern of racketeering activity to deprive him of his property interest in his contractual agreements and employment with the USAO and SEC, his contractual agreement with the University of Miami, and his right to gain membership in the Massachusetts bar.  Doc. 45 at 22-23, 25-26.  According to the complaint, the alleged conduct relating to the purported scheme occurred over four months.[26]  Consequently, it does not satisfy the closed-

---

[26] Allegedly, the defendants engaged in the following predicate acts of mail fraud, retaliation, and tampering:

ended continuity requirement. *See Jackson*, 372 F.3d at 1266. Mullane tries to avoid

that conclusion by alleging that (1) the defendants interfered with his Privacy Act

and FOIA requests and have withheld documents from him over a two-year period

to conceal their alleged misfeasance, doc. 45 at 18-19, 26; *see also* docs. 61 at 22;

75-1; (2) that Judge Moreno continues to refuse to retract the allegedly defamatory

statements he made about him in the underlying case, doc. 45 at 26; and (3) that Lehr

allegedly attempted to avoid service of process in this action and assaulted Mullane's

process server, docs. 61 at 22; 55; 67-13. But, this alleged conduct does not qualify

as racketeering activity or a predicate act for purposes of RICO. *See* 18 U.S.C.

---

- beginning as early as February 2018, the defendants tried to force Mullane to quit his internship at the USAO to hide their alleged misconduct relating to a conflict of interest Mullane disclosed to Lehr, doc. 45 at 5-7, 9;

- Lehr and Greenburg conspired with Judge Moreno to hold the April 10, 2018 hearing to manufacture good cause to terminate the internship, and Greenberg refused to intervene to help Mullane protect his rights, *id.* at 7-11;

- the defendants ended Mullane's internship with the USAO in April 2018, a few weeks earlier than planned, and Lehr submitted a negative and false performance evaluation to Mullane's law school the following month, *see id.* at 12-13, 93-96;

- Judge Moreno issued an allegedly false and defamatory recusal order and transmitted a letter to Mullane's law school on April 13 and 19, 2018, respectively, *id.* at 11, 88-91;

- Lehr sent a transcript of the hearing to media outlets and individuals at Mullane's law school, *id.* at 15-16, 101;

- On April 26, 2018, Roberts sent copies of the hearing transcript and related court filings to individuals at the SEC, *id.* at 21, 107; and

- On May 3, 2018, the SEC rescinded Mullane's offer for a student honors volunteer program even though Mullane previously passed the background check, *id.* at 20, 103-05.

§ 1961(1) (defining "racketeering activity"); *Cisneros*, 972 F.3d at 1215-16.  And, even considering this conduct, Mullane still only alleges a single scheme involving him alone, which is not sufficient to satisfy closed-ended continuity.  *See Jackson*, 372 F.3d at 1267.

For its part, "[o]pen-ended continuity refers to 'past conduct that by its nature projects into the future with a threat of repetition.'"  *Daedalus Capital*, 625 F. App'x at 976 (quoting *H.J. Inc.*, 492 U.S. at 241).  A RICO claim based on open-ended continuity requires pleading "either that the alleged [predicate] acts were part of the defendants' regular way of doing business, or that the illegal acts threatened repetition into the future."  *Jackson*, 372 F.3d at 1267 (quoting *H.J. Inc.*, 492 U.S. at 242).  The core of this inquiry is not the presence of multiple victims or schemes, but rather "whether the threat of continuity is demonstrated."  *Id.* at 1265.

A review of the amended complaint shows that Mullane does not allege or suggest that the alleged scheme was part of the defendants' regular way of conducting business.  *See* doc. 45.  Mullane also does not allege a specific threat of repetition into the future and instead contends only that the "unlawful acts of the subject Enterprise unfortunately remain ongoing."  Doc. 45 at 2.  But, this general and conclusory allegation is not sufficient to establish open-ended continuity.  *See Jackson*, 372 F.3d at 1268 (finding that allegations that the alleged predicate acts "pose[] a threat of continued criminal activity in the future" are not sufficient to

allege open-ended continuity).   Likewise, because allegations of "ongoing acts aimed at concealing an initial wrongdoing" are not sufficient to state a RICO claim based on open-ended continuity, *id.* at 1268-69 (citing *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 593-94 (11th Cir. 1992)), Mullane's allegations that the defendants purportedly attempted to hide their alleged misconduct by interfering with his FOIA requests and evading service in this case, *see* docs. 45 at 18-19; 75-1, are also insufficient to satisfy the continuity requirement.

