UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-21339-AKK

| | |
|---|---|
| JONATHAN MULLANE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| FEDERICO A. MORENO, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This action is before the court on Jonathan Mullane's motions for reconsideration, doc. 91, to vacate, doc. 93, for judicial notice, docs. 101–02, and for a hearing, *id.*; doc. 98.  Mullane asks the court to reconsider its memorandum opinion and order granting the defendants' motion to dismiss, dismissing the claims against the individual defendants, and substituting the United States for defendants Alison Lehr, Benjamin Greenberg, and Lisa Roberts. *See* docs. 78–79.  According to Mullane, the memorandum opinion and order are contrary to controlling law and based on erroneous and improper findings of fact.  Docs. 91–92.  Mullane also contends that the court's order staying discovery, doc. 88, violates his due process rights.  Doc. 93 at 2.  As explained below, Mullane's motions are due to be denied.

I.

Mullane asks the court to take judicial notice of Canon 3(A)(4)(b) of the Code of Conduct for United States Judges and to hold a hearing that is purportedly

mandated by Rule 201(e) of the Federal Rules of Evidence. Docs. 98; 101–02. Taking judicial notice of Canon 3(A)(4)(b) does not help Mullane. As the defendants point out, doc. 103, the Canon provides:

> A judge *may* . . . when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication[.]

Canon 3(A)(4)(b) (emphasis added).[1] The Canon does not state that judges *must* permit ex parte communication for administrative purposes, as Mullane purports it does.[2] *See* doc. 102 at 2.

Further, contrary to Mullane's contention, Canon 3(A)(4)(b) does not show that Mullane's visit to Judge Moreno's chambers and conversation with his law clerk were "neither unethical nor unusual in any way." *See id.* Mullane asserts he went to Judge Moreno's chambers to make an "'administrative' request for a certified copy of the record" from Judge Moreno's clerk. *Id.*; *see also* doc. 45 at 9. However, the hearing transcript that Mullane attached to his second amended complaint, *see*

---

[1] The Code of Conduct for United States Judges is available at https://www.uscourts.gov/sites/default/files/code_of_conduct_for_united_states_judges_effective_march_12_2019.pdf.

[2] In addition, the Eleventh Circuit case Mullane cites for the proposition that a judge "'must take judicial notice if a party requests it and the court is supplied with the necessary information'" quotes Rule 201(c) of the Federal Rules of Evidence, not the Code of Conduct for United States Judges. *See Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014) (quoting Fed. R. Evid. 201(c)) (emphasis omitted); *see also* doc. 102 at 2.

doc. 45 at 62–86, contradicts his belated contention about the purpose of his visit, and when a plaintiff's allegations contradict the contents of an exhibit to the complaint, "the exhibit controls," *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009)). Indeed, the transcript reflects that Mullane visited Judge Moreno's chambers on the day in question because Mullane had questions about the entry of default and a mandamus petition and due to his confusion about the different clerks in the courthouse. *Id.* at 64, 66, 69, 79–80, 83. Therefore, the record belies Mullane's contentions in his motion, and Canon 3(A)(4)(b) offers no relief for Mullane.

Next, Rule 201 of the Federal Rules of Evidence, which governs judicial notice of adjudicative facts, provides that "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Fed. R. Evid. 201(e). Mullane contends that the court erred by taking judicial notice of facts from the underlying lawsuit, *Mullane v. Barclays Bank Delaware*, without first giving him a chance to be heard. Doc. 102 at 2–3. However, the court only relied on or quoted documents from the lawsuit that Mullane attached to his amended complaint. *See* doc. 78. Mullane has not cited authority for the proposition that Rule 201 applies to the contents of documents attached to a complaint or provides a right to a hearing when a court considers exhibits to the complaint in ruling on a motion to dismiss. *See* doc. 98. Courts routinely consider attachments to complaints when

3

ruling on motions to dismiss without first holding hearings. *Cf. Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (ordinarily, courts consider only "the face of the complaint and documents attached thereto when analyzing a motion to dismiss"). Therefore, Mullane's request for a hearing is denied.

## II.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Compania de Elaborados de Café v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1283 (S.D. Fla. 2003). A motion for reconsideration is not to be used "as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Id.* In this case, Mullane's motion improperly presents arguments that he previously raised or could have raised before the court issued its decision. In addition, Mullane fails to show that the court made a manifest error of law or fact.

## A.

Mullane contends first that the court erred by dismissing the claims against Judge Moreno based on judicial immunity because the allegations in the second amended complaint establish that Judge Moreno did not act in his judicial capacity. Docs. 91 at 1; 92 at 2–3. However, Mullane's conclusory allegation "[was] not entitled to the assumption of truth" when the court ruled on the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, the hearing transcript,

4

order, and letter that Mullane attached as exhibits to the complaint[3] contradict Mullane's allegations, *see* doc. 45 at 57–91, and again, when "the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls," *Hoefling*, 811 F.3d at 1277 (citing *Crenshaw*, 556 F.3d at 1292). Thus, Mullane has not shown that the court made any manifest error of law or fact by relying on the attached contents of the allegedly defamatory hearing transcript, order, and letter in ruling on the motion to dismiss.

