IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

FILED BY_____ D.C.

MAR 20 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

JONATHAN MULLANE,

　　*Plaintiff,*

v.

UNITED STATES OF AMERICA, ET AL.,

　　*Defendants.*

Civ. A. No. 1:20-cv-21339
Hon. Liles C. Burke

**PLAINTIFF JONATHAN MULLANE'S OPPOSITION
TO DEFENDANT LEHR'S
SCOPE-OF-EMPLOYMENT CERTIFICATION**

Plaintiff Jonathan Mullane ("Plaintiff") in the above-entitled action hereby respectfully opposes the scope-of-employment certification[1] of Defendant Alison W. Lehr a/k/a Alison Fryd. *See generally* Oct. 9, 2020, Certification of Scope of Employment of United States Attorney Ariana Fajardo Orshan, Doc. 56-2 ("On the basis of the information *now available* with respect to the allegations contained in the second amended complaint, I certify that defendants Benjamin G. Greenberg[,] Alison W. Lehr [a/k/a Alison Fryd], and Lisa T. Roberts[] were acting within the scope of their employment as employees of the United States at the time of the incidents alleged in the second amended complaint.").

---

[1]　　This document is interchangeably referred to as a Westfall Act certificate.

*Mullane v. United States, et al.*

The above Westfall Act certificate does not deny that the alleged incidents took place as a factual matter—nor could it do so truthfully. Separately, the certificate does not state what facts or propositions of law, if any, are being relied upon to support the unusual conclusion that smearing a coworker in the national media and leaking information somehow falls within the scope of employment of government employees, their respective duties, or their respective job descriptions (it does not, as the Eleventh Circuit pointed out in its opinion). Nor does the certificate set forth any legal or factual basis whatsoever allowing the United States Attorney to arrive at such a conclusion. *Contra, e.g., Melo v. Hafer*, 13 F.3d 736, 737 (3rd Cir. 1994) (requiring Attorney General to "state the basis for his or her conclusion" within the scope-of-employment certificate). Further, the certificate does not contend that one or more of the allegations set forth in the Second Amended Complaint [Doc. 45] is somehow factually false or inaccurate. It does not identify any specific paragraphs therein which, if proven true at the time of trial, would nevertheless fall within Defendants' respective employments as employees of the United States Government. But rubber-stamping a Westfall Act certificate based solely on Defendants' respective titles and positions is not permitted as a matter of law.

Without citing to even a single provision of the Code of Federal Regulations (CFR) pertaining to the specific professional roles and responsibilities of

*Mullane v. United States, et al.*

Department of Justice (DOJ) employees, the Government's Westfall Act certificate improperly assumes that Defendants were necessarily acting within the scope of employment merely because they happen to have been federal employees at the time the tortious conduct occurred. Further, the Westfall Act certificate tellingly fails to cite to the applicable DOJ regulations pertaining to communications with the press. Why? Because both the CFR and Justice Manual specifically prohibit federal employees such as Defendant Lehr from communicating with the press—*i.e.*, regardless of whether they are leaking public or private information, regardless of whether the information is factually true or false, and regardless of whether or not they are smearing a coworker. *See, e.g.*, Justice Manual § 1-7.000, Confidentiality and Media Contacts Policy, https://www.justice.gov/jm/jm-1-7000-media-relations#1-7.531; 28 C.F.R. § 16.22 ("General Prohibition of Production or Disclosure in Federal and State Proceedings in Which the United States Is not a Party"); Memorandum of United States President Donald J. Trump, Addressing Risks Associated with an Egregious Leaker and Disseminator of Falsehoods, __ Fed. Reg. __ (Apr. 9, 2025); Memorandum of the United States Attorney General, Updated Policy Regarding Obtaining Information from, or Records of, Members of the News Media (Apr. 25, 2025); Privacy Act of 1974, 5 U.S.C. § 552a.

*     *     *

With respect to Defendant Lehr specifically, the Second Amended Complaint

[Doc. 45] plausibly alleges that Lehr defamed and smeared Plaintiff by leaking the April 10, 2018, hearing transcript to national media outlets. Put simply, Lehr conspired with numerous other federal employees and members of the judiciary to create a false pretext to terminate Plaintiff's DOJ employment. Those unlawful efforts included, without limitation, arranging the April 10, 2018 hearing and then leaking the transcript. In fact, it was Defendant Lehr—and Lehr alone—who specifically requested that Plaintiff order the hearing transcript for her. No one else had ordered it, the hearing transcript was not electronically available on PACER at the time of the media leak (parties have 30 days within which to request redactions and/or modifications, and the *Above the Law* article was published *before* the 30-day period elapsed), and Lehr was the only person to ask Plaintiff to email a PDF copy of the document (no one else made such a request).

The operative complaint [Doc. 45] contains numerous averments which, if true, constitute sufficient facts to satisfy the "plausibility" requirement of *Iqbal* and *Twombly* since they establish the means, motive, and opportunity for Lehr to leak the April 10, 2018, hearing transcript to the media.[2] On appeal, the Eleventh Circuit

---

2    Pursuant to Fed. R. Civ. P. 10(c), Plaintiff hereby adopts and incorporates herein by reference the Second Amended Complaint [Doc. 45] in its entirety. The said Complaint is lengthy, and contains numerous allegations pertaining to Defendant Lehr specifically. All of those averments, collectively, easily satisfy the threshold "plausibility" standard of *Iqbal* and *Twombly* thereby: (i) warranting limited discovery; and (ii) effectively challenging and rebutting the Westfall Act certification (as a matter of law, courts must apply the exact same legal standard for such challenges as for Rule 12 motions to dismiss). Without limitation, all of the complaint's allegations establish the means, motive, and opportunity for Lehr to leak the April 10, 2018,

*Mullane v. United States, et al.*

determined that Lehr's leaking of documents to the press—as alleged in the Second Amended Complaint [Doc. 45]—falls squarely outside the scope of her DOJ employment, since leaking transcripts to the media is not within an AUSA's job description. The Complaint sets forth, without limitation, the following averments:

(i)     ¶ 76: After the subject April 10, 2018 hearing Defendant Lehr transmitted or deliberately caused to be transmitted, with the knowledge and consent of the other Defendants, a copy of the non-public transcript to Breaking Media Inc.'s Above the Law publication and its Chief Editor Elie Mystal in New York, New York, together with other court documents referencing the April 10, 2018 hearing.

(ii)    ¶ 80: Other persons and/or entities to whom Lehr transmitted the defamatory April 10, 2018 hearing transcript, together with other court documents referencing the said hearing, included, *without limitation*[3]: (i) National online publivation *Law360* and its Miami-based reporter Carolina Bolado; (ii) Numerous Assistant United States Attorneys, including *inter alia* AUSA Michelle Alvarez []; and (iii) Numerous University of Miami employees.[4]

Doc. 45. As the Eleventh Circuit appropriately held, the above-referenced allegations are factually and legally similar to those seen in *Nadler v. Mann*, 951 F.2d 301, 303 (11th Cir. 1992) (Tjoflat, J.) ("Nadler alleges that Mann slandered and

---

hearing transcript to the media. Even assuming *arguendo* that some (but not all) of those alleged acts may have been *within* the scope of Lehr's employment, that obviously does not prevent Plaintiff from citing and relying upon them in order to satisfy the "plausibility" standard for Lehr's other acts which were *outside* the scope of employment (*e.g.*, leaking information to the press). For the purposes of the instant challenge to Westfall Act certification, all of those allegations must be construed as being true. This includes the allegations relating to the conspiracy between Defendants Lehr, Moreno, Greenberg, and others to falsely accuse Plaintiff of misconduct as a pretext to terminate his federal employment—thereby protecting the integrity of their *mala fide* Venezuela-related cases [*see, e.g.*, Doc. 45 ¶¶ 13-19].

3       Defendants also contacted other local and national media outlets. These include *Universal Hub* in Boston, Massachusetts, in addition to other websites.

*Mullane v. United States, et al.*

defamed him by *initiating the investigation* into his behavior and then by *leaking the story of the investigation* to the press.").

I.    THE ELEVENTH CIRCUIT HAS ALREADY DETERMINED THAT DEFENDANT LEHR'S ALLEGED CONDUCT, IF TRUE, IS NOT WITHIN THE SCOPE OF HER EMPLOYMENT AS A MATTER OF LAW; PURSUANT TO THE LAW-OF-THE-CASE DOCTRINE, DEFENDANTS ARE BARRED FROM RELITIGATING THIS ISSUE.

Relying upon *inter alia* its own binding precedent in *Nadler v. Mann*, 951 F.2d 301 (11th Cir. 1992), the Eleventh Circuit has conclusively determined that Defendant Lehr's conduct, if true, was comfortably outside the scope of her federal employment.[5] Op. at 16 ¶ 2, 17 ¶ 2-3 ("Our decision in *Nadler v. Mann*, 951 F.2d 301 (11th Cir. 1992), supports the conclusion that, based on the allegations of the complaint, Lehr's alleged transmission of the hearing transcript falls outside the scope of her federal employment."). So that is the end of the matter. Pursuant to the law-of-the-case doctrine, Defendants cannot now re-litigate this particular question of law, and this Court is required to assume that the alleged media leaks—if factually true—fall outside Defendant Lehr's scope of employment as a matter of law. Defendants' arguments are thus limited to factual ones (for instance, that they conducted some sort of internal investigation which determined, as a factual matter, that someone else was actually responsible for the alleged media leaks) as opposed

---

[5]    "Scope of employment" for the purposes of § 2679(d) "is defined by the respondeat superior law of the state where the incident occurred." *Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir. 1995).

*Mullane v. United States, et al.*

to legal ones.

Under the law-of-the-case doctrine, all "conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal. Furthermore, the law-of-the-case doctrine bars relitigation of issues that were decided either explicitly or by necessary implication." *Diaz v. Kaplan University*, 2016 WL 3661483 at \*1 (S.D. Fla. July 1, 2016) (quotations omitted); *The Original Brooklyn Water Bagel Co. v. Bersin Bagel Group, LLC*, 817 F.3d 719, 728 (11th Cir. 2016) (same); *This That & The Other Gift & Tobacco, Inc. v. Cobb County, GA*, 439 F.3d 1275, 1283 (11th Cir. 2006).

II.   THE SECOND AMENDED COMPLAINT, IF CONSTRUED AS BEING FACTUALLY TRUE, SUFFICIENTLY REBUTS THE WESTFALL ACT CERTIFICATION BECAUSE: (1) THE COURT IS REQUIRED TO APPLY THE SAME LEGAL STANDARD AS FOR MOTIONS TO DISMISS, ACCEPTING ALL PLAUSIBLE ALLEGATIONS AS TRUE; AND (2) AS A MATTER OF LAW, PLAINTIFF IS NOT REQUIRED TO "PROVIDE ALL EVIDENCE" THAT THE ALLEGED ACTS OCCURRED AT THE PRESENT TIME SINCE DISCOVERY HAS YET TO BE CONDUCTED.

*First*, for the purposes of the instant motion challenging Westfall Act certification, this Court must apply the same standard as for Rule 12 motions to dismiss. *See, e.g., Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013) (applying a motion-to-dismiss standard for challenges to scope-of-employment certification; "In determining whether the plaintiff has alleged facts to rebut the [Westfall Act] certification, we heed the Supreme Court's instruction [in *Iqbal* and *Twombly*]: To survive a motion to dismiss, a complaint must contain sufficient factual matter,

*Mullane v. United States, et al.*

accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *McLachlan v. Bell*, 261 F.3d 908 (9th Cir. 2001) (deciding issue of Westfall Act certification and holding that "because no evidentiary hearing was held, we accept as true the factual allegations in the complaint").

*Second*, Plaintiff is not required to "provide all evidence" that the alleged acts occurred at the present time. *Contra* Doc. 137 at 2 ¶ 1 ("Plaintiff must also provide all evidence that the alleged act, or acts, occurred, and that the alleged act, or acts, occurred outside the scope of employment"). The case law is clear on this particular point: challenging Westfall Act certification requires that the reviewing court apply a pre-discovery, motion-to-dismiss standard. The reviewing court is not permitted to apply a post-discovery, summary-judgment standard, requiring that the moving party attach supporting evidence to his or her motion.

Imposing such a requirement would give rise to reversible error. At this early stage of the proceeding, the Court is required to: (1) fully credit Plaintiff's allegations vis-à-vis Defendant Lehr's alleged media leaks as being factually true; and (2) thereupon consider and analyze whether Defendant Lehr's media leaks—if proven true at trial—would nevertheless fall outside the scope of her employment. But requiring Plaintiff to produce anything else—*e.g.*, concrete proof and/or

*Mullane v. United States, et al.*

evidence of Defendant Lehr's defamation, and at the pre-discovery stage no less—means that the Court is no longer applying the applicable motion-to-dismiss standard. Naturally, on a motion to dismiss, courts are not permitted to require that plaintiffs produce evidence. Rather, the reviewing court must assume that the plaintiff's allegations are all factually true. Otherwise, if such were not the case, it would make little sense for Congress to specifically provide for a right to discovery in crafting Fed. R. Civ. 26. *A fortiori*, nothing in Fed. R. Civ. P. 12 requires that a plaintiff make his case on Day One, and allowing the defendant to have the entire complaint dismissed on "plausibility" grounds before discovery has yet to even commence.

To be sure, in its opinion, the Eleventh Circuit did indeed state that "the district court must decide, in the first instance, whether the relevant acts alleged by Mullane did *in fact* occur." Op. at 22 ¶ 2 (emphasis in original). But nowhere did the Eleventh Circuit state: (1) that that factual determination must occur prior to limited discovery and/or an evidentiary hearing (*i.e.*, a holding which would create an undesirable circuit split); or (2) that a summary-judgment standard requiring the production of evidence should apply instead of the motion-to-dismiss standard, which is the correct legal standard for Westfall Act certification challenges such as this one. *See Vrobel*, 724 F.3d; *McLachlan*, 261 F.3d.

III.   THE DOCTRINES OF RES IPSA LOQUITUR AND BURDEN SHIFTING BOTH
       APPLY IN MEDIA-LEAK CASES SUCH AS THIS ONE; PLAINTIFF IS NOT

*Mullane v. United States, et al.*

REQUIRED TO PROVE HIS CASE WITHOUT THE BENEFIT OF DISCOVERY, AND THE RELEVANT INFORMATION IS IN THE POSSESSION AND CONTROL OF DEFENDANTS AND THE SUBJECT JOURNALISTS.

In media-leak cases such as the case at hand, at the pre-discovery, motion-to-dismiss stage of the proceeding, plaintiffs are not required to allege who said what when, how, why, *etc*. Moreover, plaintiffs are not even required to allege the specific identity of the leaker(s). Why? Because all of the above information is obviously in the possession of the defendants, the Government, the individual leakers, and the journalists who published the leaked information—not in the plaintiff's. In the typical media-leak case, as the Supreme Court of the United States can confirm from its own recent media leaks, *cf.* Kelsey Dallas, *Will the Mystery of the* Dobbs *Leak Ever Be Solved?* SCOTUSblog (Mar. 6, 2026), there is rarely any hard evidence at the plaintiff's disposal prior to discovery, and at the pleading stage of the proceeding. Were the law different, and if courts could lawfully demand that plaintiffs prove, on Day One, who did the leak, when, and how, no media leaker would ever be held accountable for his or her actions. This is because, as previously noted, only the defendants and journalists have that information—not the plaintiff. And all of that information can easily be obtained through serving routine discovery requests. Similarly, since the Supreme Court did not have any "smoking gun" document proving the identity of the *Dobbs* leaker (*e.g.*, a judge, clerk, or hacker) or the precise means through which the leak was effectuated (*e.g.*, email or other electronic

*Mullane v. United States, et al.*

transmission, paper copies, copying the leaked document from a judge's computer via a USB card, *etc.*), it conducted its own discovery in an effort to obtain that information (*e.g.*, questioning clerks under the pains and penalties of perjury). In other words, the Court was not required to put the proverbial cart before the horse: it did not *first* determine the specific clerk responsible for the leak, and then subsequently proceed to interview that individual.

*First*, the foregoing is analogous to the legal doctrine of *res ipsa loquitur*. The Court knew that a media leak had occurred, and had a list of suspects. But without discovery, it could not possibly have proven, by a preponderance of the evidence, the identity of the leaker. Nor could it have shown who did what when, why, how, *etc.* Rather, the only thing the Court knew was that certain documents had somehow ended up on the internet, and that only a certain number of individuals had access to those particular documents—nothing more. Naturally, the Court did not have in its possession a copy of the exact email from the leaker to *Politico*. *Compare* Bernard Bell, *Privacy Act Litigation and the Journalist Privilege*, YALE J. ON REG., Notice & Comment (Oct. 13, 2025) (*[R]es ipsa loquitur* applicable in the "government leak scenario" (citing RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL & EMOTIONAL HARM § 17, comm. f)); *with Feldman v. CIA*, 797 F. Supp. 2d 29, 38 (D.D.C. 2011) (in media-leak cases, case law did not require plaintiff to allege full details of disclosure at pleading stage since "in the typical case, a plaintiff can hardly

*Mullane v. United States, et al.*

be expected to know the full details behind an improper disclosure prior to discovery, since those details are most likely to be under the control of the defendant"); *Krieger v. Fadely*, 211 F.3d 134, 136-37 (D.C. Cir. 2000) ("If his lawsuit went forward, there would come a time when [plaintiff] would have to identify the particular records [defendant] unlawfully disclosed. But that point surely was not as early as the pleading stage."); *Tripp v. DOD*, 193 F. Supp. 2d 229, 237 (D.D.C. 2002) (following *Krieger* and "the liberal pleading standard permitted by the Federal Rules of Civil Procedure"); *Tripp v. DOD*, 219 F. Supp. 2d 85, 89-91 (D.D.C. 2002) (where complaint merely alleged that a "specific defendant repeatedly released information about plaintiff to the press and public . . . including but not limited to the contents of plaintiff's security forms and other personnel files," plaintiff was not required to "plead facts to further elaborate which records were released, by which DOD officials, to which members of the press or public, or on which specific dates"); *Johnson v. Rinaldi*, No. 1:99CV170, 2001 WL 677306, at *5-6 (M.D.N.C. Apr. 13, 2001).

*Second*, a separate but equally applicable doctrine is that of burden shifting. In media-leak cases such as this one, numerous courts have shifted the burden of production to the Government since the proof and relevant evidence are typically already in its possession (in addition to being in the possession of the journalist), and since the Government is better equipped to identify the leaker. Bell, *supra*

*Mullane v. United States, et al.*

("[F]orcing the Government to bear the burden of production [in media-leak cases] will encourage agencies to engage in substantial efforts to identify the employee or employees responsible for the [] breach" since it is "in a better position than a private citizen to ferret out the leaker."). By way of analogy, such burden shifting is also applicable in the employment-discrimination context. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55, 258 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

IV.   THE COURT IS REQUIRED TO HOLD AN EVIDENTIARY HEARING OR GRANT
      LIMITED DISCOVERY BECAUSE A GENUINE FACTUAL DISPUTE EXISTS.

   A.   *Limited discovery and/or an evidentiary hearing is necessary as a
        matter of law.*

Limited discovery and/or an evidentiary hearing is in order here because the parties are presently in disagreement as to an issue of material fact—namely, whether Defendant Lehr leaked, or caused to be leaked, the April 10, 2018 hearing transcript to the media. Consistent with the holdings of the Supreme Court of the United States in *Osborn v. Haley*, 549 U.S. 225 (2007) and *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995), sister circuits have held that a plaintiff challenging a scope-of-employment certification is entitled to either (i) a presumption of the truthfulness of the complaint's allegations, or (ii) limited discovery and/or an evidentiary hearing. *See, e.g.*, *Kashin v. Kent*, 457 F.3d 1033, 1043 (9th Cir. 2006) (denial of an evidentiary hearing regarding Attorney General's certification is only

*Mullane v. United States, et al.*

proper if "the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material fact" (citing *Gutierrez de Martinez v. DEA*, 111 F.3d 1148 (4th Cir. 1997)); *Stokes v. Cross*, 327 F.2d 1210, 1213-16 (D.C. Cir. 2003) (limited discovery was appropriate because the complaint alleged facts which, if true, rebutted the scope of employment); *Tripp v. Executive Office of the President*, 200 F.R.D. 140 (D.D.C. 2001) (holding that discovery, briefing, and an evidentiary hearing were all proper to determine scope of employment); *Melo v. Hafer*, 13 F.3d 736, 737 (3rd Cir. 1994) (in the event of a factual disagreement, plaintiff "should be permitted reasonable discovery" as if responding to a motion for summary judgment).

In *Stokes*, 327 F.2d 1210, the district court dismissed the complaint after the Attorney General certified a defendant without first providing the plaintiff a meaningful opportunity to conduct discovery. At 1211. On appeal, the D.C. Circuit reversed, faulting the district court for "essentially afford[ing] conclusive weight to AUSA Nagle's certification and apparently [giving] no thought to the possibility that the certification may have been in error." *Id.* at 1215. Citing *Kimbro v. Velten*, 30 F.3d 1501 (D.C. Cir. 1994), the D.C. Circuit reversed and remanded in order to provide the plaintiff an opportunity to conduct limited discovery and thereupon provide the court with evidence. *Id.* at 1216.

In *Vrobel*, 724 F.3d, the D.C. Circuit elucidated the proper procedure that

*Mullane v. United States, et al.*

district courts must follow in situations such as this one, where the plaintiff is

challenging the Westfall Act certificate:

> In a Westfall Act case, we consider <u>more than the allegations in the complaint to determine whether the defendant acted in the scope of his employment</u>.[6] *See Osborn*, 549 U.S. at 249, 127 S.Ct. 881. The Attorney General's certification that the defendant was so acting is *prima facie* evidence of that fact. *Ballenger*, 444 F.3d at 662; *see also Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008) ("The certification carries a rebuttable presumption that the employee has absolute immunity from the lawsuit and that the United States is to be substituted

---

[6]    *Contra* Doc. 137 at 137 ¶ 3 (March 3, 2026, order preventing Plaintiff from citing or relying upon any tortious acts other than those which are specifically set forth in the Second Amended Complaint, *i.e.*, a document which is out of date since it was filed nearly six years ago ("Plaintiff shall neither include nor refer to any acts that are not specifically pled in the Second Amended Complaint")). In addition to giving rise to reversible error since it is diametrically opposed to *Osborn, Stokes, Vrobel,* and other case law on this issue, the foregoing limitation imposed by the Court unfortunately hamstrings Plaintiff's ability to meaningfully rebut the scope-of-employment certification. Such limitations further justify the allowance of limited discovery in the case at bar.

Separately, it should be noted that one of the challenges that both Plaintiff and the Court itself are presently confronted with is the basic fact that the Westfall Act certificate—signed nearly six years ago by former United States Attorney Ariana Fajardo Orshan, who is no longer a federal employee—is impermissibly terse, and thus defective as a matter of law. It leaves one in the dark vis-à-vis the United States Attorney's thought process and rationale. Not only is the document conspicuously devoid of any legal or factual arguments, it does not even state the reason(s) why she was signing it, why she thought it was appropriate, or what the underlying basis was. *Contra, e.g., Melo v. Hafer*, 13 F.3d 736, 737 (3rd Cir. 1994) (requiring Attorney General to "state the basis for his or her conclusion" within the scope-of-employment certificate). For instance, did the United States Attorney sign the Westfall Act certificate because she subjectively believed that the alleged communications with the media, if true, were somehow within the scope of employment as a matter of law? Or conversely, did she sign the certificate because she conducted some sort of internal investigation which found that Defendant Lehr was not responsible for the media leak, and that it was actually another federal employee? Without more, we simply cannot know; nor can Defendants' recently-retained counsel possibly have such knowledge since the former United States Attorney resigned from her federal employment years earlier. And without limited discovery, it is simply not possible to meaningfully rebut one or more arguments and/or factual allegations vis-à-vis Westfall Act certification if one is completely unaware of the very arguments he is supposed to be rebutting. That makes no sense. It is analogous to asking a lawyer to show up to a court hearing and litigate a case, but without telling him what the case is even about. As a result, Plaintiff and the Court are left guessing. And Plaintiff cannot be faulted for the glaring deficiencies in the Government's own Westfall Act certificate, which Defendants themselves chose to submit to this Court (not Plaintiff). *Melo*, 13 F.3d at 737.

*Mullane v. United States, et al.*

as the defendant."). To rebut the certification, the plaintiff must allege, <u>in either the complaint or a subsequent filing</u>,[7] specific facts "that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment." *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003). <u>If the plaintiff satisfies this burden, "he may, if necessary, attain 'limited discovery' to resolve any factual disputes over jurisdiction." *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) (quoting *Stokes*, 327 F.3d at 1214, 1216).</u>

*Id.* at 220-21 (emphasis supplied). The above-referenced right to limited discovery described by the D.C. Circuit is also in accordance with the Third Circuit's holding in *Melo v. Hafer*, 13 F.3d 736 (3rd Cir. 1994). In that case, the Third Circuit observed in relevant part:

> If the Attorney General's certification is based on a different understanding of the facts than is reflected in the complaint, <u>the plaintiff should be permitted reasonable discovery</u> and should then be called upon to come forward, as if responding to a motion for summary judgment, with competent evidence supporting the facts upon which he would predicate liability, as well as any other facts necessary to support a conclusion that the defendant acted beyond the scope of his employment.

*Id.* at 747 (emphasis supplied).

B.    *Forms of discovery sought.*

In the instant case, routine discovery requests—*e.g.*, requests for the production of documents to be served on the subject journalists,[8] requiring that they

---

[7]    *Id.* ¶ 1.

[8]    In federal court, journalists can lawfully be compelled to disclose sources of news articles through discovery requests and subpoenas; there is no presumption of confidentiality. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665 (1972); Memorandum of United States President Donald J. Trump, Addressing Risks Associated with an Egregious Leaker and Disseminator of Falsehoods,

*Mullane v. United States, et al.*

provide the identity of the leaker, how the leak was effectuated, remuneration received, the totality of the information leaked, and the other surrounding circumstances of the leak—will easily allow Plaintiff to prove Defendant Lehr's liability, and that she was acting outside the scope of her employment. At this time,[9] Plaintiff respectfully requests limited discovery—narrowly-tailored and limited to the defamation claim against Defendant Lehr, as required by the Eleventh Circuit's opinion—in the form of interrogatories, requests for production of documents, requests for admissions, and depositions, and specifically served upon the following individuals and/or entities: (1) Defendant Alison W. Lehr a/k/a Alison Fryd; (2) *Universal Hub*, a Boston-based website; (3) journalist Adam Gaffin, owner of *Universal Hub*; (4) Portfolio Media, Inc. (*Law360*); (5) *Law360* reporter Carolina Bolado; (6) Breaking Media (*Above the Law*); (7) journalist Elie Mystal, previously employed as the chief editor of *Above the Law* and author of one of the subject news articles; (8) Defendant Benjamin G. Greenberg, who communicated directly with Lehr about the *Above the Law* article and thereupon widely circulated it within the Miami USAO; (9) PayPal Holdings, Inc., the payment processor used by *Universal*

---

__ Fed. Reg. __ (Apr. 9, 2025); Memorandum of the United States Attorney General, Updated Policy Regarding Obtaining Information from, or Records of, Members of the News Media (Apr. 25, 2025).

[9]     Should the above-requested limited discovery lead to other sources of information and/or targets for discovery requests, Plaintiff shall confer with Defendants and submit a separate motion requesting additional discovery.

*Mullane v. United States, et al.*

*Hub* and Gaffin[10]; (10) AUSA Adrienne Rosen, who spoke with Lehr about the *Above the Law* article; and (11) the Executive Office for United States Attorneys, which also communicated directly with Lehr about the *Above the Law* article.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that an order issue:

(i)     granting all of the above-requested relief;

(ii)    resubstituting Defendant Lehr as the named Defendant;

(iii)   striking the United States' Westfall Act certificate for Defendant Lehr;

(iv)    granting the limited discovery[11] requested herein, *supra*, narrowly

tailored to the libel claim; and

(v)     such other and further relief as the Court may deem just and proper.

At Cambridge, Massachusetts,
This 19th Day of March, 2026.

Respectfully submitted,

/s/ Jonathan Mullane
JONATHAN MULLANE
30 Donnell Street
Cambridge, Massachusetts 02138
Tel. (617) 800-6925

*Plaintiff Pro Se*

---

[10]    The *Universal Hub* website solicits "donations" for its articles and contains a link to PayPal.

[11]    In the alternative, Plaintiff respectfully requests that the Court schedule and hold an evidentiary hearing.

*Mullane v. United States, et al.*

## CERTIFICATE OF CONFERRAL

Pursuant to L.R. 7.1(a)(2), the undersigned hereby certifies that he previously conferred telephonically with counsel for Defendants regarding the issues presented in this filing. Counsel indicated that he did not assent to the relief requested herein.

/s/ Jonathan Mullane
JONATHAN MULLANE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 19, 2026, he caused to be served a true copy of the foregoing filing on counsel for Defendants via electronic correspondence, and specifically addressed as follows:

Anthony Erickson-Pogozelski, Esq.
U.S. Attorney's Office
99 N.E. 4th Street, Suite 335
Miami, Florida 33132
Tel. (305) 961-9296
Anthony.pogorzelski@usdoj.gov

/s/ Jonathan Mullane
JONATHAN MULLANE

B. JONATHAN MULLANE
30 DONNELL STREET
CAMBRIDGE, MASSACHUSETTS 02138, U.S.A.
T. +1 (617) 800-6925
F. +1 (617) 661-2005

VIA FEDERAL EXPRESS

March 19, 2026

Ms. Angela E. Noble
Wilkie D. Ferguson, Jr. U.S. Courthouse
400 North Miami Avenue
Room 8N09
Miami, Florida 33128

Re:     *Mullane v. Moreno, et al.*, 1:20-cv-21339 (S.D. Fla.)

Dear Ms. Noble:

Enclosed herewith please find the following filings in the above-styled case:

(i)     "Plaintiff Jonathan Mullane's Opposition to Defendant Lehr's Scope-of-Employment Certification;" and
(ii)    Certificate of service.

Kindly file same in your usual manner, and by using color, double-sided scanning. Thank you for your courtesy and assistance in this matter.

Very truly yours,

/s/ Jonathan Mullane

c:      Counsel of record

661-9000
PETER MULLANE
MULLANE MICHEL & MCINNES
6 BENNETT ST

CAMBRIDGE, MA 02138
UNITED STATES US

TO  **MS. ANGELA E. NOBLE**
**U.S. COURTHOUSE**
**400 NORTH MIAMI AVEN**
**(ROOM #8NO9)**
**MIAMI FL 33128**
(000) 000-0000                REF:
THU:
PO:                                        D



TRK# 8897 9076 3707
0201

**X6 MPBA**



R̶eusable Env

̶cycle me.

This envelope is reusable. If it is still in good shape, use it again for your next FedEx® shipment.



**New envelopes are only for FedEx Express® shipments.
Reuse for any FedEx® shipment.**

You can help us get your package safely to its destination by packing your items securely. Need help? Go to **fedex.com/packaging** for packing tips.

 Check your FedEx shipping document, the current FedEx Service Guide, or the conditions of carriage for complete terms, conditions, and limits of liability.

© 2025 FedEx 158011 REV 2/25

**PAP 21**

Please reuse; then recycle. See how we are connecting the world in responsible and resourceful ways at **fedex.com/sustainability**. Recycling options may vary by location.



**Scan to learn how we
can help make Earth
a priority together**



99158011