2.

The defendants also challenge whether Mullane adequately pleaded a proper predicate act.  Doc. 56 at 18-21.  To allege a predicate act, which "includes any of a long list of state and federal crimes[,]" "[a] plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215 (citing 18 U.S.C. § 1961(1) and *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)).  Mullane contends that he has made the relevant showing through his allegations of mail fraud, retaliation, and witness tampering.  *See* doc. 45 at 22-23.

a.

"Mail fraud [] occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'"  *Bridge v. Phoenix Bond & Indem.*

34

*Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341).  While Mullane correctly notes that mail fraud is generally broader in scope than common law fraud,[27] a plaintiff who bases a civil RICO claim on predicate acts of mail fraud must still comply with Rule 9(b)'s heightened pleading standard.  This entails "'stat[ing] with particularity the circumstances constituting fraud or mistake[.]'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Fed. R. Civ. P. 9(b)).  More specifically, "a plaintiff must allege:  '(1) the precise statements, documents, or misrepresentation made; (2) the time, place, and person responsible for the statements; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Id.* (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Allegedly, the defendants engaged in mail fraud to deprive Mullane of his property interests in his contractual relationships with the USAO, SEC, and the University of Miami and his "right to be accepted as a member of the Massachusetts bar[.]"  Doc. 45 at 22-23.  It is not clear which alleged acts constitute the alleged mail fraud.  *See* doc. 45.  The alleged mailings include Judge Moreno's letter to the University of Miami School of Law and Lehr's alleged transmission of the hearing

---

[27] *See United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011) (citation omitted); *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994); *see also United States v. Bishop*, 825 F.2d 1278, 1280 (8th Cir. 1987) (citation omitted); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 535-36 (N.D. Ohio 1998).

transcript to certain individuals and media outlets.[28]  *Id.* at 11, 15-16, 20-21, 105.

While Mullane contends that Judge Moreno's letter to the law school and the hearing

transcript are false and defamatory, *see* doc. 45 at 11, 15-16,  he does not identify

the specific purportedly false or misleading statements by Judge Moreno.  *See* docs.

45; 61.  And, "[i]f the specific misrepresentations do not exist, it follows that the

complaint has not alleged a right to relief that is 'plausible on its face.'"  *Am. Dental*

*Ass'n*, 605 F.3d at 1292 (quoting *Twombly*, 550 U.S. at 570).  Thus, Mullane has not

plausibly alleged that the defendants engaged in the predicate act of mail fraud based

on Judge Moreno's letter or Lehr's transmission of the hearing transcript.[29]

### b.

The second asserted predicate act is the alleged violation 18 U.S.C. § 1513(e)

by retaliating against Mullane.[30]  Doc. 45 at 22.  The gist of this claim is Mullane's

contention that he reported numerous federal offenses committed by the defendants

---

[28] It is not clear from the complaint if the alleged transmissions of the transcript to the media would qualify as a mailing, but, for purposes of the motion to dismiss, the court assumes that they would qualify.  Mullane also alleges that Lehr sent his law school a false and defamatory performance evaluation and that the SEC sent him an allegedly false letter rescinding the offer to work as an honors intern.  Doc. 45 at 11, 93-96.  But, Lehr and the SEC sent those communications by email rather than through the U.S. Mail.  *Id.* at 93; *see also* doc. 67-15 at 7-8.

[29] *See Am. Dental Ass'n*, 605 F.3d at 1291-93 (affirming the dismissal of RICO claims based on alleged mail fraud when, among other things, the plaintiff did not identify a single specific misrepresentation the defendants made in communications).

[30] Section 1513(e) makes it a crime for anyone to "knowingly, with the intent to retaliate, take[] any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information related to the commission or possible commission of any Federal offense[.]"

to Lehr and Greenberg.  Doc. 45 at 24-25.  But, as the defendants point out, Mullane does not plead that the defendants took any actions against him for reporting the alleged offenses.[31]  *See* docs. 45; 56 at 20.  Rather, as discussed above, Mullane claims that the defendants harassed and conspired against him to pressure him to resign in order to hide Lehr's alleged misconduct with respect to a conflict of interest Mullane had with projects she assigned him.  *See* docs. 45 at 5-9; 61 at 24.  As a result, Mullane has not plausibly pleaded that the defendants committed a predicate act of retaliation against a witness or victim in violation of section 1513(e).

c.

The final asserted predicate act is alleged witness tampering or intimidation in violation of 18 U.S.C. §§ 1512(b) and (d).[32]  Doc. 45 at 23.  However, as the defendants note, Mullane does not allege that:  (1) any defendant threatened,

---

[31] Mullane alleges that Lehr started retaliating against him after he reported to her that he was experiencing "verbal abuse" and "increasing hostility" at the USAO.  Doc. 45 at 6-7, 56.  This vague allegation is not sufficient to show that he reported a federal offense for purposes of 18 U.S.C. § 1513(e).  Moreover, a message from Mullane to Lehr, which Mullane attached to the second amended complaint, shows that Mullane reported alleged unprofessional and disrespectful conduct in the workplace, not a federal criminal offense.  *See* doc. 45 at 56; *see also* doc. 67-7 at 3.  Similarly, Mullane's allegation that he "complained of [Judge] Moreno's unlawful and unjustifiable actions to Lehr and Greenberg," doc. 45 at 11, does not show that he reported a federal offense for purposes of section 1513(e), *see also* doc. 67-7 at 4.

[32] Section 1512(b) makes it a crime to intimidate or threaten another person in order to "influence, delay, or prevent the testimony of any person in an official proceeding" or to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States information relating to the commission or possible commission of a Federal offense . . . ."  *Id.* at §1512(b)(1), (3).  And, section 1512(d), makes it a crime to "harass[] another person and thereby hinder[], delay[], prevent[], or dissuade[] any person from [] attending or testifying in an official proceeding; [or] reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense . . . ."  *Id.* at § 1512(d)(1)-(2).

intimidated, or harassed Mullane to prevent or influence his, or any other person's testimony at an official proceeding;  (2) the defendants took any action to prevent or hinder him, or any other person, from giving a law enforcement officer or judge information about the commission of a Federal offense; or (3) the defendants agreed to commit any such acts.  *See* docs. 45; 56.  Consequently, Mullane has not alleged that the defendants committed predicate acts by violating or agreeing to violate sections 1512(b) or (d).

3.

The defendants challenge also the RICO conspiracy claim.   Allegedly, Mullane did not adequately plead that the defendants agreed to the overall purpose of the alleged conspiracy or to commit the alleged predicate acts.  Doc. 56 at 23. "The RICO conspiracy statute [] provides:  'It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.'" *Salinas v. United States*, 522 U.S. 52, 63 (1997) (quoting 18 U.S.C. § 1962(d)).  "'A plaintiff can establish a RICO conspiracy claim in one of two ways:  (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts.'" *American Dental Ass'n.*, 605 F.3d at 1293 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)).  Thus, a plaintiff does not need to show that each alleged conspirator agreed to commit a predicate act herself

38

if she agreed to the purpose of the conspiracy.  Nevertheless, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense . . . ."  *Salinas*, 552 U.S. at 477.  Finally, a plaintiff may show the existence of an agreement between the alleged conspirators "'from circumstantial evidence of the scheme.'"  *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1217 n.13 (M.D. Fla. 2004) (quoting *United States v. Church*, 955 F.2d 688, 695 (11th Cir. 1992)).

The three specific allegations that form the civil RICO conspiracy claim,[33] doc. 45 at 27, consist solely of legal conclusions that are not entitled to a presumption of truth, *see Iqbal*, 556 U.S. at 678.  Moreover, Mullane's other allegations[34] "are the kinds of 'formulaic recitations' of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient."  *Am. Dental Ass'n*, 605 F.3d at 1294 (citing *Twombly*, 550 U.S. at 557; *Iqbal*, 129 S. Ct. at 1950-51).  Finally, Mullane's factual

---

[33] As with each count in the second amended complaint, Mullane begins his RICO conspiracy claim with a statement adopting and incorporating each and every one of his preceding allegations. *See* doc. 27.  This "is a quintessential 'shotgun' pleading—the sort of pleading [the Eleventh Circuit has] been roundly condemning for 30 years."  *Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) (citations omitted).

[34] Mullane alleges that the defendants "had a systematic linkage to the other participants with a view to continue coordination of their collective activities," "functioned as one continuing unit with the express purpose of furthering the illegal scheme and common purposes," and "conspired to further an endeavor which, if completed, would satisfy all elements of a civil RICO claim," doc. 45 at 25, 27.

contentions do not show substantive violations of RICO,[35]  *see* 18 U.S.C. § 1962,
and Mullane's allegations related to those schemes also do not establish that the
defendants agreed to commit two predicate acts, *see* doc. 45 at 5-12; 18 U.S.C.
§ 1961(a); Section III(E)(2), *supra*.  Therefore, Mullane has not plausibly alleged
that the defendants conspired to violate RICO.

*      *      *

To close, Mullane's allegations are not sufficient to establish either open-
ended or closed-ended continuity or that the defendants engaged in predicate acts.
Mullane also has not adequately alleged that the defendants conspired to violate
RICO.  As a result, the civil RICO and conspiracy claims (Counts I and II) are due
to be dismissed.

## F.

Finally, the defendants challenge the common law tort claims.[36]  Doc. 45.  The
defendants contend that Greenberg, Lehr, and Roberts are immune from common

---

[35] Mullane alleges that the defendants conspired to manufacture a reason to discharge Mullane
from his internship with the USAO to hide Lehr's and Greenberg's alleged misconduct relating to
conflicts of interest he disclosed to the USAO, and that the defendants conspired to deprive him
of his interests in his offer of student employment and future employment with the SEC and his
anticipated admission to the Massachusetts bar.  Doc. 45 at 5-12; *see also* doc 61 at 24.

[36] These claims are:  civil conspiracy (Count III); slander per se (Count IV); tortious interference
with contractual relations, advantageous business relations, and prospective economic advantages
(Counts V, VI, and VII); intentional infliction of emotional distress (Count VIII); deceit (Count
IX); invasion of privacy (Count X); aiding and abetting (Count XV); abuse of process (Count
XVI); libel per se (Count XVII); republication of libel per se (Count XVIII); and breach of
fiduciary duty (Count XIX).

law tort liability under the Westfall Act, 28 U.S.C. § 2679, and that the United States is the proper defendant in their place. Doc. 56 at 23-24. Under the Westfall Act, "[w]hen a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Osborn v. Haley*, 549 U.S. 225, 229-30 (2007) (quoting 28 U.S.C. § 2679(d)(1),(2)). "Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee." *Id.* at 230; *see also Flohr v. Mackovjak*, 84 F.3d 386, 389 (11th Cir. 1996) (citing 28 U.S.C. § 2679(d)(1)). Still, a district court may review the certification, *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995), and the court reviews the scope-of-employment issue *de novo*, *Flohr*, 84 F.3d at 390 (citing *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990)). When a plaintiff challenges the certification, "the Attorney General's certification is prima facie evidence that the employee acted within the scope of his employment," and the plaintiff bears the burden of "altering the status quo by proving that the employee acted outside the scope of employment . . . ." *Id.* (quotation and alteration in original omitted).

Mullane contends that the defendants' alleged acts constitute intentional torts and, therefore, are outside of the scope of their employment.  Doc. 61 at 26-31.[37] Whether the defendants' alleged conduct was within the scope of their employment depends on "'the law of the state where the incident occurred.'"  *Flohr*, 84 F.3d at 390 (quoting *S.J. & W. Ranch, Inc.*, 913 F.2d at 1542).  Thus, the court looks to Florida, and, under Florida law, an employee's conduct is within the scope of his employment when: (1) it is "'of the kind he was employed to perform,'" (2) "occur[s] 'substantially within the time and space limits authorized or required by the work to be performed,'" and (3) is "'activated at least in part by a purpose to serve the master.'"  *Fields v. Devereux Found., Inc.*, 244 So. 3d 1193, 1196 (Fla. Dist. Ct. App. 2018) (quoting *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 357 (Fla. Dist. Ct. App. 2001)).  Thus, intentional torts by an employee may be within the scope of her employment if the employee's "tortious conduct is undertaken in furtherance of the employer's interests." *Id.* (citing *Perez v. Zazo*, 498 So. 2d 463, 465 (Fla. Dist. Ct. App. 1986)).  As a result, Mullane's contention that substitution is improper because he alleges that Greenberg, Lehr, and Roberts engaged in intentional torts, *see* doc. 61 at 28-30, is unavailing.

---

[37] Mullane also asks the court to reject the Attorney General's certification because it "fails to provide any basis at all" to support the statement that Lehr, Greenberg, and Roberts were acting within the scope of their employment.  Doc. 61 at 31-32.  The Westfall Act does not require an attorney general to provide reasons for her certification.  *See Lamagno*, 515 U.S. at 421 ("The certification, as is customary, stated no reasons for the U.S. Attorney's scope-of-employment determination.").

Mullane also contends that substitution is improper because Lehr, Greenberg, and Roberts slandered and defamed him to serve their own purposes, citing *Armstrong v. Thompson*, 759 F. Supp. 2d 89 (D.D.C. 2011), and *Anderson v. United States*, 364 F. App'x 920 (5th Cir. 2010), in support. *Armstrong* and *Anderson* are inapposite, however, because those cases involved defamation claims against a plaintiff's co-workers or subordinate employee,[38] and the defendants in those cases did not have any responsibility for reporting a co-worker's or supervisor's alleged misconduct. *See Armstrong* 759 F. Supp. 2d at 91; *Anderson*, 364 F. App'x at 924. In contrast, here, Lehr served as Mullane's supervisor at the USAO, and had responsibility for evaluating his performance. *See* doc. 45 at 12, 75. Thus, Lehr's prepared and submitted the allegedly defamatory performance evaluation at least in part to serve the USAO's interest. *See id.* Similarly, Roberts, who offered Mullane an unpaid internship with the SEC, was Mullane's superior at the SEC and served the agency's interest by reporting concerns about his conduct to the SEC. *See* doc. 67-15 at 5-6. As a result, Mullane has not shown that under Florida law, Lehr's and Roberts's alleged actions were outside the scope of their employment. *See Fields*, 244 So. 3d at 1196 (citations omitted). In addition, Mullane has not alleged that

---

[38] *Armstrong* involved claims that the plaintiff's co-workers distributed false and defamatory letters about his alleged misconduct to another agency where he had applied for and accepted job, 759 F. Supp. 2d at 94, and *Anderson* involved claims that the plaintiff's subordinate made a false and defamatory report to the agency's office of special counsel regarding her alleged misconduct, 364 F. App'x at 921.

Greenberg took any actions to defame him, *see* doc. 45, and has not pointed to any facts to suggest Greenberg acted outside the scope of his employment, *see* doc. 61. Consequently, Mullane has not satisfied his burden of rebutting the Attorney General's certification. As a result, the United States shall be substituted as the defendant for Lehr, Roberts, and Greenberg in Mullane's state tort claims.[39]

## IV.

To close, Mullane's claims against fictitious defendants Does 1-10 are due to be dismissed. Judge Moreno is entitled to absolute immunity on all claims against him. And, because Mullane did not adequately allege a violation of a clearly established right, the defendants are entitled to qualified immunity on the *Bivens* claims. In addition, Mullane failed to adequately plead violations of RICO and § 1985, and, therefore, the RICO, RICO conspiracy, and § 1985 claims are due to be dismissed. Finally, the United States will be substituted for Lehr, Roberts, and Greenberg as the defendant in Mullane's state law claims, and the state claw claims against those defendants are due to be dismissed. A separate order will be issued.

**DONE** the 29th day of June, 2021.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE

---

[39] Mullane asks to the court to permit discovery to determine the scope of employment issue. Doc. 61 at 31-32. The court declines to do so because "nothing mandates that a district court allow discovery and hold an evidentiary hearing before ruling on a [Westfall Act] certification." *Glover v. Donahoe*, 626 F. App'x 926, 930 (11th Cir. 2015).