Mullane also contends the court order is contrary to *Harper v. Merckle*, 638 F.2d 848 (5th Cir. 1981).[4, 5] Docs. 91 at 1; 92 at 2–3. In *Merckle*, the Fifth Circuit found that Judge Arden Merckle, a Florida county judge, was not entitled to judicial immunity for § 1983 claims based on a "contempt proceeding" Judge Merckle held in his chambers that resulted in the judge finding Jack Harper in contempt of court rules and ordering Harper to be held in jail for three days. 638 F.2d at 853–59. The

---

[3] Because the hearing transcript, order, and letter are exhibits to the second amended complaint and central to Mullane's claims, and their contents are not in dispute, the court could properly consider them in ruling on the defendants' motion to dismiss. *See Fin. Sec. Assur., Inc.*, 500 F.3d at 1284.

[4] Mullane raised this contention after briefing was complete on the defendants' motion and shortly before the court issued its order. *See* doc. 77. Because the court did not explicitly address Mullane's arguments related to *Merckle* in its memorandum opinion, doc. 78, it does so now.

[5] Decisions the Fifth Circuit issued prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Fifth Circuit "caution[ed] that [its] holding is exceedingly narrow" and tailored to the rare facts of the case. *Id.* at 859.

Unsurprisingly, the facts in *Merckle* are markedly different than in the present case. In *Merckle*, Harper went to the courthouse for personal reasons instead of matters related to a pending case, like Mullane. In particular, Harper sought to deliver a support payment check to his former wife, who worked as a secretary for another judge. 638 F.2d at 850. Judge Merckle overheard Harper's query regarding his former wife's whereabouts and proceeded to hold an impromptu hearing regarding Harper's alleged failure to pay child support—an incorrect fact that Judge Merckle gleaned from courthouse gossip—even though the judge had never presided over the Harpers' divorce proceedings and had no jurisdiction over Harper. *Id.* at 850–54. In short, unlike Mullane, Harper did not visit the judge in the judge's official capacity, and the hearing Judge Merckle held did not center on any dispute pending before the judge. *Id.* at 859. Mullane's reliance on *Merckle* is therefore misplaced.

In summary, Mullane has not shown any manifest error in the court's order dismissing the claims against Judge Moreno. Thus, his motion to reconsider is due to be denied as to those claims.[6]

---

[6] Mullane also argues that Judge Moreno is not entitled to judicial immunity with respect to the allegedly defamatory letter because he acted without subject matter jurisdiction. Doc. 92 at 3. The court already considered and rejected that argument. Doc. 78 at 14–16. Thus, it is not a proper basis for a motion to reconsider. *See Compania de Elaborados de Café*, 401 F. Supp. 2d at 1283.

6

**B.**

Mullane next argues that the court erred by finding that Alison Lehr, Benjamin Greenberg, and Lisa Roberts are entitled to qualified immunity on his *Bivens* claims because (1) the defendants acted outside the scope of their discretionary authority and (2) Mullane alleged violations of clearly established rights. Doc. 92. Neither of these arguments are persuasive.

To begin, in his opposition to the defendants' motion to dismiss, Mullane did not contend that the defendants' qualified immunity defense failed because they acted outside of the scope of their discretionary authority. *See* doc. 61 at 17–22. Because Mullane could have raised this issue before the court ruled on the motion to dismiss, it is not a proper basis for a motion to reconsider. *See Compania de Elaborados de Café*, 401 F. Supp. 2d at 1283.

Mullane also argues that the defendants violated clearly established constitutional rights under the First, Fourth, and Fifth Amendments. Doc. 92 at 4–7. However, Mullane failed to specifically plead a First Amendment violation for retaliation in the first instance, much less raise the issue in his opposition to the defendants' motion to dismiss. *See* docs. 45 at 38–40; 61 at 13–16. Additionally, though Mullane asserts a Fourth Amendment violation on the basis of the allegedly unlawful seizure of his *person* at the hearing before Judge Moreno, *see* doc. 92 at 5, he did not plead this in his complaint, either. *See* doc. 45 at 38–40. Finally, Mullane

7

does not otherwise demonstrate that the court made manifest errors when it found that the defendants' conduct did not violate Mullane's Fourth or Fifth Amendment rights. And, to the extent that Mullane's motion to reconsider raises arguments based on purported Fourth and Fifth Amendment injuries he actually pleaded, the court already considered and rejected these arguments.

## C.

Finally, Mullane asks the court to vacate its order staying discovery pending the outcome of the United States' motion to dismiss. Doc. 93. Mullane principally claims that the court must vacate its order because the court stayed discovery before he responded to the defendant's motion to stay. *See id.* But it is well-established that district courts have broad discretion "to ensure that their cases move to a reasonably timely and orderly conclusion." *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). And district courts can—and do—stay discovery pending the outcomes of dispositive motions, given that these motions obviously "may dispose of the entire action." *See Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003) (collecting cases). That is precisely what occurred here. The United States filed a motion to dismiss, doc. 81, and before the court ruled on it, the United States filed a motion to stay discovery, doc. 87. The court subsequently granted the motion to stay discovery "pending a ruling on the motion to dismiss," doc. 88, and Mullane voluntarily dismissed his remaining claims soon

after, doc. 89, rendering moot the United States' earlier motion to dismiss. It was for good cause that the court stayed discovery; the court's resolution of the motion to dismiss might have disposed of the case had Mullane not voluntarily dismissed his remaining claims independently.

Moreover, once Mullane voluntarily dismissed his claims against the United States, no claims remained for resolution. In other words, the case was closed, *see* doc. 90, and will remain closed in light of the denial of the motion to reconsider. Accordingly, the court sees no basis for vacating its order staying discovery.

### III.

Mullane's motions for judicial notice, docs. 101–02, a hearing, *id.*; doc. 98, reconsideration, doc. 91, and to vacate, doc. 93, are **DENIED**.

**DONE** the 6th day of October, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE